# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 10-CV-80737-HURLEY/HOPKINS

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

vs.

TRADE-LLC,
PHILIP W. MILTON, and
WILLIAM H. CENTER,

      Defendants,

BD LLC,
TWTT-LLC,
and CMJ CAPITAL LLC,

      Relief Defendants.

_____/

## UNOPPOSED FIRST INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO THE RECEIVER AND HIS COUNSEL

Pursuant to Section 14 of this Court's June 23, 2010 Order Appointing Receiver, Jeffrey C. Schneider, not individually but solely in his capacity as the court-appointed receiver (the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, and CMJ Capital LLC (the "Receivership Entities" or "Trade"),[1] and his counsel (the law firm of Levine Kellogg Lehman Schneider + Grossman LLP),[2] submit their Unopposed First Interim Application for Allowance of

---

[1] The Receiver was also appointed for Relief Defendant Center Richmond LLC in the parallel pending Commodity Futures Trading Commission enforcement action (Case No.: 9:10-CV-80738-KAM), in which the Receiver is filing a copy of this Fee Application.

[2] The Receiver's forensic accountants (MarcumRachlin) are simultaneously filing a separate application for allowance and payment of compensation and reimbursement of expenses.

Compensation and Reimbursement of Expenses for the time-period of <u>June 23, 2010 through</u> <u>August 31, 2010</u>. Both the Securities and Exchange Commission and the Commodity Futures Trading Commission have reviewed this Fee Application and the attached billing records, and they both have no objection to the amounts sought herein.

## **BACKGROUND**

Between May 2007 and July 2009, Defendants Philip W. Milton ("Milton") and William H. Center ("Center") misappropriated investor funds by running a classic Ponzi scheme. The primary entity that Milton and Center used to run the Ponzi was Trade. Trade was an unregistered investment advisor and broker-dealer that operated in Palm Beach Gardens, Florida. Milton and Center reported to investors that they could make, and had made, extravagant returns of up to 8% a month or approximately 100% a year.

Due to promises of outlandish returns, Milton and Center raised nearly $28 million from investors in a very short period of time. The investors were primarily from three investment "clubs" -- Cash Flow Financial LLC, New Life Club LLC, and DC Advisors LLC. The clubs, in turn, raised funds from approximately 800 investors.[3] Milton and Center misrepresented to investors that Trade was making profits by trading securities and commodities futures; in reality, there were millions of dollars in losses.

Milton and Center, of course, transferred millions of dollars in investor funds to themselves. Milton and Center also transferred investor funds to their spouses, children, and friends. Many of these transfers were made by transferring the money to affiliated entities (like

---

[3] As set forth more fully below, one of the complications of this receivership will be to figure out exactly how much investors deposited and received back, because the club principals undoubtedly took a portion of the funds before sending money to Trade and, then again, before returning money back to investors.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788   Fax: 305.403.8789

BD LLC, TWTT-LLC, CMJ Capital LLC, and Center Richmond LLC) from which it was routed to friends and family members (and in some cases, back to Milton and Center).

In May of 2009, the Securities and Exchange Commission (the "SEC") began investigating Milton, Center, and Trade. Milton and Center agreed to shut down Trade, cease all operations, and send all funds in their possession to a former state attorney as part of a consensual state-court interpleader action. Shockingly, they did not do so. Instead millions of dollars were laundered through various family members and entities (including Center's wife, an entity named T & D Highway Services, and several others). Some of that money was then diverted back to Milton and Center. Some of the money, according to the transferees, has been lost. Due to his investigation and forensic review of the relevant bank statements, the Receiver has since filed lawsuits, which have been transferred to this Court, against the transferees to recover those funds.

On June 22, 2010, the SEC filed a lawsuit against Trade, Milton, and Center in the United States District Court for the Southern District of Florida.[4] The SEC also sued BD LLC, TWTT-LLC, and CMJ Capital LLC as Relief Defendants, because Milton and/or Center owned and controlled those companies, and sent significant investor funds to them from Trade. The SEC sought the appointment of a receiver to, among other things, obtain and safeguard all of the assets of the Receivership Entities, wherever located, for the benefit of the defrauded investors.

On the same day, the Commodity Futures Trading Commission (the "CFTC") filed a lawsuit against not only Trade, Milton, and Center but also Center's son, Gregory Center, a lawyer who acted as Trade's general counsel. The CFTC sued BD LLC, TWTT-LLC, and CMJ Capital LLC as Relief Defendants, and also included Center Richmond LLC (an entity owned

---

[4] Soon thereafter, both Milton and Center stipulated to judgments.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

and controlled by Center that received significant investor funds from Trade). The next day, on June 23, 2010, the United States District Court in the SEC action appointed the Receiver for Trade-LLC, BD LLC, TWTT-LLC, and CMJ Capital LLC. On July 15, 2010, the United States District Court in the CFTC action also appointed the Receiver.

The various receivership Orders in the SEC and the CFTC actions direct the Receiver to (1) administer and manage the business affairs, funds, assets, and any other property of the Receivership Entities; (2) marshal and safeguard the assets of the Receivership Entities; (3) investigate the manner in which the affairs of the Receivership Entities were conducted and institute such legal proceedings as are necessary for the protection of the entities and the investors; and (4) take whatever other actions are necessary for the protection of the investors. The objective of the receivership is to locate and preserve all of the assets, with the ultimate goal of distributing them to the defrauded investors.

The Receiver is pleased to advise this Court that, since his appointment approximately three months ago, he, with the help of his professionals and staff, has secured in his receivership accounts over **$6.4 million** in funds derived from the victims of the fraud. The Receiver has also secured additional funds from bank and brokerage accounts in the names of the Receivership Entities of over **$162,000**. Moreover, the Receiver has settled a lien dispute with Milton and Center that will add an additional **$100,000** to the receivership estate. The Receiver has secured, and is in the process of marketing to sell for the benefit of the defrauded victims, two properties purchased with investor funds. The Receiver is presently aware of five other properties that were purchased with, or improved by, investor funds. The Receiver has recorded, or is in the process of recording, a Notice of Lis Pendens against each property so they cannot be sold or further encumbered.

4

Due to the large number of interested persons, the Receiver constructed a receivership website within the first week of the receivership, on which relevant court filings and other information is posted. The website is the most efficient and cost-effective way for the Receiver to communicate activities in the receivership. The Receiver designed the website to provide convenient access to information about the receivership, including important updates, answers to frequently asked questions, and relevant pleadings from the enforcement and ancillary receivership lawsuits. The website address is www.tradereceiver.com. The Receiver also writes the investors a letter approximately every thirty days. The letter provides an update on the Receiver's activities. The Receiver also posts all of his letters on the website.

## **WORK PERFORMED**

The Receiver's First Report, filed concurrently with this Fee Application, chronicles in much greater detail the Receiver's work in a very short period of time. The Receiver will not burden this Court by repeating the contents of the Report here. The Receiver asks that this Application be considered after the Report has been reviewed. And the Receiver asks that this Court appreciate the magnitude of the tasks with which he and his professionals have been confronted. This case was, at its inception, and still continues to be, extremely challenging because of the multiple receivership assets that the Receiver has secured, the thousands of money transfers that Milton and Center orchestrated to hide and divert funds, and the sheer volume of account records underlying the transfers. These issues have been confronted because Milton and Center, in large part, have not cooperated with the Receiver, as they were ordered to do.

This receivership is still in its infancy. However, much has been discovered and accomplished. The Receiver has secured millions of dollars in assets. The Receiver has uncovered several improper transactions from which he has filed lawsuits against profiteers of

5

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

the fraud.  The Receiver will file several more.  The Receiver has obtained a virtual mountain of records which his professionals have reviewed and will continue reviewing to trace the millions of dollars of investor funds that Milton and Center stole and laundered.

A sampling of the work is detailed below.

**A.  The Receiver Secures Receivership Funds of over $6.4 Million**

On the day of his appointment, the Receiver took the necessary steps to secure over $6.4 million in receivership funds that were the subject of a pending state-court lawsuit in which the parties were litigating over entitlement to the funds.  The funds had been escrowed with a former state attorney who, as Trade's escrow agent, had opened an account for the funds.  It was urgent that the Receiver move immediately to secure these funds, because the two clubs were moving for summary judgment to obtain the funds.  If the clubs were granted summary judgment, and thus obtained the funds, there was no guarantee that the club principals would have given the actual defrauded investors the money they were owed.  There was also no guarantee that the money would have been returned to the Receiver, so he could distribute the money to all victims in accordance with a claims process approved by this Court.

The Receiver obtained the consent of all the parties that the escrowed funds should be transferred to him for the benefit of all defrauded victims, and then filed an Unopposed Motion to Transfer Escrowed Funds, which Circuit Court Judge Timothy McCarthy granted.  Therefore, as a result of his actions, the Receiver was able to secure – within short order – over $6.4 million of investor funds for the benefit of all defrauded investors.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

### B.  The Receiver Secures Several Properties Purchased with Receivership Funds

The Receiver discovered that there are at least four properties that were purchased free and clear with investor funds.  The Receiver has filed a lis pendens on all four properties, which include:

### 1.  Midtown Units 3117 and 3317

Milton and Center, through CMJ Capital LLC, purchased condominium units 3117 and 3317 at the Residences at Midtown in Palm Beach Gardens with approximately $295,000 of investor funds.  The Receiver has filed a lis pendens on both units to prevent any liens on the units; has changed the locks at both units; is paying the monthly condominium dues; has entered into a new month-to-month lease with a tenant for unit 3117, the rental proceeds of which will benefit the receivership estate; has retained a realtor to market and sell both units; and has insured both units pending their sales and closings.  The Receiver will sell both units pursuant to Court Order and receivership protocol required under 28 U.S.C. Sections 2001 and 2002.

After securing both units, the Receiver discovered that there was a pre-receivership lien placed on them for $140,000.  The funds were mostly used to pay Milton's and Center's attorneys' fees.  For example, approximately $75,000 was paid to Milton's counsel; $30,000 was paid to Center's counsel; $15,000 was paid to Center's company Center Richmond (allegedly to retain an accountant which never occurred); and approximately $20,000 was paid for closing costs.  Through his efforts, the Receiver has forced Milton and Center to satisfy $100,000 of the remaining approximate $140,000 owed under the mortgage.  The Receiver will be filing a motion to approve this transaction in short order, assuming he receives the requested affidavits from the Milton/Center family members funding the $100,000 that the funds are not derived from Trade investors.

### 2.  Midtown Unit 2305

The Receiver discovered that, soon before it shut down, Trade transferred $200,000 of investor funds to a Trade-insider and a close Milton-friend, Darren Jarema ("Jarema"), for him to purchase a condominium in the Residences at Midtown (the same development where Milton and Center, through CMJ Capital, had purchased the two above condominiums).  There is no mortgage on this property.  The Receiver has filed a lis pendens on this property.  The Receiver has also sued Jarema for, among other things, a constructive trust or equitable lien on this property.

### 3.  19 Blenheim Court

In addition to the above three properties, the Receiver discovered that Milton purchased a second home with approximately $300,000 of investor funds.  There is also no mortgage on this property.  This home is located at 19 Blenheim Court, Palm Beach Gardens, Florida, which is literally blocks away from where Milton resides.  Milton intentionally titled the home in his wife's (Kathleen Milton) name in an attempt to obfuscate the fact that he used investor funds to purchase it.  Milton's son (Aaron Milton) has been living in this home.  The Receiver has filed a lis pendens on this property.  Milton has now agreed that he will transfer the home to the Receiver.  Once the Receiver obtains title to this property, he will market and sell it pursuant to Court Order and receivership protocol required under 28 U.S.C. Sections 2001 and 2002.

### C.  The Receiver Secures Trade's Office Furniture, Fixtures, and Equipment

The Receiver has secured three storage units in Palm Beach County that contain various items of office furniture, fixtures, and equipment from Trade's office in Palm Beach Gardens. The Receiver will be inventorying all the items in storage and filing a motion to liquidate such items for the benefit of the receivership estate in the coming months.

8

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

The Receiver also secured the remaining furniture, fixtures, and equipment (all of minimal value) in Trade's office in Richmond, Virginia (which Center ran), and has terminated the lease. However, counsel for the Virginia landlord has recently represented to the Receiver that since the date of his securing that office, someone has improperly accessed the office and removed the remaining furniture, fixtures, and equipment. The Receiver is now investigating those circumstances. The Receiver is also negotiating with the landlord over the $9,000 security deposit.

**D.  The Receiver Secures Frozen Balances at Bank and Brokerage Accounts**

The SEC and the CFTC served their respective freeze Orders on a multitude of banks and brokerage firms where the Defendants and the Relief Defendants had accounts. The Receiver has obtained, and is in the process of obtaining, the frozen balances in the various accounts, the largest balances of which were approximately $113,000 and $50,000 in two accounts.

**E.  The Receiver Meets with Milton and Center at Multiple Proffer Sessions**

The Receiver has met with Milton, Center, and their lawyers at multiple proffer sessions regarding the location of and disposition of receivership funds and assets. The Receiver will be setting Milton, Center, and several insiders for deposition in the near future.

**F.  The Receiver Inspects Milton's and the Centers' Homes**

The Receiver has inspected Milton's and Center's homes in Palm Beach Gardens and Richmond, Virginia, respectively. During the inspections, photographs were taken of the items of material value within the homes. The Receiver has also inspected and photographed the contents of Gregory Center's home in McLean, Virginia. The homes were Trade's "home offices."

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

**G. The Receiver Files Lawsuits against Third Parties Who Profited from the Fraud**

The Receiver recently filed five separate lawsuits against several third parties and insiders who profited from the fraud. The lawsuits seek damages ranging from approximately $100,000 to $1.8 million. Each lawsuit is more fully described in the Receiver's Report. The Receiver requested that all five lawsuits be transferred from the original judge to which they were assigned to this Court. It is too premature for the Receiver to confirm how quickly the cases will settle, but the Receiver is hopeful that, rather than engage in costly and protracted litigation, he will be in a position to consensually resolve the lawsuits in fairly short order. The Receiver filed this first wave of lawsuits because of the amount diverted to these individuals and entities, and the way in which the transfers took place (as more fully described in the Receiver's Report). The Receiver also anticipates filing additional lawsuits in the upcoming weeks and months.

Finally, the Receiver has engaged in pre-litigation settlement talks with several persons and entities that received significant amounts of Trade-derived funds. The Receiver is hopeful to settle these disputes without having to resort to litigation.

**H. The Receiver Hires Marcum for Forensic Accounting**

Milton and Center raised nearly $28 million from investors. Milton and Center then transferred millions of dollars of investor funds to themselves, their companies, their wives, their children, their friends, their friends' companies, and other insiders in several complicated "step" transactions involving a literal maze of companies.

Milton and Center set up an elaborate network of dozens of bank accounts and brokerage accounts at over twenty-five banks and brokerage firms to divert funds. Literally millions of

dollars of Trade-derived funds were transferred through these various accounts since Trade's inception in May 2007.

In order for the Receiver to determine "where the money went," the Receiver has retained the accounting firm of MarcumRachlin ("Marcum").  Marcum is currently reconstructing all the relevant bank and brokerage accounts to trace the money.  It is and will continue to be a challenging, time-consuming exercise, given the sheer volume of accounts orchestrated by Milton and Center.  The Receiver also anticipates filing additional lawsuits in the upcoming weeks and months based on the findings from the forensic analysis.

### I.   The Receiver Serves Requests for Production and Dozens of Subpoenas

To ensure that the Receiver has received the relevant bank and brokerage records for the necessary forensic analysis, the Receiver has served over forty-five subpoenas on, among others, banks and brokerage firms with accounts in the names of, among others, Milton, Center, their companies, their wives, their children, their friends, and their friends' companies.  The Receiver has also served requests for production on Milton and Center, and subpoenas on their wives and children, to ensure that he has all of the Receivership Entities' books and records.

### J.   The Receiver Creates a Receivership Website

Due to the large number of interested persons (over 800 investors, not to mention trade creditors and others who have taken an interest in this case), the Receiver constructed a receivership website within the first week of the receivership, on which relevant court filings and other information is posted.  The website is the most efficient and cost-effective way of communicating activities in the receivership.  The Receiver designed the website to provide convenient access to information about the receivership, including important updates, answers to frequently asked questions, and relevant pleadings from the enforcement and ancillary

receivership lawsuits.  The website address is www.tradereceiver.com.  The Receiver has also written letters to investors.  The letters provide an update on his activities.  The Receiver posts all of the letters on the website.

**K.   The Receiver's Attempts to Identify Investors**

This is an atypical receivership.  One reason is that Trade's clients were primarily investment clubs which, in turn, were made up of hundreds of "members."  For the Receiver to ensure that the rightful persons are repaid, the Receiver will need to repay the individual members of each club and not the club itself.  In other words, generally speaking, the Receiver will need to know (1) each club member's name and contact information; (2) the amount of money that each member paid to the club to put into Trade; (3) the amount of money that each member received from the club for his/her investment with Trade; and (4) all documents supporting the foregoing.

In order to obtain this information, the Receiver has created the above-mentioned website so that each individual investor or creditor can register, and at least begin the process of identifying the ultimate victims.  The Receiver has also also subpoenaed each of the three primary investment clubs – Cash Flow Financial, New Life Club, and DC Advisors – for, among other things, (1) each club member's name and contact information; (2) the amount of money that each member sent to the club to put into Trade; (3) the amount of money that each member received from the club from his/her investment with Trade; and (4) all documents supporting the foregoing.  The Receiver has also subpoenaed the principals of each club for, among other things, this information.

**L.    Future Distributions**

Once the Receiver has identified the investors themselves, he will take the necessary

steps to set-up a claims process for repaying them.  The Receiver will file the necessary motions

to ensure that the claims process and all distributions to investors are approved by this Court and

vetted by investors and other interested persons.  Depending on when the Receiver receives the

necessary information, the Receiver would like to be able to make an initial interim distribution

to investors in the first half of 2011.  Once the process has been approved, subsequent

distributions will naturally be much easier and less costly.  Obviously, the amount and timing of

distributions will vary based on the circumstances affecting the receivership at the time.  The

Receiver's goal is to administer the receivership as quickly and efficiently as possible.

## THE RECEIVER AND HIS COUNSEL

Exhibit A reflects the Receiver's daily time records.  The Receiver's standard hourly rate

is $445.00.  For purposes of this receivership, however, the Receiver reduced his hourly rate to

$260.00, a reduction of approximately 40%.  For this Fee Application, the Receiver expended a

total of 83.30 hours at a reduced hourly rate of $260.00 for a total of $21,658.00.

The Receiver's counsel (*i.e.*, Levine Kellogg Lehman Schneider + Grossman LLP) were

retained and commenced work on the receivership on the date of the Receiver's appointment –

June 23, 2010.  This Court granted the Receiver's Motion to Employ them as counsel on July 1,

2010.  The professional services rendered by the Receiver's counsel, and the necessary and

reasonable non-reimbursed out-of-pocket costs relating to those services, are set forth and

described in more detail on the attached Exhibit B.  Exhibit B reflects the Receiver's counsel's

daily time records, which includes the description of services rendered, the hours expended, and

the hourly rates.

As this Court can plainly see, fees were kept at a minimum by having an associate

(Patrick Rengstl) and paralegals (Ana Salazar and Maria Carattini) perform the vast majority of

the work.[5]   In addition, associate hourly rates were reduced to $200.00 and paralegal hourly rates were reduced to $125.00 for this receivership.

For this Court's convenience, the following is an aggregate tabular summary for the fees and expenses of the Receiver and his counsel:

## THE RECEIVER:

| Name of Receiver | Reduced Hourly Rate | Time Expended | Total |
|---|---|---|---|
| Jeffrey C. Schneider | $260.00 | 83.30 | $21,658.00 |

## COUNSEL:

| Name of Attorney | Reduced Hourly Rate | Time Expended | Total Per Attorney |
|---|---|---|---|
| Patrick J. Rengstl, Esq. | $200.00 | 368.70 | $73,740.00 |
| Adam G. Schwartz, Esq | $200.00 | 17.90 | $3,580.00 |
| Brandon M. Thompson (Bar admission pending) | $200.00 | 9.50 | $1,900.00 |
| Andrew S. Brown (Law Clerk) | $125.00 | 6.40 | $800.00 |
| **SUB TOTAL** | | | $80,020.00 |

## PARAPROFESSIONALS:

| Name of Paraprofessional | Reduced Hourly Rate | Time Expended | Total Per Paraprofessional |
|---|---|---|---|
| Ana M. Salazar | $125.00 | 100.30 | $12,537.50 |
| Maria A. Carattini | $125.00 | 104.20 | $13,025.00 |
| Elsa S. Fresco | $125.00 | 1.00 | $125.00 |
| Sara L. Stein | $125.00 | 0.40 | $50.00 |

---

[5]   Mr. Rengstl's standard hourly rate is $320.00.  For purposes of this receivership, his hourly rate was reduced to $200.00, a reduction of approximately 35%.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

| SUB TOTAL | | | $25,737.50 |
|---|---|---|---|

Exhibit B is consistent with the tabular summary provided above. Exhibit B also reflects that the Receiver's counsel incurred costs of $13,905.65, bringing the total due to the Receiver's counsel to $119,663.15.

## MEMORANDUM OF LAW

### I.   Summary of Services Rendered by the Receiver and His Counsel

The professional services rendered by the Receiver and his counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail in Exhibits A and B. The attached records show the time spent. A mere reading of the time summaries cannot completely reflect the full range of services rendered by the Receiver and his counsel, the complexity of the issues, and the pressures of time and performance which have been placed upon the Receiver and his counsel in connection with this case.

The schedules of disbursement for expenses, which are also part of Exhibits A and B, are those actual and necessary expense items, such as process service fees, photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various expenses incurred in connection with this matter. All of these expenses would typically be billed by the Receiver and his counsel to their general commercial clients.

The Receiver and his counsel have not been paid any compensation in connection with the services and expenses set forth herein.

### II.   Applicable Legal Standard Analysis

In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth

in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974).  *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context).   The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows:  (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A.     The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature, and extent of the professional services rendered by the Receiver and his counsel during the period covered by this Application.  The Receiver and his counsel have no doubt that the time spent is justified by the results that have been achieved thus far.  The Receiver and his counsel believe they have played a significant role during the course of these proceedings and will continue to do so in the future.

### B.     The Novelty and Difficulty of the Questions Presented

This case required a high level of skill to secure the receivership assets and to carry out the Receiver's duties.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

**C.      The Skill Requisite to Perform the Services Properly**

In order to perform the required services, substantial legal skill and experience in the areas of commercial law and litigation were required of the Receiver and his counsel.   The Receiver is acutely aware of the financial considerations arising in receiverships such as this one. Accordingly, as this Court may gather from Exhibits A and B, the Receiver has very leanly staffed the administration of this case as much as possible, under the direction and immediate supervision of the Receiver.

**D.      The Preclusion of Other Employment Due to This Case**

Although the Receiver and his counsel were not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by the Receiver and his counsel in an expeditious and professional manner.   Also, this case required the Receiver and his counsel to devote a significant amount of time during the period of this Application, to the preclusion of expending time on other active matters.

**E.      The Customary Fee**

The hourly rates of the Receiver and his counsel set forth on the attached exhibits reflect a rate that is considerably lower than the hourly rates billed by the Receiver and his counsel to clients in other cases. That is because the Receiver views this work as being in the nature of "public service," which the Receiver is proud and privileged to be able to do.   Similar – and higher – rates have been confirmed and approved in other matters in which the Receiver and his counsel have been involved.

**F.      Whether the Fee Is Fixed or Contingent**

The compensation of the Receiver and his counsel in this matter is subject to the approval of this Court, and the Receiver and his counsel have not received any compensation for their

services rendered to date.  The above factors should be taken into consideration by this Court, and the compensation should reflect the assumption of the risk of non-payment and delay in payment.

**G.     The Time Limitations Imposed**

This case imposed time limitations on the Receiver and his counsel due to the necessity for rapid resolutions of issues.

**H.     The Experience, Reputation, and Ability of the Professionals**

The Receiver and his counsel enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships, litigation, bankruptcy, creditors' rights, and business reorganizations.

**I.     The "Undesirability" of the Case**

This case is not undesirable, and the Receiver and his counsel are, indeed, privileged to participate in this proceeding.

**J.     The Nature and Length of Professional Relationship**

The Receiver and his counsel have had no prior relationship with Milton, Center, or the Receivership Entities prior to this case.

**K.     Awards in Similar Cases**

The amounts requested by the Receiver and his counsel are not unreasonable in terms of awards in cases of similar magnitude and complexity.  The compensation requested by the Receiver and his counsel comports with the mandate of applicable law, which directs that services be evaluated in light of comparable services performed in other cases in the community. In fact, the hourly rates requested by the Receiver and his counsel are considerably lower than the ordinary and usual hourly rates billed by the Receiver and his counsel to their ordinary

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

clients, notwithstanding the risks associated with this case. The hourly rates are even lower than rates received by the Receiver in other receivership cases.

### L.      The Source of Payment for the Amounts Sought Hereunder

The Receiver and his counsel request that the amounts for which payment is authorized hereunder be paid from funds presently held by the Receiver.

### CERTIFICATION

Pursuant to Local Rule 7.1.A.3, undersigned counsel hereby certifies that he has conferred with counsel for the SEC and the Defendants, and is authorized to represent that the SEC and the Defendants have no objection to the relief requested herein.

The Receiver also certifies that:

a.  He has read this Application;

b.  To the best of his knowledge, information and belief formed after reasonable inquiry, this Application and all fees and expenses therein are true and accurate, and comply with the Billing Instructions;

c.  All fees contained in this Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

d.  He has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and

e.  In seeking reimbursement for a service which he justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service,

overnight courier, computerized research, or title and lien searches), he requests reimbursement only for the amount billed to him by the third party vendor and paid by him to such vendor. To the extent that such services were performed by him as receiver, he certifies that he is not making a profit as receiver on such reimbursable service.

## CONCLUSION

WHEREFORE, the Receiver and his counsel respectfully request that this Court enter the proposed Order, attached as Exhibit C, (a) authorizing compensation to the Receiver of $21,658.00; (b) authorizing compensation to the Receiver's counsel, Levine Kellogg Lehman Schneider + Grossman LLP, of $105,757.50 and reimbursement of expenses of $13,905.65; and (c) for any other relief that is just and proper.

Dated: September 21, 2010

Respectfully submitted,

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
Counsel for the Receiver
201 South Biscayne Boulevard
34th Floor, Miami Center
Miami, Florida 33131
Telephone:     (305) 403-8788
Facsimile:     (306) 403-8789

By:s:/Patrick J. Rengstl
    Patrick J. Rengstl, Esq.
    FL Bar No. 0581631

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s:/Patrick J. Rengstl
Patrick J. Rengstl, Esq.

*Securities and Exchange Commission*
*vs.*
*Trade-LLC, et al.*
**Case No.: 10-80737-Hurley/Hopkins**

<u>**SERVICE LIST**</u>

**Patrick J. Rengstl, Esq.**
Attorney for Receiver
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
34th Floor, Miami Center
Miami, Florida 33131
Telephone: 305.403.8788
Facsimile: 3053.403.8789

**James D. Sallah, Esq.**
Attorney for Defendant Philip W. Milton
SALLAH & COX LLC
Boca Corporate Center
2101 N.W. Corporate Blvd., Suite 218
Boca Raton, Florida 33431

**Christopher Bruno, Esq.**
Attorney for Defendant William H. Center
BRUNO & DEGENHARDT
10615 Judicial Drive, Suite 703
Fairfax, VA 22030

**Christopher E. Martin, Esq.**
**Susan E. Curtin, Esq.**
Attorney for Plaintiff
SECURITIES & EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: 305.983.6386
Facsimile: 305.536.4154
Email: martinc@sec.gov
Email: curtins@sec.gov

**Lawrence U. Taube, Esq.**
Attorney for Defendant Philip W. Milton
LAW OFFICES OF LAWRENCE U TAUBE
500 South Australian Avenue, Suite 630
West Palm Beach, Florida 33401