UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SECURITIES AND EXCHANGE COMMISSION )
)
                         Plaintiff, )
)
v. )
)
TRADE-LCC, )   Case No. 9:10-cv-80737
PHILIP W. MILTON, and )
WILLIAM H. CENTER, )
)
                         Defendants, )
)
BD LLC, )
TWTT-LLC, and )
CMJ CAPITAL LLC, )
)
                         Relief Defendants. )

## HUNTON & WILLIAMS LLP'S FIRST INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS SPECIAL COUNSEL FOR THE RECEIVER, JEFFREY C. SCHNEIDER

Hunton & Williams LLP ("H&W"), special counsel to Jeffrey C. Schneider, the Receiver (the "Receiver") appointed pursuant to the September 1, 2010 *Agreed Order on Receiver's Motion to Employ Special Counsel* [DE 42] hereby files its First Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the time-period of July 27, 2010 through November 28, 2010 inclusive (the "First Interim Application"). Both the Securities and Exchange Commission and the Commodity Futures Trading Commission have reviewed the attached billing records and have no objection to the amounts sought in this Fee Application.

### GENERAL BACKGROUND

1.    Between May 2007 and July 2009, Defendants Philip W. Milton ("Milton) and William H. Center ("Center") misappropriated investor funds by running a classic Ponzi scheme.

The primary entity Milton and Center used to manage and create the Ponzi scheme was Trade. Trade was an unregistered investment advisor and broker-dealer that operated in Palm Beach Gardens, Florida. Milton and Center reported to investors that they could make, and had made returns of up to 8% a month or approximately 100% a year.

2. Milton and Center raised nearly $28 million from investors in a very short period of time. The approximately 800 investors who became victims of this scheme were members of three investment "clubs" -- Cash Flow Financial LLC, New Life Club LLC, and DC Advisors LLC. Milton and Center misrepresented to the investors in these clubs that Trade was making profits by trading securities and commodities futures whereas in reality there were millions of dollars in losses.

3. Milton and Center transferred millions of dollars in investor funds to themselves, their companies, their spouses, children, friends, their friends' companies, and other insiders in several complicated "step" transactions involving a maze of companies.. Many of these transfers were made by transferring money to entities affiliated with Trade such as BD LC, TWTT-LLC, CMI Capital LLC, and Center Richmond LLC.

4. In May 2009, the Securities and Exchange Commission (the "SEC") began investigating Milton, Center and Trade. While Milton and Center agreed to shut down Trade, cease all operations and send all funds in their possession to the state attorneys office, they instead laundered millions of dollars through various family members and entities.

5. On June 22, 2010, the SEC filed a lawsuit against Trade, Milton and Center before the United States District Court for the Southern District of Florida. The SEC also sued BD LLC, TWTT-LLC and CMJ Capital LLC as Relief Defendants. The SEC sought the

appointment of a receiver to, among other things, obtain and safeguard all of the assets of the Receivership Entities, wherever located, for the benefit of the defrauded investors.

6. Also on June 22, 2010, the Commodity Futures Trading Commission (the "CFTC") filed a lawsuit against Trade, Milton, and Center and also Center's son, Gregory Center, a lawyer who acted as Trade's general counsel. The CFTC also sued BD LLC, TWTT-LLC and CMJ Capital LLC as Relief Defendants, and included Center Richmond LLC.

7. On June 23, 2010, the United States District Court in the SEC action appointed the Receiver for Trade-LLC, BD LLC, TWTT-LLC and CMJ Capital LLC. On June 23, 2010, the United States District Court in the CFTC action also appointed the Receiver to marshal and administer the assets subject to the CFTC receivership court's jurisdiction.

8. On August 27, 2010, the Receiver filed an unopposed motion to employ Hunton & Williams LLP ("H&W") to act as special counsel in Virginia, where receivership property is presently located, and for other real estate related issues in the receivership.

9. On October 22, 2010, Judge Marra entered an order transferring the CTFC case to Judge Daniel T.K. Hurley, who was presiding over the SEC receivership.

10. On November 2, 2010, Judge Hurley signed an Order that granted the Receiver's unopposed motion for limited consolidation of the SEC enforcement action and the CTFC lawsuit.

### REQUEST FOR FIRST INTERIM ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

H&W seeks allowance of interim compensation and reimbursement of expenses incurred for the Application Period as follows: fees in the amount of $12,899.00 for services rendered and reimbursement of actual and necessary expenses in the amount of $611.10 incurred in connection with H&W's services for a total award of $13,510.10. H&W has identified each of H&W's

3

professionals and paraprofessionals who provided services to the Receiver during the Application Period and their respective hourly rates on the professional summary attached hereto as **Exhibit "1"**.

## WORK PERFORMED

During the Application Period, H&W rendered extensive and necessary services for and on behalf of the Receiver as set forth below.

H&W analyzed several Virginia and Florida real estate issues for the Receiver. Specifically, H&W prepared and reviewed title searches of certain Florida and Virginia properties, and prepared the warranty deed for a certain Florida property. H&W also conducted legal research concerning Virginia's lis pendens statute and filing and recording a lis pendens. H&W provided the Receiver a legal analysis and strategy for monetizing the real estate assets that would neither penalize nor harm either the Receiver or the receivership estates. H&W prepared a notice of lis pendens for certain property in Virginia, as well as a procedural posture for the lis pendens to be recorded in Virginia. H&W also prepared and recorded the warranty deed for certain property located in Palm Beach County, Florida.

The professional services rendered by H&W are described in greater detail in Exhibit 1. The attached records reflect the professional time expended on each task and the relative value of that time.

H&W has not been paid any compensation in connection with the services and expenses set forth herein.

## COMPENSATION

The determination of fees to be awarded is largely within the discretion of the trial court. *Monaghan v. Hill*, 140 F.2d 31 (9th Cir. 1944). Such discretion, however, is predicated upon the assumption that careful consideration is given to all evidence pertaining to the value of the attorneys' services in light of the factors relevant to a determination. These factors are set forth in *In re Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988), as follows: (1) the time and labor properly employed by the attorneys in processing the case; (2) the quality of services rendered; (3) the scope of the activity and conspiracy under attack; (4) the financial risk involved; (5) the magnitude, complexity and novelty of the issues involved; (6) the beneficial results obtained; and (6) the degree to which, if any, efforts were supported by prior governmental action. H&W requests the Court to consider these factors in determining reasonable compensation for the services rendered to date, as summarized below:

(a) <u>Time and Labor Required</u> - The exhibits attached to this Application include Exhibit 1 - Summary of Professional and Paraprofessional Time, Exhibit 2 - Summary of Requested Reimbursement of Expenses and Exhibit 3 - Detailed Time Entries. The Exhibits and narrative descriptions in this Application evidence the time and labor employed in processing this case.

(b) <u>Novelty and Difficulty of the Issues and Questions Presented</u> - Due to the nature of this case, it was necessary for the Receiver to employ H&W and its professionals who are experienced and familiar with legal issues pertaining to the receivership property in Virginia and real-estate related issues.

(c) <u>Skill Requisite to Perform the Legal Services Properly</u> - In order to perform the services and obtain the results required, H&W's legal skill and experience in the areas of real property transactions and litigation were required.

(d) <u>Preclusion From Other Employment</u> - Although H&W was not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by H&W in an expeditious and professional manner. Also, this case required H&W to devote a significant amount of time during the period of this Application, to the preclusion of expending time on other active matters.

(e) <u>Hourly Rates</u> - The hourly rates charged by the attorneys and paraprofessional providing services to the Receiver are considerably lower than the hourly rates billed by H&W to clients in other cases.

(f) <u>Whether the Fee is Fixed or Contingent</u> - H&W's hourly compensation in this matter is subject to the final approval of this Court. H&W has not received any compensation for its services or unreimbursed costs incurred during the Application Period. The Court should consider that H&W has assumed the risk of non-payment and delay in payment.

(g) <u>The Limitations Imposed By The Client or the Circumstances</u> - This case has imposed time limitations on H&W because of the need to resolve issues rapidly, efficiently and economically.

(h) <u>The Amount Involved and the Results Obtained</u> - The above narrative, together with the Exhibits attached hereto, detail the time, nature and extent of the professional services rendered by H&W to the Receiver.

(i)     <u>The Experience, Reputation and Ability of the Attorneys</u> - H&W's attorneys are established, experienced attorneys with substantial experience in the substantive areas of law required by this proceeding including real estate receiverships and litigation.

(j)     <u>The Undesirability of the Case</u> - H&W believes this case is complex, difficult and challenging, as well as important, but not "undesirable."

(k)     <u>The Nature and Length of the Professional Relationship of the Client</u> - H&W does not have a professional relationship with the Receiver.

(l)     <u>Awards in Similar Cases</u> - As set forth above, the Court has the ability and power to award fees and costs to H&W. The amounts requested by H&W are not unreasonable in terms of awards in cases of similar magnitude and complexity. The compensation requested by H&W comports with the mandate of applicable law, which directs that services be evaluated in light of comparable services performed in other cases in the community. The hourly rates requested by H&W are considerably lower than the ordinary and usual hourly rates billed by H&W to its ordinary clients, notwithstanding the risks associated with this case. The hourly rates in this case have been discounted to rates lower than rates received by H&W in other SEC receivership cases.

(m)     H&W requests that the amounts for which payment is authorized hereunder be paid from funds presently held by the Receiver.

## CERTIFICATION

Pursuant to S.D. Fla. Local Rule 7.1.A.3, the undersigned hereby certifies that the Securities and Exchange Commission, the Commodity Futures Trading Commission, and the Defendants have no objection to the relief requested herein.

The undersigned also certifies that:

(a)   I have read the Applicant's application for compensation and reimbursement of expenses (the "Application"). The Application and all fees and expenses therein are true and accurate, and comply with the Billing Instructions;

(b)   All fees contained in this Applications are based on the rates listed in Exhibit 1 attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

(c)   In seeking reimbursement for the expenditures described on Exhibit 2, the Applicant is seeking reimbursement only for the actual expenditure and has not marked up the actual cost to provide a profit or to recover the amortized cost of investment in staff time or equipment or capital outlay (except to the extent that the Applicant has elected to charge for in-house photocopies and outgoing facsimile transmissions at the maximum rates permitted by the Guidelines).

(d)   In seeking reimbursement for any service provided by a third party, the Applicant is seeking reimbursement only for the amount actually paid by the Applicant to the third party.

## CONCLUSION

H&W respectfully request that this Court enter the proposed Order, attached as Exhibit 4, authorizing compensation to H&W of: (i) attorneys' fees for reasonable and necessary services

rendered during the Application Period in the amount of $12,899.00 plus expenses incurred during the Application Period in the amount of $611.10, for a total award of $13,510.10.

Date:   March 10, 2011
        Miami, Florida

                                                    Respectfully submitted,
**HUNTON & WILLIAMS LLP**
*Special Counsel for the Receiver*
1111 Brickell Avenue - Suite 2500
Miami, FL  33131
Tel:  (305) 810-2500
Fax:  (305) 810-2460


                                                    /s/Craig V. Rasile
Craig V. Rasile (FBN 613691)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via First Class U.S. Mail and Electronic Mail as designated upon the parties set forth on the Master Service List this **10th day of March, 2011.**

/s/Craig V. Rasile
Craig V. Rasile

77438.000002 EMF_US 33908318v3

Service List
for SEC v TRADE-LLC
10-80737

| | | |
|---|---|---|
| Patrick J. Rengstl, Esq.<br>Levine Kellogg Lehman Schneider &<br>Grossman LLP<br>201 S. Biscayne Blvd., 34th Floor<br>Miami, FL  33131 | Christopher E. Martin, Esq.<br>Susan E. Curtin, Esq.<br>SEC - Miami Regional Office<br>801 Brickell Avenue, Suite 1800<br>Miami, FL  33131 | James D. Sallah, Esq.<br>Sallah & Cox LLC<br>Boca Corporate Center<br>2101 NW Corporate Blvd., Ste 218<br>Boca Raton, FL  33431 |
| Christopher Bruno, Esq.<br>Bruno & Degenhardt<br>10615 Judicial Drive, Ste 703<br>Fairfax, VA  22030 | John Dunfee, Esq.<br>Jason Mahoney, Esq.<br>1155 21st Street NW<br>Washington, DC  20581 | Lawrence U. Taube, Esq.<br>Law Offices of Lawrence U. Taube<br>500 South Australian Ave., Ste 630<br>West Palm Beach, FL  33401 |