## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 10-CV-80737-HURLEY/HOPKINS
### (Consolidated with Case No. 10-CV-80738-HURLEY/HOPKINS for the Receivership)

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

v.

BD LLC, et al.,
Relief Defendants.
_____/

COMMODITY FUTURES TRADING
COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

BD LLC, et al.,
Relief Defendants.
_____/

### UNOPPOSED THIRD INTERIM APPLICATION FOR
### ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
### OF EXPENSES TO THE RECEIVER AND HIS COUNSEL

Pursuant to Section 14 of this Court's June 23, 2010 Order Appointing Receiver [DE 12],

Jeffrey C. Schneider, not individually, but solely in his capacity as the court-appointed receiver

(the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center

Richmond LLC (the "Receivership Entities" or "Trade"),[1] and his counsel (the law firm of

---

[1]   The Receiver was appointed for Center Richmond LLC in the Commodity Futures Trading
Commission (the "CFTC") enforcement action (Case No. 9:10-CV-80738).  The CFTC action
has since been transferred to this Court and its receivership proceeding has been consolidated.

Levine Kellogg Lehman Schneider + Grossman LLP),[2] submit their Unopposed Third Interim Application for Allowance of Compensation and Reimbursement of Expenses for the time-period of <u>December 1, 2010 through February 28, 2011</u>.[3]  Both the Securities and Exchange Commission (the "SEC") and the CFTC have reviewed this Fee Application and the attached billing records, and they both have no objection to the amounts sought herein.

## BACKGROUND

Since his last Report and Fee Application dated December 17, 2010, the Receiver, with the help of his professionals and staff, has secured funds derived from investors, has settled several disputes with profiteers of the fraud, and has sold several receivership properties, all of which will add additional funds to the receivership estate.  For example, the Receiver demanded and recovered **$577,812.06** in investor-derived-funds from New Life Club LLC's attorneys. Upon discovering the funds, the Receiver made an immediate demand for turnover of the funds, which were promptly transferred to him and are secure in a receivership account.  The Receiver settled his dispute with one of the profiteers – Trinity United Methodist Church – for **$30,000.00**. The Receiver settled his dispute with another profiteer – T & D Highway Services LLC and its principal, Dawn Peluso – which is expected to add at least another **$160,000** to the receivership estate.  And the Receiver is currently attempting to settle disputes with several other individuals and entities that received investor-derived funds.  The Receiver expects one potential settlement to bring several hundreds of thousands of dollars to the receivership estate.

---

[2]  The Receiver's forensic accountants (MarcumRachlin) and his specially-employed real estate counsel (Hunton & Williams LLP) have filed, and in the future will be filing, separate applications for allowance and payment of compensation and reimbursement of expenses.

[3]  The Order Appointing Receiver requires the Receiver to file reports and fee applications quarterly.  The Receiver's First Fee Application was through August 31, 2010, which was the first quarter of the receivership; the Receiver's Second Fee Application was through November 30, 2010, which was the second quarter; and therefore this Third Fee Application is through February 28, 2011, which was the third quarter of the receivership.

In addition, during this period, the Receiver signed purchase contracts for and/or sold three receivership properties. First, the Receiver signed a purchase contract for condominium unit 3317 for **$150,000.00**. The Receiver moved for confirmation of the sale, which this Court granted. The closing occurred on February 17, 2011. Second, the Receiver signed a purchase contract for 19 Blenheim Court for **$245,000.00**. The Receiver moved for confirmation of the sale, which this Court also granted. The closing occurred on March 25, 2011. Third, the Receiver signed a purchase contract for the parking garage for **$20,000.00**, which had been previously purchased for the same amount with one of the condominium units. The Receiver moved for confirmation of the sale, which this Court also granted. The closing recently occurred.

In addition, and perhaps most importantly, the Receiver has been begun the process of making distributions to investors. In other words, the Receiver has finalized a Proof of Claim Form (which was approved by this Court) and finalized the master investor list (the details of which are set forth below) and, on March 31, 2011, the Receiver mailed the Proof of Claim Form to all known investors to begin the distribution process of repaying investors.

The Receiver engaged an auctioneer and appraiser to evaluate additional artwork which sold at a second auction on January 26, 2011. This artwork was previously located at condominium unit 3317 and was purchased with investor funds. The second auction generated **$4,730.00**.

This Court held an evidentiary hearing on the Philip Milton contempt issue on January 13, 2011. After several hours of testimony from Milton and another witness, this Court ruled that: (1) Milton was guilty of civil contempt; (2) Milton had lied to this Court about the whereabouts of the subject missing jewelry; and (3) Milton should immediately surrender to the United States Marshalls, and immediately be incarcerated, to coerce him to return the jewelry, or its value (approximately $128,000), to the receivership. Milton was then taken into custody. As

3

part of the contempt proceeding, Milton turned over to the Receiver his and his wife's platinum and gold wedding bands, which he had purchased with investor funds for approximately **$4,600**.

The Receiver continues to update investors on the receivership website by posting letters to investors at least once a month, and sometimes twice a month. The Receiver also posts the relevant filings from the enforcement and ancillary receivership lawsuits on the website.

## **WORK PERFORMED**

The Receiver's Third Report, filed concurrently with this Fee Application, chronicles in greater detail the Receiver's work during the application period. The Receiver will not burden this Court by repeating the contents of the Report here. The Receiver asks that this Application be considered after the Third Report has been reviewed. And the Receiver asks that this Court appreciate the magnitude of the tasks with which he and his professionals have been confronted. This case was, at its inception, and still continues to be, extremely challenging because of the multiple receivership assets that the Receiver has secured, the thousands of money transfers that Milton and Center orchestrated to hide and divert funds, the transfers of money involving the investment clubs, and the sheer volume of account records underlying the transfers.

As of this period, this receivership is still only eight months old. However, much has been discovered and accomplished. The Receiver has secured millions of dollars in assets. The Receiver has uncovered several improper transactions from which he has filed lawsuits against profiteers of the fraud. The Receiver will file more. The Receiver has obtained a virtual mountain of records which his professionals have reviewed and will continue reviewing to trace the millions of dollars of investor funds that Milton and Center stole and laundered.

A sampling of the work during the subject application period is detailed below.

### A. The Receiver Begins the Claims Process

As stated above, the Receiver has drafted a Proof of Claim Form to start the distribution process of repaying legitimate investors of the Receivership Entities. In order to determine what

funds are owed to investors, the Receiver has taken the necessary steps of compiling the names and addresses of all investors; compiling the various investment clubs' bank records from their multiple accounts at multiple banks; and compiling Trade-LLC's bank records from its multiple accounts at multiple banks. The Receiver must analyze these records to confirm that an investor is, indeed, owed the amount claimed. The above process of requesting and obtaining all of this necessary information from various third parties, such as the investment clubs and banks, has taken several months.

The Receiver has now received a majority of the above information to begin the process of repaying investors. Because this Court has approved the proposed Proof of Claim Form and other details about the claims process, the Receiver has been finalizing the mailing list, which will allow him to mail the Proof of Claim Form to all known investors. Finalizing the mailing list, incidentally, has been an arduous task which has taken several months to complete. There were many investors who did not register on the receivership website, so the Receiver had to obtain investor lists from each club. The Receiver then had to cross-reference each club's list with the online registration list to ensure that all investors' names were included on his master list and that the addresses were current. This will ensure that investors who do not know about the receivership, or who did not register online, will have the opportunity to receive and complete the Proof of Claim Form.

The Receiver mailed out approximately 1,500 Proof of Claim Forms to all known investors on Thursday, March 31, 2011. Pursuant to the Court's Order, investors will have forty-five (45) calendar days from the date of the Receiver's mail-out to complete and return the Proof of Claim Form to his office. In other words, the Claims Bar Date is Monday, May 16, 2011. The Receiver currently anticipates that the first distribution, subject to approval by this Court, will be approximately $4 million.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

After submission of the Proof of Claim Forms, the Receiver will analyze them and all of the attached materials. The Receiver intends to make an initial, interim distribution to investors, subject to approval by this Court, as soon as possible in 2011.

As always, the Receiver has continued to ask each investor to "register" on the receivership website. The Receiver continues to speak to and correspond with many investors regarding their investments. Direct communication with the individual investors has been, and will continue to be, critical to ensure distributions are made to the rightful owners.

## B. The Receiver Secures Nearly $600,000 from New Life's Lawyers

The Receiver subpoenaed New Life Club LLC ("New Life") several times. The Receiver requested, among other things, their bank records, including account statements, wires, checks, and withdrawals. New Life did not produce all the bank records requested, such as checks and wires. Therefore, the Receiver was forced to subpoena New Life's bank for those records. The Receiver ultimately received those records over many months (and is still receiving records).

On December 18, 2009, New Life, through Mark Miller, signed a check in the amount of $803,615.29 as an alleged "retainer" fee to its lawyers. As it turned out, this money constituted investor-derived funds. After Trade had received millions from New Life, New Life requested that Trade, which had commingled all investor funds, send back $1 million to a TD Ameritrade account, from which $160,000 was later withdrawn.

On December 17, 2009, New Life transferred the remaining $803,615.29 from the TD Ameritrade account to its own bank account. The next day, New Life signed a check for this amount as a "retainer" to its lawyers. This, however, was not the first retainer to its lawyers.

The very day the Receiver received the production from New Life's bank which included a copy of the above check for $803,615.29, the Receiver made a demand on New Life's lawyers (1) for an accounting of all funds received and (2) that all funds be frozen (which New Life's lawyers agreed to do). Soon thereafter, the Receiver made a formal demand for the remaining

funds held by New Life's lawyers, which totaled $577,812.06, because he determined that these funds originated from investors, had been transferred to Trade, and had been transferred back to New Life (at the TD Ameritrade account).  In other words, because these were investor-derived funds, the Receiver had a right to turnover of them so he could distribute them to investors.

### C.  The Receiver Continues to Protect Funds of over $6.4 Million

The Receiver continues to protect in his receivership accounts the investor funds of over $6.4 million that were transferred to him from the interpleader lawsuit.  This transfer ensured that the actual victims will be repaid the money that they are owed without the clubs' involvement.[4]

### D.  The Receiver Continues to Take the Necessary Actions with Respect to the Properties Purchased with Receivership Funds

The Receiver discovered that there are at least five properties that were purchased or improved with investor funds.

#### 1.  Midtown Units 3117 and 3317

The Receiver signed a purchase contract for unit 3317 for $150,000.00 (fully-furnished); moved for this Court to confirm the sale pursuant to the receivership protocol required by 28 U.S.C. Sections 2001 and 2002, which this Court granted; and closed on the property on February 17, 2011.  The Receiver is continuing to market unit 3117 and anticipates signing a purchase contract, and moving for confirmation of that sale, in the near future.

The Receiver also signed a purchase contract for the garage space for $20,000.00 to a current unit owner in the development.  CMJ Capital had previously purchased the garage space for $20,000.00.  The three appraisers whom the Receiver retained for the condominium units have appraised the garage space.  The Receiver moved for this Court to confirm the sale pursuant

---

[4]  The clubs refer to Cash Flow Financial and New Life, through which Trade received the bulk of funds from investors.  A third club was DC Advisors, but that club was not part of the state-court lawsuit because it had already received all of its funds back with a profit.

to the receivership protocol required by 28 U.S.C. Sections 2001 and 2002, which this Court granted. The closing recently occurred.

### 2. Midtown Unit 2305

The Receiver discovered that, soon before it shut down, Trade transferred $200,000 of investor funds to a Trade-insider and a close Milton-friend, Darren Jarema ("Jarema"), for him to purchase a condominium in the Residences at Midtown (the same development where Milton and Center, through CMJ Capital, had purchased the two above condominiums); the condominium is unit 2305. There is no mortgage on this property. The Receiver sued Jarema for, among other things, a constructive trust and/or equitable lien on this property. The Receiver's counsel took Jarema's deposition in January 2011, in which he admitted that – based on his desire to own a home and move out of his grandmother's residence, and based on his request to Milton that Milton take "care of him" so he could purchase his own home – Milton transferred to him $200,000.00 so he could purchase the condominium. Jarema then wired $30,000.00 of the $200,000.00 back to Milton the next day, as Milton was a prolific "mover" of money. In the near future, the Receiver will be filing a motion regarding this property.

### 3. 19 Blenheim Court

The Receiver discovered that Milton purchased a second home – located at 19 Blenheim Court, Palm Beach Gardens, Florida – with investor funds. There is also no mortgage on this property. Milton intentionally titled the home in his wife's name in an attempt to obfuscate the fact that he used investor funds to purchase it. Milton's son was previously living in this home.

The Receiver forced Kathleen Milton to sign a warranty deed which transferred title in the home to him. The warranty deed was recorded. The Receiver secured the home, changed the locks at the home, insured the home, and paid all property taxes (there was over $10,000 owed). Like the condominium units, the Receiver marketed the home; signed a purchase contract with a buyer for $245,000.00; and moved for this Court to confirm the sale, which this Court granted.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

The closing occurred on March 25, 2011.

### 4. 8143 Greystone East Circle

The Receiver discovered that Center used at least $210,000 of investor funds to renovate the entire inside of his home in Richmond, Virginia. The Receiver therefore filed and recorded a lis pendens in Virginia on Center's home. The Receiver hopes to settle his claim as to Center's home improvements in the near future.

In addition, Center used at least $92,000 in investor funds to re-furnish his newly-renovated home. The Receiver has obtained a list of items that Center had purchased from the interior design company to determine what furniture and furnishings should be turned over to the Receiver. The Receiver intends to obtain and sell these items for the benefit of the estate.

### 5. 1827 Pierce Drive, Lake Worth, Florida 33460

The Receiver discovered that Milton directed $75,000 of investor-derived funds to his nephew and niece, David R. and Konstantina Casazza (collectively, the "Casazzas"), with which they purchased their home located at 1827 Pierce Drive, Lake Worth, Florida 33460. There is a mortgage on this property. The Receiver sued the Casazzas for, among other things, a constructive trust and/or equitable lien on this property. The Receiver intends to explore a potential settlement with the Casazzas in the near future.

### E. The Receiver Sells Personalty

The Receiver previously moved for authority to sell the personalty located in 19 Blenheim Court and condominium unit 3317, which this Court granted. The auction of the items from unit 3317 occurred on January 26, 2011, and raised $4,730.00. There are two remaining pieces of artwork and a generator system from 19 Blenheim that will be sold or auctioned.

Regarding the remaining furniture, fixtures and equipment which was previously located in Trade's office in Richmond, Virginia (which Center ran), Center allegedly sold nearly all the furniture, fixtures, and equipment pre-receivership. The Receiver is still investigating this issue.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

**F.  The Receiver Continues to Protect Funds Secured
      from Frozen Balances at Bank and Brokerage Accounts**

The SEC and the CFTC served their respective freeze Orders on a multitude of banks and

brokerage firms where the Defendants and the Relief Defendants had accounts.  Like the $6.4

million, these funds have been deposited into the Receiver's protected receivership accounts.

**G.  The Receiver Continues to Take the Necessary Actions with Respect
      to Personal Items Purchased with Investor-Derived Funds**

Milton and the Centers (William and Gregory) signed a Stipulation with the Receiver,

agreeing to list – in a formal sworn accounting – all their personal items, whether purchased with

Trade-derived funds or not, and to produce documents substantiating the information.  The items

purchased with Trade-derived funds will be turned over to the Receiver, after which he will sell

these items for the benefit of the receivership estate.  The Stipulation corrected the provision in

the receivership Orders issued in the CFTC action that required the Receiver to take possession

of literally every item owned by or purchased by the Defendants.  This Court entered an Order

approving the Stipulation [DE 39].  Milton and the Centers have provided the Court-ordered

sworn accountings to the Receiver, which he is currently evaluating.

**H.  The Receiver Files Lawsuits against Third Parties Who Profited from the Fraud**

The Receiver has filed five separate lawsuits against Milton, Center, and several other

insiders, entities and/or individuals that received hundreds of thousands of dollars from Trade.

The lawsuits seek damages ranging from approximately $100,000 to $1.8 million.  Each lawsuit

is more fully described in the Receiver's First and Second Reports.  These lawsuits are:

> *1.  Jeffrey C. Schneider, Receiver v. Philip W. Milton, William H. Center, T & D
>      Highway Services LLC, Dawn Peluso, Charles Reeves, Jason Zamperini, Timothy
>      O'Connor, David R. Casazza, Konstantina Casazza, Dennis Sacco, and Roseann
>      Sacco*, Case No. 10-61401 **(partially settled)**[5];

---

[5]  As stated previously, the Receiver settled his claims against Dennis Sacco for $23,200 (his
wife, Roseann, previously passed away).  The Receiver recently settled his claims against T & D
Highway Services LLC and Dawn Peluso.  The Receiver deposed Timothy O'Connor, who
improperly received approximately $165,000 in cash on the back end of the $1.8 million

2. *Jeffrey C. Schneider, Receiver v. Trinity United Methodist Church of Palm Beach Gardens*, Case No. 10-80941 (**settled**)[6];

3. *Jeffrey C. Schneider, Receiver v. Darren Jarema and Jarema Financials Inc.*, Case No. 10-80939;

4. *Jeffrey C. Schneider, Receiver v. MC Building Consultants LLC, Impact Self-Storage LLC, Charles Reeves, and Marisa Reeves*, Case No. 10-80956; and

5. *Jeffrey C. Schneider, Receiver v. William Jordan,* Case No. 10-80955.[7]

The Receiver is hopeful that, rather than engage in costly and protracted litigation, he will be in a position to consensually resolve these lawsuits in the coming months. The Receiver has been working toward this goal for the last few months. For the lawsuits that he is unable to consensually resolve, the Receiver will take the necessary discovery and quickly move for summary judgment, because the issues are quite clear and do not involve any issues of material fact. In addition, the Receiver continues to engage in pre-litigation settlement talks with several persons and entities that received significant amounts of Trade-derived funds.

**I.   The Receiver Continues to Take Discovery and Serve Additional Subpoenas**

The Receiver will depose in the coming months, and potentially sue, several friends and insiders who assisted Milton and Center in diverting funds. The Receiver intends to depose Milton after certain threshold testimonial issues involving the Fifth Amendment are resolved. The Receiver also intends to depose Center, his wife, and his children/children-in-law (Gregory, David, Katrina, and Carla).

---

transferred from CMJ Capital to T & D Highway Services LLC. In the near future, the Receiver intends to file a motion against O'Connor as to the funds he received.

[6]   As stated above, the Receiver settled his claims against Trinity United Methodist and the lawsuit was dismissed.

[7]   William Jordan ("Jordan") has evaded service of the complaint in the lawsuit. The Receiver has filed a motion for service by publication as to Jordan's evasion. Jordan received at least $87,100 of defrauded victim funds directly from Trade for no consideration or value. Jordan also received additional investor-derived funds from others, such as Milton's wife.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

The Receiver has continued to serve additional subpoenas on various banks, brokerage firms, persons, and entities that have relevant information in the receivership.

### J.   The Receiver Continues to Communicate with Investors

The Receiver has continued to ask each investor to "register" on the receivership website. The website address is www.tradereceiver.com.   As of the Third Report and this Fee Application, over 1,200 investors have registered online.   The Receiver and his professionals continue to speak to and correspond with many investors regarding their investments.   Direct communication with the individual investors is critical for the Receiver to ensure distributions are made to the rightful owners.   The Receiver continues to write and post on the website monthly letters to investors.   The letters provide an update on his activities.   The Receiver also continues to post relevant filings from the enforcement actions and the profiteer actions on the website.

### K.   The Receiver Successfully Moves to Hold Milton in Civil Contempt

The Receiver filed a motion to hold Milton in civil contempt as a result of his failure to turn over and advise the Receiver of $128,000 worth of jewelry that he purchased with investor-derived funds, and his movement of money – mostly in cash – at the time of and after the receivership.   The jewelry included a platinum engagement ring, a diamond anniversary band, a diamond gold cross necklace, a three carat heart-shaped diamond, and three Breitling watches.

This Court held an evidentiary hearing on the Milton contempt issue on January 13, 2011. After several hours of testimony from Milton and another witness, this Court ruled that: (1) Milton was guilty of civil contempt; (2) Milton had lied to this Court about the whereabouts of the subject missing jewelry; and (3) Milton should immediately surrender to the United States Marshalls, and immediately be incarcerated, to coerce him to return the jewelry, or its value (approximately $128,000), to the receivership.   Milton was then taken into custody.

After one month of incarceration, this Court found that there was no realistic possibility by Milton, or others on his behalf, for payment of the owed funds, and thereby terminated the incarceration and released Milton. However, this Court indicated that it would be referring the contempt matter to the United States Attorney's Office, given this Court's belief that Milton had lied under oath at the January 13th hearing and, therefore, had committed perjury. Moreover, as part of the contempt proceeding, Milton turned over to the Receiver his and his wife's platinum and gold wedding bands, which he had purchased for approximately $4,600.

### L. The Receiver Analyzes Cash Flow Financial's Transactions and Collaborates with Cash Flow Financial's Newly-Appointed Receiver

As part of his preparation for the claims process, the Receiver has begun his review of bank records for Cash Flow Financial ("CFF") and its principal, Alan J. Watson ("Watson"). The purpose of this review was to determine the flow of funds between CFF and Trade for use during the claims process. During this review, the Receiver discovered several wire transfers that warrant further investigation and which are detailed in the Third Report.

As it turns out, on March 10, 2011, the CFTC sued CFF, Watson, Michael Potts, and the Jedburgh Group (as a Relief Defendant) in the Eastern District of Michigan. The CFTC also sought the appointment of a Receiver over CFF. The Court in that action has appointed Phillip S. Stenger (Stenger & Stenger, P.C., 4095 Embassy Dr., S.E., Grand Rapids, Michigan 49546) as Receiver over CFF.

The Receiver is currently working with Mr. Stenger and his counsel to ensure that they have all relevant information in the Receiver's possession regarding CFF's investors, CFF, and Watson. The Receiver anticipates further collaboration and cooperation with Mr. Stenger and his team as this receivership and the new CFF receivership unfold.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

## THE RECEIVER AND HIS COUNSEL

Exhibit A reflects the Receiver's daily time records. The Receiver's standard hourly rate is $445.00 (2010)/$465.00 (2011). For purposes of this receivership, however, the Receiver reduced his hourly rate to $260.00, a reduction of approximately 40%. For this Fee Application, the Receiver expended a total of 47.70 hours at a reduced hourly rate of $260.00 for a total of $12,402.00.

The Receiver's counsel (*i.e.*, Levine Kellogg Lehman Schneider + Grossman LLP) were retained and commenced work on the receivership on the date of the Receiver's appointment – June 23, 2010. This Court granted the Receiver's Motion to Employ them as counsel on July 1, 2010. The professional services rendered by the Receiver's counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs relating to those services, are set forth and described in more detail on the attached Exhibit B. Exhibit B reflects the Receiver's counsel's daily time records, which includes the description of services rendered, the hours expended, and the hourly rates.

The Receiver deflected the vast majority of the legal work in this case to Mr. Rengstl (an associate during prior fee periods, who was recently promoted to partner).[8] As this Court can plainly see, fees were kept at a minimum by having Mr. Rengstl, associates (Adam G. Schwartz and Brandon M. Thompson) and paralegals (Ana Salazar, Maria Carattini, Sara Stein, and Stephanie Moncada) perform the vast majority of the work.[9] In addition, associate hourly rates were reduced to $200.00 and paralegal hourly rates were reduced to $125.00 for this receivership.

---

[8] Despite the fact that Mr. Rengstl is now a partner, his hourly rate will remain the same hourly rate as before ($200.00 for associates as opposed to $250.00 for partners) to maximize the recovery of all victims.

[9] Mr. Rengstl's, Mr. Schwartz's, and Mr. Thompson's standard hourly rates for 2011 are $340.00, $295.00, and $260.00, respectively. For purposes of this receivership, their hourly rates were reduced to $200.00.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

For this Court's convenience, the following is an aggregate tabular summary for the fees and expenses of the Receiver's counsel:

**COUNSEL**:

| Name of Attorney | Reduced Hourly Rate | Time Expended | Total Per Attorney |
|---|---|---|---|
| Patrick J. Rengstl, Esq. | $200.00 | 249.10 | $49,820.00 |
| Adam G. Schwartz, Esq. | $200.00 | 112.70 | $22,540.00 |
| Brandon M. Thompson, Esq. | $200.00 | 40.20 | $8,040.00 |
| David M. Levine, Esq. | $250.00 | .70 | $175.00 |
| **SUB TOTAL** | | | **$80,575.00** |

**PARAPROFESSIONALS**:

| Name of Paraprofessional | Reduced Hourly Rate | Time Expended | Total Per Paraprofessional |
|---|---|---|---|
| Ana M. Salazar | $125.00 | 77.40 | $9,675.00 |
| Maria A. Carattini | $125.00 | 16.40 | $2,050.00 |
| Sara Stein | $125.00 | 47.30 | $5,912.50 |
| Stephanie Moncada | $125.00 | 7.90 | $987.50 |
| **SUB TOTAL** | | | **$18,625.00** |

**COSTS**:

| | | | |
|---|---|---|---|
| **SUB TOTAL** | | | **$4,178.49** |

**TOTAL DUE IN FEES AND COSTS FOR COUNSEL**:

| | | | |
|---|---|---|---|
| **TOTAL** | | | **$103,378.49** |

Exhibit B is consistent with the tabular summary provided above.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

## MEMORANDUM OF LAW

**I.     Summary of Services Rendered by the Receiver and His Counsel**

The professional services rendered by the Receiver and his counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail in Exhibits A and B.  The attached records show the time spent.  A mere reading of the time summaries cannot completely reflect the full range of services rendered by the Receiver and his counsel, the complexity of the issues, and the pressures of time and performance which have been placed upon the Receiver and his counsel in connection with this case.

The schedules of disbursement for expenses, which are also part of Exhibits A and B, are those actual and necessary expense items, such as process service fees, photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various expenses incurred in connection with this matter.  All of these expenses would typically be billed by the Receiver and his counsel to their general commercial clients.

The Receiver and his counsel have not been paid any compensation in connection with the services and expenses set forth herein.

**II.    Applicable Legal Standard Analysis**

In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974).  *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context).  The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows:  (1) the time and labor required; (2)

16

the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A.    The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature, and extent of the professional services rendered by the Receiver and his counsel during the period covered by this Application.  The Receiver and his counsel have no doubt that the time spent is justified by the results that have been achieved thus far.  The Receiver and his counsel believe they have played a significant role during the course of these proceedings and will continue to do so in the future.

### B.    The Novelty and Difficulty of the Questions Presented

This case required a high level of skill to secure the receivership assets and to carry out the Receiver's duties.

### C.    The Skill Requisite to Perform the Services Properly

In order to perform the required services, substantial legal skill and experience in the areas of commercial law and litigation were required of the Receiver and his counsel.  The Receiver is acutely aware of the financial considerations arising in receiverships such as this one. Accordingly, as this Court may gather from Exhibits A and B, the Receiver has very leanly staffed the administration of this case as much as possible, under the direction and immediate supervision of the Receiver.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34ᵗʰ Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

### D.    The Preclusion of Other Employment Due to This Case

Although the Receiver and his counsel were not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by the Receiver and his counsel in an expeditious and professional manner.  Also, this case required the Receiver and his counsel to devote a significant amount of time during the period of this Application, to the preclusion of expending time on other active matters.

### E.    The Customary Fee

The hourly rates of the Receiver and his counsel set forth on the attached exhibits reflect a rate that is considerably lower than the hourly rates billed by the Receiver and his counsel to clients in other cases. That is because the Receiver views this work as being in the nature of "public service," which the Receiver is proud and privileged to be able to do.   Similar – and higher – rates have been confirmed and approved in other matters in which the Receiver and his counsel have been involved.

### F.    Whether the Fee Is Fixed or Contingent

The compensation of the Receiver and his counsel in this matter is subject to the approval of this Court, and the Receiver and his counsel have not received any compensation for their services rendered to date.  The above factors should be taken into consideration by this Court, and the compensation should reflect the assumption of the risk of non-payment and delay in payment.

### G.    The Time Limitations Imposed

This case imposed time limitations on the Receiver and his counsel due to the necessity for rapid resolutions of issues.

### H.    The Experience, Reputation, and Ability of the Professionals

The Receiver and his counsel enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships, litigation, bankruptcy, creditors' rights, and business

18

reorganizations.

## I.    The "Undesirability" of the Case

This case is not undesirable, and the Receiver and his counsel are, indeed, privileged to participate in this proceeding.

## J.    The Nature and Length of Professional Relationship

The Receiver and his counsel have had no prior relationship with Milton, Center, or the Receivership Entities prior to this case.

## K.    Awards in Similar Cases

The amounts requested by the Receiver and his counsel are not unreasonable in terms of awards in cases of similar magnitude and complexity.  The compensation requested by the Receiver and his counsel comports with the mandate of applicable law, which directs that services be evaluated in light of comparable services performed in other cases in the community.  In fact, the hourly rates requested by the Receiver and his counsel are considerably lower than the ordinary and usual hourly rates billed by the Receiver and his counsel to their ordinary clients, notwithstanding the risks associated with this case.  The hourly rates are even lower than rates received by the Receiver in other receivership cases.

## L.    The Source of Payment for the Amounts Sought Hereunder

The Receiver and his counsel request that the amounts for which payment is authorized hereunder be paid from funds presently held by the Receiver.

## CERTIFICATION

Pursuant to Local Rule 7.1.A.3, undersigned counsel hereby certifies that he has conferred with counsel for the SEC, the CFTC and the Defendants, and is authorized to represent that the SEC, the CFTC and the Defendants have no objection to the relief requested herein.

The Receiver also certifies that:

    a.   He has read this Application;

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

b. To the best of his knowledge, information and belief formed after reasonable inquiry, this Application and all fees and expenses therein are true and accurate, and comply with the Billing Instructions;

c. All fees contained in this Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

d. He has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and

e. In seeking reimbursement for a service which he justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), he requests reimbursement only for the amount billed to him by the third party vendor and paid by him to such vendor. To the extent that such services were performed by him as receiver, he certifies that he is not making a profit as receiver on such reimbursable service.

## CONCLUSION

WHEREFORE, the Receiver and his counsel respectfully request that this Court enter the proposed Order, attached as Exhibit C, (a) authorizing compensation to the Receiver of $12,402.00; (b) authorizing compensation to the Receiver's counsel, Levine Kellogg Lehman Schneider + Grossman LLP, of $99,200.00 and reimbursement of costs of $4,178.49; and (c) for any other relief that is just and proper.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34ᵗʰ Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

Dated: April 12, 2011          Respectfully submitted,

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
Counsel for the Receiver
201 South Biscayne Boulevard
34th Floor, Miami Center
Miami, Florida 33131
Telephone:    (305) 403-8788
Facsimile:    (305) 403-8789

By: s:/Patrick J. Rengstl
    Patrick J. Rengstl, Esq.
    FL Bar No. 0581631

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s:/Patrick J. Rengstl
Patrick J. Rengstl, Esq.

22

## SERVICE LIST

**Patrick J. Rengstl, Esq.**
Attorney for Receiver
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
34th Floor, Miami Center
Miami, Florida 33131
Telephone: 305.403.8788
Facsimile: 305.403.8789

**Christopher E. Martin, Esq.**
**Susan E. Curtin, Esq.**
Attorney for Plaintiff
SECURITIES & EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: 305.983.6386
Facsimile: 305.536.4154
Email: martinc@sec.gov
Email: curtins@sec.gov

**James D. Sallah, Esq.**
Former Attorney for Trade-LLC, BD LLC,
CMJ Capital LLC, and TWTT-LLC
SALLAH & COX LLC
Boca Corporate Center
2101 N.W. Corporate Blvd., Suite 218
Boca Raton, Florida 33431

**Lawrence U. Taube, Esq.**
Attorney for Defendant Philip W. Milton
LAW OFFICES OF LAWRENCE U. TAUBE
500 South Australian Avenue, Suite 630
West Palm Beach, Florida 33401

**Christopher Bruno, Esq.**
Attorney for Defendant William H. Center
and Gregory Center
BRUNO & DEGENHARDT
10615 Judicial Drive, Suite 703
Fairfax, VA 22030

**John Dunfee, Esq.**
**Jason Mahoney, Esq.**
Attorney for COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street, N.W.
Washington, DC 20581
Direct: (202) 418-5289

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789