IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 10-CV-80737-HURLEY/HOPKINS
(Consolidated with Case No. 10-CV-80738-HURLEY/HOPKINS for the Receivership)

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
Plaintiff,
v.
TRADE-LLC, et al.,
Defendants,
v.
BD LLC, et al.,
Relief Defendants.
_____/

COMMODITY FUTURES TRADING
COMMISSION,

Plaintiff,

v.

TRADE-LLC, et al.,

Defendants,

BD LLC, et al.,

Relief Defendants.
_____/

**RECEIVER'S UNOPPOSED MOTION FOR
ENTRY OF ORDER AUTHORIZING FIRST INTERIM
DISTRIBUTION AND ON DISPOSITION OF RECEIVERSHIP CLAIMS**

Jeffrey C. Schneider, not individually, but solely in his capacity as receiver (the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center Richmond LLC (collectively, the "Receivership Entities" or "Trade"), moves this Court for entry of the attached Order (Exhibit C) authorizing the Receiver to make a first interim distribution of $5.5

million to the claimants with "allowed claims" in the attached Claim Matrix (Exhibit A) and on the disposition of claims in the receivership.

I.  **Summary of the Claims Procedure**

On March 31, 2011, the Receiver mailed approximately 1,500 proof of claim forms to known claimants in Trade. The Receiver previously developed the claim form, which this Court had approved [DE 88 and 98]. The deadline, or "bar date," for submitting the claim forms to the Receiver was May 16, 2011. The Receiver has received 1,020 proof of claim forms.

As stated repeatedly, this is an atypical receivership, because the majority of investors invested in Trade by transferring their investment to the club of which he or she was a member, after which the club transferred (or was allegedly supposed to transfer) the investor's investment to Trade. As further described below and in the attached Claim Matrix (Exhibit A), certain clubs (such as Cash Flow Financial ("CFF") and Jool Club) did not transfer all of the investor funds to Trade and, instead, transferred millions of dollars of investor funds elsewhere. Therefore, for the Receiver to ensure that the rightful persons are repaid, the Receiver is repaying the individual members of each club and not the club itself.

To perform the claims analysis, the Receiver had to organize literally thousands of pages of bank records from accounts in the name of CFF, New Life Club/PICS INTL, Jool Club, and Family and Friends Private Investment Club. Using a computer program to search for key words in scanned documents, the Receiver "loaded" (or scanned) the clubs' bank records electronically into a readable format to search for investor names. To accomplish this, the Receiver needed to identify the investor name on every check, wire or account statement, and type the name into the program for each corresponding check, wire or account statement. Although this process was time-intensive (due to the vast amount of bank records and investor names), this was the only

way to confirm that *all* of the money that an investor transferred to a club(s) and received from a club(s) to confirm what his or her *net* claim amount should be.

After reviewing each claim form, the Receiver then independently confirmed each claimant's individual *net* claim amount. The Receiver had to perform this task because not all investors identified on their claim forms all of the money that they received back from their investments. The Receiver accomplished this by electronically searching for each claimant's name in his electronically-created database of the clubs' bank records to locate all checks, wires or other money transfers from the club(s) to the claimant. The Receiver also searched an electronic excel spreadsheet of Trade's bank records to determine if the claimant received any funds back directly from Trade (as opposed to through the club).

## II. Court-Approved Plan for Distributions and Objections to Claims

Because the Receiver required specific procedures for making distributions and responding to proofs of claim (including objecting to claims), the Receiver recently filed a Motion for such procedures [DE 130], which this Court granted [DE 133]. Below is a summary of the Court-approved procedures.

### A. Court-Approved Distribution Procedure

The Receiver will be making distributions on a pro-rata[1] basis based on the investor's or creditor's proportionate share of the total amounts invested by or owed to all investors and creditors in Trade. The claim amount for each investor will be a *net* claim amount, which

---

[1] "Pro-rata" means that each claimant with an allowed claim receives a distribution, the amount of which is calculated as follows: the amount to be distributed to all claimants (*i.e.*, $5.5 million) multiplied by a fraction, the numerator of which is the amount of the claimant's allowed claim and the denominator of which is the total of all claims.

3

represents all amounts invested by that investor subtracted by all amounts received by that investor regarding investments pre-receivership or post-receivership.

The proof of claim form includes, among other things: (1) the amount of the investment in (or amount owed by) Trade (the "Initial Investment"); and (2) the amounts of any pre-receivership or post-receivership payments received by the investor or creditor regarding Trade (whether in the form of return of principal, payment of alleged profits, payment of alleged interest, or payments by the investment clubs for services as ECM's,[2] compensation consultants, brokers, or the equivalent) ("Returned Amounts"). At the same time, the Receiver has determined the total dollar amount of <u>all</u> investments into, and other claims against, Trade (the "Investment Claim Total").

Using the proof of claim forms to compile the necessary information submitted by investors and creditors, the Receiver has determined a percentage that corresponds to each investor's (or creditor's) share of the Investment Claim Total (the "Investment Claim Percentage").[3]

Because the Receiver is netting claim amounts, each investor's or creditor's Investment Claim Percentage will be adjusted by the amounts received by such investor or creditor by way of Returned Amounts. In other words, if the proof of claim form reveals that an investor or creditor has received Returned Amounts, that investor's or creditor's share in a distribution will be reduced (*i.e.*, netted) by such amounts.

---

[2] "ECM's" is the vernacular used by the clubs to refer to investors who received additional funds from the clubs for bringing in additional investors.

[3] For example, if the Investment Claim Total were $50 million, and John Smith invested $5 million, then John Smith's Investment Claim Percentage would be 10% of the Investment Claim Total.

4

Each allowed claimant will receive a fixed percentage of their allowed claim from the proposed distribution amount, based on the following formula: the amount of the *net* allowed claim divided by the total amount of filed claims multiplied by the proposed distribution amount.

The Receiver currently has approximately $7 million in the receivership estate. The Receiver's first interim distribution (with the consent of the SEC and the CFTC) will be in the amount of $5.5 million to holders of "allowed claims." Therefore, each claimant with an "allowed claim" will receive a fixed percentage of his or her allowed claim from the proposed $5.5 million distribution amount, based on the following formula: the amount of the claimant's *net* allowed claim divided by the total amount of filed claims multiplied by $5.5 million (the proposed distribution amount).

### B. Court-Approved Distribution Procedure for CFF

This Court has authorized the Receiver to make a distribution to CFF's investors by directly paying Phillip S. Stenger as the CFF Receiver. There are several reasons why this is being done. As stated previously, the primary reason is that CFF did not transfer *all* investor funds to Trade but only a small portion; specifically, <u>CFF transferred only $8 million of approximately $40-plus million received from investors to Trade</u>. Mr. Stenger, therefore, will pursue the other funds and, therefore, should be the disbursing agent for <u>all</u> CFF funds. (Any CFF investors that directly invested in Trade will be part of *this* receivership.)

As described in the Claim Matrix, the amount paid to Mr. Stenger, as the CFF Receiver, is a fixed amount based on the net amount of money that CFF transferred to Trade. Mr. Stenger, as the CFF Receiver, has submitted a *net* claim amount of $6,010,359.67, which represents the *net* CFF funds that were transferred to Trade. Mr. Stenger intends on, in turn, distributing that money – along with other funds that he currently has or recovers in the future – to CFF investors

as part of his receivership. This procedure ensures that Mr. Stenger and the Receiver do not duplicate efforts, which would only increase the expenses to the victims. This procedure also ensures that CFF investors are dealt with in one proceeding rather than two, which again will help to minimize the expenses associated with these recovery and distribution efforts.

The total amount claimed to be owed in this receivership (*i.e.*, the Investment Claim Total as defined above)[4] is $22,313,684.84 (this includes all non-CFF investments (*i.e.*, investments into Trade directly, New Life Club, Jool Club, Friends and Family Private Investment Club, and DC Advisors) and the CFF Receiver's claim amount (again, the CFF investors have been essentially removed from the equation to be dealt with as part of the CFF receivership, which has significantly reduced the total amount claimed to be owed in *this* receivership).[5] Because the CFF Receiver's claim has been allowed in this receivership, all CFF investor clams will be discharged in this receivership and transferred to the CFF receivership.

## C. Court-Approved Procedure for Objecting to Claims

The Court-approved procedure for filing and determining objections to claims (the "Objections Procedure") is as follows:

(i)  At the time of filing a motion(s) for distribution, the Receiver will simultaneously file objections and/or counterclaims to claims (or parts thereof), or a request for an extension of time to file any such objections and/or counterclaims, if additional information is needed;

(ii) The motion(s) for distribution, the objections, and/or counterclaims will be served on the claimants by the Receiver at the address on the claim form

---

[4] If a CFF investor invested through both CFF and another club (and/or Trade directly), the investor's investment through CFF will be handled by the CFF Receiver (Mr. Stenger) and the investor's investment through the other club (and/or Trade) will be handled by the Receiver.

[5] Therefore, in the Claim Matrix, the Receiver has listed "N/A" for the amount claimed for every individual CFF investment other than Mr. Stenger's claim, as the CFF Receiver.

    submitted by the claimant, by U.S. Mail (foreign claimants will be served by DHL)[6];

(iii) The holders of "allowed claims"[7] will be paid by the Receiver upon an Order from this Court granting the recommended distribution. Payments by the Receiver will be made by check and must be cashed within ninety (90) calendar days, absent which the check will be voided, the uncashed checks will be deemed "unclaimed funds" available for distribution to other investors and creditors, and the claim will be deemed expunged and waived. The Receiver will be authorized to withhold issuing checks for future distributions to claimants who have not cashed checks from a prior distribution[8];

(iv) The holders of claims to which the Receiver has objected, in whole or in part, and/or counterclaimed, will have forty-five (45) calendar days from the date of service of the objections and/or counterclaims within which to cure the deficiency and/or to respond to him in writing. Such written responses will be served by facsimile, email, or U.S. Mail on the Receiver at his office, c/o Ana Salazar, Receivership Administrator, at Levine Kellogg Lehman Schneider + Grossman LLP, 201 South Biscayne Boulevard, 34th Floor, Miami, FL 33131. If a claimant adequately and timely cures the deficiency or objection, or otherwise settles with the Receiver, the Receiver will deem the clamant a holder of an "allowed claim" and will immediately pay the claimant his or her distribution amount without further Order from this Court. If a claimant responds and

---

[6] The Receiver will be serving on the claimants, and therefore requests permission for doing this, only the Claim Matrix (which lists the claims he is recommending as "allowed claims" and claims to which he has objected), and not a copy of this Motion. The Claim Matrix is voluminous and serving further documents on the claimants (such as a copy of this Motion) will be, in the Receiver's discretion, unnecessary. Moreover, as stated below, the Receiver will also be serving a cover letter on the claimants which explains the Claim Matrix.

[7] "Allowed claims" include: (1) the claimants who timely filed claims to which the Receiver has no objections, and thus did not file objections; (2) the claimants who timely responded to the Receiver's objection and/or counterclaim, but whose claim has been resolved in accordance with his recommended treatment in the Objection or through settlement; (3) the claimants who did not timely respond to the Receiver's objection and/or counterclaim, but whose claim shall be allowed in accordance with his recommended treatment in the Objection; and (4) the claimants who filed late claims to which the Receiver has no objections.

[8] The Receiver requests permission to use his discretion to reissue checks to claimants who fail to timely cash checks for equitable reasons, such as if a claimant passes away, if a claimant moves or if the Receiver determines a new address. Moreover, many claimants are elderly and may pass away during the distribution process. Therefore, the Receiver requests permission to issue and/or reissue checks to a deceased claimant's estate if the claimant passes away and if the Receiver receives written proof of death, such as a death certificate.

does not adequately cure, the claimant's claim will be subject to the Objection Procedure as a "disputed claim."[9] If a claimant does not respond within the time provided, the Receiver's objections and/or counterclaims will be deemed sustained and adjudicated with prejudice, and the claim will be treated in accordance with his objections and/or counterclaims. The Receiver will file periodic status reports with this Court as to claimants who have cured (and who have been paid their distribution amount), claimants who have responded but have not adequately cured (*i.e.*, "disputed claims"), and claimants who have not responded in any manner (and whose claim will be treated in accordance with the Receiver's objections and/or counterclaims)[10];

(v) After a response is served in writing on the Receiver, the claimant and the Receiver will have ninety (90) calendar days to conduct any necessary discovery and file any dispositive motions in regards to the objections and/or counterclaims for the "disputed claim." Pursuant to the executed proof of clam forms, claimants have already submitted to the exclusive jurisdiction of this Court, and have waived the right to a jury trial, for purposes of any objections and/or counterclaims; therefore, any necessary discovery and/or dispositive motions in regards to objections and/or counterclaims will be conducted and resolved by this Court in a summary proceeding. All depositions will be conducted at the Receiver's office: Levine Kellogg Lehman Schneider + Grossman LLP, 201 South Biscayne Boulevard, 34th Floor, Miami, FL 33131;

(vi) At the conclusion of the foregoing discovery period (or, if extended, such extended period), the Receiver will provide the Court with a status report(s) regarding the objections and/or counterclaims, and also move for a Scheduling Order detailing the process for adjudication by this Court of any objections and/or counterclaims at issue for "disputed claims"; and

(vii) The Receiver will determine late claims on a case-by-case basis.

### III. The Claims and Requested Relief

As of this filing, 1,020 claimants have submitted claim forms to the Receiver. The Receiver has analyzed all of the claim forms. The Receiver's recommended disposition of each

---

[9] "Disputed claims" will, therefore, include the claimants who timely responded to the Receiver's objection and/or counterclaim but who disagree with his recommended treatment or claimants who did not cure their deficiencies.

[10] "Disallowed claims" will likely include the claimants who did not timely respond to the Receiver's objection and/or counterclaim, and whose claims should be disallowed in accordance with his recommended treatment in the Objection.

claim, whether as an allowed claim or one to which he is objecting, is reflected on the attached Claim Matrix (Exhibit A). The Claim Matrix lists each claimant's name in alphabetical order. The Claim Matrix also includes abbreviations for the names of the clubs to which the vast majority of claimants transferred their monies to be invested in Trade (for example, "NLC" refers to New Life Club, "CFF" refers to Cash Flow Financial, and "FFPIC" refers to Friends and Family Private Investment Club). If the Receiver has not objected, the claim will be an "allowed claim" and processed in accordance with the above Court-approved procedures [DE 130 and DE 133]. The claim amount for "allowed claims" is approximately $12,400,000.[11] If the Receiver has objected, the claim will be subject to the above Court-approved Objection Procedure [DE 130 and DE 133].

Many claim forms have some type of deficiency which should be easily cured by the claimant, such as signing the claim form, providing proof of identity, agreeing to the Receiver's recommended claim amount or producing the requested records, at which time of complying, the claimant will have an "allowed claim." For this reason, the Receiver proposed the cure period (which this Court has approved). Some investors did not include the bank records confirming their investment, but most of these deficiencies regarding the claim amount were cured by the Receiver, who assembled the bank records to track each investor's investment. In short, the Receiver is hopeful that, after the cure period, there will be very few "disputed claims."

Moreover, pursuant to the Court-approved procedures, the Receiver will be serving a copy of the Claim Matrix on the claimants, and will be simultaneously providing a cover letter, a copy of which is attached as Exhibit B, explaining in "plain English" the distribution and objection procedures, so the claimants understand what to do and how to do it. Moreover, the

---

[11] The claim amount is approximately $15,600,000 for claimants with "allowed claims" and for claimants who agree with the Receiver's recommended claim amount.

Receiver will further update the claimants by posting this filing on the receivership website (www.tradereceiver.com), as well as updating the "Recent News" section of the website regarding this filing (the Receiver has previously updated investors, on a repeated basis, regarding the claims process by posting on the website relevant filings, posting letters to investors, and updating the "Recent News" section).

Attached as Exhibit C is a proposed Order which authorizes the Receiver to make a first interim distribution in the amount of $5.5 million in accordance with the procedures previously approved by this Court [DE 130 and DE 133], to claimants with "allowed claims," and to claimants who properly and timely cure any claim deficiencies, according to the claim amounts as described in the Motion and Claim Matrix (Exhibit A).

## IV. Certification

The Receiver has conferred with the Securities and Exchange Commission and the Commodity Futures Trading Commission regarding this Motion. Neither has an objection to this Motion. Moreover, the Receiver has conferred with the Defendants Philip W. Milton and William H. Center, who also have no objection.

WHEREFORE, the Receiver respectfully requests that this Court issue the attached proposed Order which authorizes the Receiver to make a first interim distribution in the amount of $5.5 million in accordance with the procedures approved in the prior Order on making distributions and objecting to claims [DE 130 and DE 133], to claimants with "allowed claims," and to claimants who properly and timely cure any claim deficiencies, according to the claim amounts as described in the Motion and Claim Matrix (Exhibit A to the Motion).

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

Dated: October 21, 2011.                    Respectfully submitted,

                                                                               LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
*Counsel for the Receiver*
201 South Biscayne Boulevard
34th Floor, Miami Center
Miami, Florida 33131
Telephone:   (305) 403-8788
Facsimile:   (305) 403-8789

By: s:/Patrick J. Rengstl
     Patrick J. Rengstl, Esq.
     FL Bar No. 0581631

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                s:/Patrick J. Rengstl
                                                Patrick J. Rengstl, Esq.

FE8006.doc

## SERVICE LIST

**Patrick J. Rengstl, Esq.**
Attorney for Receiver
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
34th Floor, Miami Center
Miami, Florida 33131
Telephone: 305.403.8788
Facsimile: 305.403.8789

**James D. Sallah, Esq.**
Former Attorney for Trade-LLC, BD LLC,
CMJ Capital LLC, and TWTT-LLC
SALLAH & COX LLC
Boca Corporate Center
2101 N.W. Corporate Blvd., Suite 218
Boca Raton, Florida 33431

**Christopher Bruno, Esq.**
Attorney for Defendant William H. Center
and Gregory Center
BRUNO & DEGENHARDT
10615 Judicial Drive, Suite 703
Fairfax, VA 22030

**John Dunfee, Esq.**
**Jason Mahoney, Esq.**
Attorney for COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street, N.W.
Washington, DC 20581
Direct: (202) 418-5289

**Christopher E. Martin, Esq.**
**Susan E. Curtin, Esq.**
Attorney for Plaintiff
SECURITIES & EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: 305.983.6386
Facsimile: 305.536.4154
Email: martinc@sec.gov
Email: curtins@sec.gov

**Lawrence U. Taube, Esq.**
Attorney for Defendant Philip W. Milton
LAW OFFICES OF LAWRENCE U TAUBE
500 South Australian Avenue, Suite 630
West Palm Beach, Florida 33401