## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 10-CV-80737-HURLEY/HOPKINS
### (Consolidated with Case No. 10-CV-80738-HURLEY/HOPKINS for the Receivership)

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

v.

BD LLC, et al.,
Relief Defendants.
_____/

COMMODITY FUTURES TRADING
COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

BD LLC, et al.,
Relief Defendants.
_____/

### UNOPPOSED FIFTH INTERIM APPLICATION FOR
### ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
### OF EXPENSES TO THE RECEIVER AND HIS COUNSEL

Pursuant to Section 14 of this Court's June 23, 2010 Order Appointing Receiver [DE 12],

Jeffrey C. Schneider, not individually, but solely in his capacity as the court-appointed receiver

(the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center

Richmond LLC (the "Receivership Entities" or "Trade"), and his counsel (the law firm of Levine

Kellogg Lehman Schneider + Grossman LLP),[1] submit their <u>Unopposed</u> Fifth Interim Application for Allowance of Compensation and Reimbursement of Expenses for the time-period of June 1, 2011 through August 31, 2011.[2] The Securities and Exchange Commission (the "SEC") has reviewed this Fee Application and the attached billing records, and it has no objection to the amounts sought herein.

## BACKGROUND

Since his last Report and Fee Application dated August 18, 2011, the Receiver, with the help of his professionals and staff, has filed a motion for a first interim distribution for **$5.5 million** to claimants with "allowed claims" in the receivership. The distribution motion took several months to prepare, because the Receiver had to analyze the 1,020 submitted claim forms and, as further described below, ensure that each claimant's claim amount included the proper *net* amount. The Receiver memorialized his recommended treatment of claims in a voluminous claim matrix. A copy of the Claim Matrix is attached as Exhibit A to the Receiver's Fifth Report and distribution motion. The Claim Matrix has already been sent to all of the investors and creditors, along with a detailed letter explaining the process. The Receiver also finished his review of the **1,020** proof of claim forms submitted by investors/creditors in Trade. In accordance with this Court's Order approving the distribution motion, the Receiver is preparing

---

[1] The Receiver's forensic accountants (MarcumRachlin) and his specially-employed real estate counsel (Hunton & Williams LLP) have filed, and in the future will be filing, separate fee applications. <u>However, those professionals did not participate in the analysis of 1,020 submitted claims forms, which constitute the vast majority of the fees sought herein; rather, those services were performed in-house by the Receiver and his staff.</u>

[2] The Order Appointing Receiver requires the Receiver to file reports and fee applications quarterly. The Receiver's First Fee Application was through August 31, 2010, which was the first quarter of the receivership; the Receiver's Second Fee Application was through November 30, 2010, which was the second quarter; and the Receiver's Third Fee Application was through February 28, 2011, which was the third quarter of the receivership; the Receiver's Fourth Fee Application was through May 31, 2011, which was the fourth quarter of the receivership. This Fee Application is, therefore, through August 31, 2011, which was the fifth quarter of the receivership.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34ᵗʰ Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

to issue distribution checks to claimants with "allowed claims" and claimants who timely and properly cured any claim deficiencies.

In fact, the Receiver's proposed cure period has been working for the benefit of Trade's investors and creditors. Based on his recommendation, this Court authorized the cure period as a self-executing procedure, which allows the Receiver to issue distribution checks promptly after a claimant cures or after the claim issue is otherwise resolved without further Court Order.

Since sending the Claim Matrix to investors and creditors, dozens of them have contacted the Receiver and his professionals – by email, facsimile, mail, and telephone – to cure their claim deficiencies. For example, many claimants forgot to provide a copy of their driver's license or Passport when they submitted their claim form. Many have now provided such a copy, and because they have cured their claim deficiency, the Receiver has accepted their claim and will be issuing them a distribution check. Similarly, the Receiver objected to claims in which his recommended claim amount differed from the claimant's. In response, many of these claimants have now confirmed in writing that they agree with the Receiver's recommended claim amount, and the Receiver will be issuing them a distribution check. The cure period ends on December 5, 2011, and the Receiver anticipates dozens of additional investors and creditors to continue curing any claim deficiencies.

As explained in his Fourth and Fifth Reports and below, the process of compiling a master list of potential investors in Trade, mailing the claim forms to the potential investors, compiling and organizing the various bank records for confirming each investor's investment, reviewing the submitted claim forms (with attachments), and then independently confirming the claim forms with Trade's and/or the investment club's bank records was an extremely time-consuming, methodical process. The primary reason for this was that the Receiver had to ensure that every investor's *net* claim amount was supported by the bank records of the investor, the specific club, and/or Trade. The total amount that the victims claimed to be owed – according to

3

the claim forms received -- was $22,333,684.84, which, as explained in more detail below, was drastically reduced because the Cash Flow Financial ("CFF") investors will be dealt with as part of the CFF receivership.[3]

As of October 2011, the Receiver has finished the lengthy process of reviewing and analyzing the claim forms and their voluminous attachments. The Receiver and his staff have performed that intensive task, in house, which is why this Fee Application (for June to August time) has some more time than prior ones. However, these functions, once performed, need not be repeated before subsequent distributions are made. In addition, the Receiver and his staff (comprised largely of reduced-rate paralegals) have performed these functions for considerably less than outside professionals would have charged.[4]

As further explained below, the process of compiling a master list of potential investors in Trade, mailing the claim forms to the potential investors, compiling and organizing the various bank records for confirming each investor's investment, reviewing the submitted claim forms (with attachments), and then independently confirming the claim forms with Trade's and/or the investment club's bank records has been an extremely time-consuming, methodical process.

The Receiver had no choice but o perform these tasks to ensure that every investor's *net* claim amount is supported by the bank records of the investor, the specific club, and/or Trade. The Receiver has updated investors on a monthly basis on the progress of his review.

In addition to dealing with the claims and distribution process, which has been occupying the vast majority of the Receiver's time, the Receiver has also settled several remaining disputes

---

[3] On March 10, 2011, the CFTC sued CFF, A.J. Watson, Michael Potts, and the Jedburgh Group (as a Relief Defendant) in the Eastern District of Michigan. The CFTC also sought the appointment of a Receiver over CFF. The Court in that action has appointed Phillip S. Stenger (Stenger & Stenger, P.C., 4095 Embassy Dr., S.E., Grand Rapids, Michigan 49546) as Receiver over CFF. Laura D. Duston, also with Stenger & Stenger, P.C., is his counsel.

[4] Before making this decision, the Receiver consulted with two different outside firms that perform claims work; their fees to perform this work would have far exceeded the amount for which the Receiver and his staff performed the work.

and moved to sell personalty derived from investor funds, all of which have added additional funds to the receivership estate. For example, the Receiver signed a purchase contract to sell for **$160,000.00** condominium unit 2305 at the Residences at Midtown, a receivership asset that he secured as part of his settlement with Darren Jarema (a close friend of Milton's and a former Trade employee). The Receiver settled his litigation disputes with: (1) Philip Milton and William Center for stipulated judgments in the amount of $1.8 million in the T & D lawsuit; (2) Charles Reeves in the T & D and MC Building lawsuits for stipulated judgments in the amounts of **$232,000.00** and **$139,000.00**, respectively; (3) Timothy O'Connor in the T & D lawsuit for a stipulated judgment in the amount of **$75,000.00**; and (4) Jason Zamperini in the T & D lawsuit for **$6,000.00**. Similarly, the Receiver obtained a final default judgment against another Milton friend, William Jordan, for **$87,100.00**. Moreover, the Receiver sold jewelry secured from Milton and another profiteer of the fraud for **$6,500.00**. The Receiver also engaged an auctioneer to evaluate additional artwork derived from investor funds. And the Receiver has filed a new lawsuit against a recipient of **$500,000.00** of investor-derived funds.

The Receiver continues to update investors, especially concerning the claims and distribution process, on the receivership website by posting letters to investors at least once a month, and sometimes twice a month. The Receiver also posts the relevant filings from the enforcement and ancillary receivership lawsuits on the website.

## **WORK PERFORMED**

The Receiver's Fifth Report [DE 147], filed concurrently with this Fee Application, chronicles in greater detail the Receiver's work during the application period. The Receiver will not burden this Court by repeating the contents of the Report here. The Receiver asks that this Application be considered after the Fifth Report has been reviewed. And the Receiver asks that this Court appreciate the magnitude of the tasks with which he and his professionals have been

5

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

confronted. And most importantly, the Receiver has begun the process of returning money to defrauded victims. **Indeed, the Receiver's first distribution will be $5.5 million.**

A sampling of the work during the subject application period is detailed below.

### A. Summary of the Claims Procedure

As stated above, I recently moved for authorization to make a first interim distribution of $5.5 million. This Court approved the distribution.

On March 31, 2011, the Receiver mailed approximately 1,500 proof of claim forms to known claimants in Trade. The Receiver previously developed the claim form, which this Court had approved [DE 88 and 98]. The deadline, or "bar date," for submitting the claim forms was May 16, 2011. The Receiver received and has reviewed the 1,020 proof of claim forms submitted.

As stated repeatedly, this is an atypical receivership, because the majority of investors invested in Trade by transferring their investment to the club of which he or she was a member, after which the club transferred (or was allegedly supposed to transfer) the investor's investment to Trade. However, certain clubs (such as CFF and Jool Club) did not transfer all of the investor funds to Trade and, instead, transferred millions of dollars of investor funds elsewhere. Therefore, for the Receiver to ensure that the rightful persons are repaid, the Receiver has repaid, and will be repaying, the individual members of each club and not the club itself.

To perform the claims analysis, the Receiver had to organize literally thousands of pages of bank records from accounts in the name of CFF, New Life Club/PICS INTL, Jool Club, and Family and Friends Private Investment Club. Using a computer program to search for key words in scanned documents, the Receiver "loaded" (or scanned) the clubs' bank records electronically into a readable format to search for investor names. To accomplish this, the Receiver needed to identify the investor name on every check, wire or account statement, and type the name into the program for each corresponding check, wire or account statement. Although this process was

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

time-intensive (due to the vast amount of bank records and investor names), this was the only way to confirm how much an investor transferred to a club(s) and received from a club(s) to confirm what his or her *net* claim amount should be.

After reviewing each claim form, the Receiver then independently confirmed each claimant's individual *net* claim amount. The Receiver had to perform this task because not all investors identified on their claim forms all of the money that they received back from their investments. The Receiver accomplished this by electronically searching for each claimant's name in his electronically-created database of the clubs' bank records to locate all checks, wires or other money transfers from the club(s) to the claimant. The Receiver also searched an electronic excel spreadsheet of Trade's bank records to determine if the claimant received any funds back directly from Trade (as opposed to through the club).

## B. Court-Approved Plan for Distributions and Objections to Claims

Because the Receiver required specific procedures for making distributions and responding to proofs of claim (including objecting to claims), the Receiver filed a motion for such procedures [DE 130], which this Court granted [DE 133]. Below is a summary of the Court-approved procedures.

### 1. Court-Approved Distribution Procedure

The Receiver has made, and will continue to make, distributions on a pro-rata[5] basis based on the investor's or creditor's proportionate share of the total amounts invested by or owed to all investors and creditors in Trade. The claim amount for each investor will be a *net* claim amount, which represents all amounts invested by that investor less all amounts received by that investor.

---

[5] "Pro-rata" means that each claimant with an allowed claim receives a distribution, the amount of which is calculated as follows: the amount to be distributed to all claimants (*i.e.*, $5.5 million) multiplied by a fraction, the numerator of which is the amount of the claimant's allowed claim and the denominator of which is the total of all allowed claims.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

The proof of claim form includes, among other things: (1) the amount of the investment in (or amount owed by) Trade (the "Initial Investment"); and (2) the amounts of any pre-receivership or post-receivership payments received by the investor or creditor regarding Trade (whether in the form of return of principal, payment of alleged profits, payment of alleged interest, or payments by the investment clubs for services as ECM's,[6] compensation consultants, brokers, or the equivalent) ("Returned Amounts"). At the same time, the Receiver has determined the total dollar amount of all investments into, and other claims against, Trade (the "Investment Claim Total"). Using the proof of claim forms to compile the necessary information submitted by investors and creditors, the Receiver has determined a percentage that corresponds to each investor's (or creditor's) share of the Investment Claim Total (the "Investment Claim Percentage").[7]

Because the Receiver is netting claim amounts, each investor's or creditor's Investment Claim Percentage will be adjusted by the amounts received by such investor or creditor by way of Returned Amounts. In other words, if the proof of claim form reveals that an investor or creditor has received Returned Amounts, that investor's or creditor's share in a distribution will be reduced (i.e., netted) by such amounts.

Each allowed claimant will receive a fixed percentage of their allowed claim from the proposed distribution amount based on the following formula: the amount of the _net_ allowed claim divided by the total amount of filed claims multiplied by the proposed distribution amount.

The Receiver currently has approximately $7 million in the receivership estate. As stated above, his first interim distribution (with the consent of the SEC) was in the amount of $5.5

---

[6] "ECM's" is the vernacular used by the clubs to refer to investors who received additional funds from the clubs for bringing in additional investors.

[7] For example, if the Investment Claim Total were $50 million, and John Smith invested $5 million, then John Smith's Investment Claim Percentage would be 10% of the Investment Claim Total.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

million to holders of "allowed claims." Therefore, each claimant with an "allowed claim" has received, or will be receiving, a fixed percentage of his or her allowed claim from the proposed $5.5 million distribution amount based on the following formula: the amount of the claimant's *net* allowed claim divided by the total amount of filed claims multiplied by $5.5 million (the distribution amount).

### 2.  Court-Approved Distribution Procedure for CFF

This Court has authorized the Receiver to make a distribution to CFF's investors by directly paying Phillip S. Stenger as the CFF Receiver. There are several reasons why this is being done. As stated previously, the primary reason is that CFF did not transfer *all* investor funds to Trade but only a small portion; specifically, <u>CFF transferred only $8 million of approximately $40-plus million received from investors to Trade</u>. Mr. Stenger, therefore, will pursue the other funds and, therefore, should be the disbursing agent for <u>all</u> CFF funds. (Any CFF investors that directly invested in Trade will be part of *this* receivership.)

The amount paid to Mr. Stenger, as the CFF Receiver, is a fixed amount based on the net amount of money that CFF transferred to Trade. Mr. Stenger, as the CFF Receiver, has submitted a *net* claim amount of $6,010,359.67, which represents the *net* CFF funds that were transferred to Trade. The Receiver has allowed that claim and has paid Mr. Stenger a distribution check based on that net claim amount. Mr. Stenger intends on, in turn, distributing that money – along with other funds that he currently has or recovers in the future – to CFF investors as part of his receivership. This procedure ensures that Mr. Stenger and the Receiver do not duplicate efforts, which would only increase the expenses to the victims. This procedure also ensures that CFF investors are dealt with in one proceeding rather than two, which again will help to minimize the expenses associated with these recovery and distribution efforts.

The total amount claimed to be owed in this receivership (*i.e.*, the Investment Claim Total as defined above) is $22,333,684.84; this amount includes all non-CFF investments (*i.e.*,

9

investments into Trade directly, New Life Club, Jool Club, Friends and Family Private Investment Club, and DC Advisors) and the CFF Receiver's claim amount.  Because the CFF Receiver's claim has been allowed in this receivership, all CFF investor clams will be discharged in this receivership and transferred to the CFF receivership.

The Receiver has notified CFF investors to contact Mr. Stenger and/or his counsel, Laura D. Duston, with any questions regarding the CFF receivership or this process.  They can be reached at Stenger & Stenger, P.C., 4095 Embassy Dr., S.E., Grand Rapids, Michigan 49546; Telephone: 616.940.1190; Facsimile: 616.940.1192.

### 3.  Court-Approved Procedure for Objecting to Claims

The Court-approved procedure for filing and determining objections to claims (the "Objections Procedure") is as follows:

(i)     At the time of filing a motion(s) for distribution, the Receiver will simultaneously file objections to claims (or parts thereof), or a request for an extension of time to file any such objections, if additional information is needed;

(ii)    The motion(s) for distribution, the objections, and/or counterclaims will be served on the claimants at the address on the claim form submitted by the claimant, by U.S. Mail (foreign claimants will be served by DHL);

(iii)   The holders of "allowed claims" will be paid upon an Order from this Court granting the recommended distribution.  Payments will be made by check and must be cashed within ninety (90) calendar days, absent which the check will be voided, the uncashed checks will be deemed "unclaimed funds" available for distribution to other investors and creditors, and the claim will be deemed expunged and waived.   The Receiver will be authorized to withhold issuing checks for future distributions to claimants who have not cashed checks from a prior distribution;

(iv)    The holders of claims to which the Receiver has objected, in whole or in part, will have forty-five (45) calendar days from the date of service of the objections within which to cure the deficiency and/or to respond in writing.  Such written responses will be served by facsimile, email, or U.S. Mail on the Receiver, c/o Ana Salazar, Receivership Administrator, at Levine Kellogg Lehman Schneider + Grossman LLP, 201 South Biscayne Boulevard, 34th Floor, Miami, FL 33131.  If a claimant adequately and timely cures the deficiency or objection, or otherwise settles with the Receiver, the Receiver will deem the clamant a holder of an "allowed

10

claim" and will immediately pay the claimant his or her distribution amount without further Order from this Court. If a claimant responds and does not adequately cure, the claimant's claim will be subject to the Objection Procedure as a "disputed claim." If a claimant does not respond within the time provided, the Receiver's objections will be deemed sustained and adjudicated with prejudice, and the claim will be treated in accordance with his objections. The Receiver will file periodic status reports with this Court as to claimants who have cured (and who have been paid their distribution amount), claimants who have responded but have not adequately cured (*i.e.*, "disputed claims"), and claimants who have not responded in any manner (and whose claim will be treated in accordance with his objections);

(v)     After a response is served in writing on the Receiver, the claimant and the Receiver will have ninety (90) calendar days to conduct any necessary discovery and file any dispositive motions in regards to the objections for the "disputed claim." Pursuant to the executed proof of clam forms, claimants have already submitted to the exclusive jurisdiction of this Court, and have waived the right to a jury trial, for purposes of any objections; therefore, any necessary discovery and/or dispositive motions in regards to objections will be conducted and resolved by this Court in a summary proceeding. All depositions will be conducted at the Receiver's office: Levine Kellogg Lehman Schneider + Grossman LLP, 201 South Biscayne Boulevard, 34th Floor, Miami, FL 33131;

(vi)    At the conclusion of the foregoing discovery period (or, if extended, such extended period), the Receiver will provide the Court with a status report(s) regarding the objections, and also move for a Scheduling Order detailing the process for adjudication by this Court of any objections at issue for "disputed claims"; and

(vii)   The Receiver will determine late claims on a case-by-case basis.

## C. The Claims and Requested Relief

As stated above, 1,020 claimants submitted claim forms to the Receiver. The Receiver has analyzed all of the claim forms. The Receiver has provided his recommended disposition of each claim – whether as an allowed claim or one to which he objected – on the Claim Matrix attached as Exhibit A to the distribution motion. The Claim Matrix lists each claimant's name in alphabetical order. The Claim Matrix also includes abbreviations for the names of the clubs to which the vast majority of claimants transferred their monies to be invested in Trade. If the Receiver did not object, the claim is an "allowed claim" and processed in accordance with the

11

above Court-approved procedures [DE 130 and DE 133]. If the Receiver objected, the claim will be subject to the above Court-approved Objection Procedure [DE 130 and DE 133].

Many claim forms had some type of deficiency, many of which have been, and should be easily, cured by the claimant (such as signing the claim form, providing proof of identity, agreeing to my recommended claim amount or producing the requested records). Once the deficiency has been cured, the claimant will have an "allowed claim." For this reason, the Receiver proposed the cure period (which this Court has approved). Some investors did not include the bank records confirming their investment, but most of those deficiencies regarding the claim amount were cured by the Receiver, when the Receiver assembled the bank records to track each investor's investment. In short, the Receiver is hopeful that, after the cure period, there will be very few "disputed claims."

Moreover, as stated above, the Receiver mailed a copy of the Claim Matrix to each investor and creditor, and simultaneously provided a cover letter explaining in "plain English" the distribution and objection procedures, so the investors and creditors understand what to do and how to do it. The Receiver also updated the claimants by posting the distribution motion and Claim Matrix on the receivership website (www.tradereceiver.com), as well as updating the "Recent News" section of the website (the Receiver previously updated investors, on a repeated basis, regarding the claims process by posting on the website relevant filings, posting letters to investors, and updating the "Recent News" section).

**D. The Receiver Continues to Take the Necessary Actions with Respect to the Properties Purchased with Receivership Funds**

The Receiver discovered that there are at least five properties that were purchased or improved with investor funds.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

### 1.  Midtown Units 3117 and 3317

The Receiver signed a purchase contract for unit 3117 for $142,500.00; moved for this Court to confirm the sale pursuant to the receivership protocol required by 28 U.S.C. Sections 2001 and 2002, which this Court granted.  The closing occurred on August 26, 2011.

### 2.  Midtown Unit 2305

The Receiver discovered that, soon before it shut down, Trade transferred $200,000 of investor funds to a Trade-insider and a close Milton-friend, Darren Jarema ("Jarema"), for him to purchase a condominium in the Residences at Midtown (the same development where Milton and Center, through CMJ Capital, had purchased the two above condominiums); the condominium is unit 2305.  There is no mortgage on this property.  The Receiver sued Jarema for, among other things, a constructive trust and/or equitable lien on this property.   The Receiver's counsel took Jarema's deposition in January 2011, in which he admitted that – based on his desire to own a home and move out of his grandmother's residence, and based on his request to Milton that Milton take "care of him" so he could purchase his own home – Milton transferred to him $200,000.00 so he could purchase the condominium.   Jarema then wired $30,000.00 of the $200,000.00 back to Milton the next day, as Milton was a prolific "mover" of money.  The Receiver recently moved for summary judgment to take title to this property, after which Jarema agreed to deed the property to the Receiver in full settlement of his claims.  The Receiver has insured, has changed the locks, has retained a realtor to market, and has signed a contract to sell this property for $160,000.00.  The Receiver has moved for confirmation of this sale, which this Court granted.  The closing is expected to occur by the end of November.

### 3.  8143 Greystone East Circle

The Receiver discovered that Center used at least $210,000 of investor funds to renovate the entire inside of his home in Richmond, Virginia.  The Receiver therefore filed and recorded a

lis pendens in Virginia on Center's home. The Receiver hopes to settle his claim as to Center's home improvements in the near future.

In addition, Center used at least $92,000 in investor funds to re-furnish his newly-renovated home. The Receiver has obtained a list of items that Center had purchased from the interior design company to determine what furniture and furnishings should be turned over to the Receiver. The Receiver intends to obtain and sell these items for the benefit of the estate.

### E.  The Receiver Sells Personalty

There is at least one remaining piece of artwork and a generator system from the 19 Blenheim property that will be sold or auctioned in the near future.

Regarding the remaining furniture, fixtures and equipment which was previously located in Trade's office in Richmond, Virginia (which Center ran), Center allegedly sold nearly all the furniture, fixtures, and equipment pre-receivership. The Receiver is still investigating this issue.

### F.  The Receiver Continues to Protect Funds Secured from Frozen Balances at Bank and Brokerage Accounts

The SEC served its freeze Order on a multitude of banks and brokerage firms where the Defendants and the Relief Defendants had accounts. Like the $6.4 million that the Receiver initially secured, these funds have been deposited into the Receiver's protected receivership accounts.

### G.  The Receiver Continues to Take the Necessary Actions with Respect to Personal Items Purchased with Investor-Derived Funds

Milton and the Centers (William and Gregory) signed a Stipulation with the Receiver in which they agreed to list – in a formal sworn accounting – all of their personal items, whether purchased with Trade-derived funds or not, and to produce documents substantiating the information. The items purchased with Trade-derived funds will be turned over to the Receiver, after which the Receiver will sell these items for the benefit of the receivership estate. The Stipulation corrected the provision in the receivership Orders issued in the CFTC action that

14

required the Receiver to take possession of literally every item owned by or purchased by the Defendants. This Court entered an Order approving the Stipulation [DE 39]. Milton and the Centers have provided the Court-ordered sworn accountings to the Receiver, which the Receiver has evaluated. The accountings are deficient in several respects and/or raise questions which require further investigation. The Receiver will attempt to resolve these issues with Milton and the Centers in the near future, absent which the Receiver will seek relief from this Court.

In addition, the Receiver moved for authority to liquidate jewelry secured from Milton and another profiteer of the fraud. The Receiver sold this jewelry for $6,500.00.

### H. The Receiver's Lawsuits against Third Parties Who Profited from the Fraud

The Receiver has filed a sixth lawsuit and has finished resolving his five initial lawsuits against Milton, Center, and several other insiders, entities and/or individuals that received hundreds of thousands of dollars from Trade. The new lawsuit is *Jeffrey C. Schneider, Receiver v. Silent Standby Power Supply LLC, Franklin Freedman, and Siri Salmi*, Case No. 11-80977. That lawsuit is currently pending before the Honorable Donald Middlebrooks. The Receiver has filed a Notice of Pending, Refiled, Related, or Similar Action [DE 6], in which he requested that the case be transferred to this Court, which has presided over the pending Securities and Exchange Commission enforcement action and the Receiver's five prior ancillary receivership lawsuits. The five initial lawsuits were:

1. *Jeffrey C. Schneider, Receiver v. Philip W. Milton, William H. Center, T & D Highway Services LLC, Dawn Peluso, Charles Reeves, Jason Zamperini, Timothy O'Connor, David R. Casazza, Konstantina Casazza, Dennis Sacco, and Roseann Sacco*, Case No. 10-61401 **(now settled)**[8];

2. *Jeffrey C. Schneider, Receiver v. Trinity United Methodist Church of Palm Beach Gardens*, Case No. 10-80941 **(previously settled)**;

---

[8] The Receiver settled with all remaining defendants – Charles Reeves, Philip Milton, William Center, Jason Zamperini, and Timothy O'Connor.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

3. *Jeffrey C. Schneider, Receiver v. Darren Jarema and Jarema Financials Inc.*, Case No. 10-80939 **(previously settled)**;

4. *Jeffrey C. Schneider, Receiver v. MC Building Consultants LLC, Impact Self-Storage LLC, Charles Reeves, and Marisa Reeves*, Case No. 10-80956 **(now settled)**[9]; and

5. *Jeffrey C. Schneider, Receiver v. William Jordan*, Case No. 10-80955 **(final default judgment)**.[10]

The Receiver continues to remain hopeful that, rather than engage in costly and protracted litigation, the Receiver will be in a position to consensually resolve the remaining lawsuit in the coming months. If he is unable to consensually resolve it, he will take the necessary discovery and move for summary judgment, because the issues (in his view) are quite clear.

### I.    The Receiver Continues to Take Discovery and Serve Additional Subpoenas

The Receiver has scheduled Mindy Baransky, Jool Club's owner, for deposition. The Receiver may depose in the coming months, and potentially sue, several friends and insiders who assisted Milton and Center in diverting funds. The Receiver has continued to serve additional subpoenas on various banks, brokerage firms, persons, and entities that have relevant information in the receivership.

### J.    The Receiver Continues to Communicate with Investors

The Receiver and his professionals continue to speak to and correspond with many investors regarding their investments. Direct communication with the individual investors is critical for the Receiver to ensure distributions are made to the rightful owners. The Receiver continues to write and post on the website monthly letters to investors. The letters provide an

---

[9]   The Receiver settled with all remaining defendants – Charles and Marisa Reeves.

[10]   The Receiver obtained a Final Default Judgment against Jordan for $87,100.00.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

update on his activities.   The Receiver also continues to post relevant filings from the enforcement actions and the profiteer actions on the website.

## THE RECEIVER AND HIS COUNSEL

Exhibit A reflects the Receiver's daily time records.  The Receiver's standard hourly rate is $465.00.  For purposes of this receivership, however, the Receiver reduced his hourly rate to $260.00, a reduction of approximately 40%, and capped it at that rate throughout the duration of this case.  For this Fee Application, the Receiver expended a total of 26.10 billable hours at a reduced hourly rate of $260.00 for a total of $6,786.00.

The Receiver's counsel (*i.e.*, Levine Kellogg Lehman Schneider + Grossman LLP), also with capped, reduced rates, were retained and commenced work on the receivership on the date of the Receiver's appointment – June 23, 2010.  This Court granted the Receiver's Motion to Employ them as counsel on July 1, 2010.  The professional services rendered by the Receiver's counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs relating to those services, are set forth and described in more detail on the attached Exhibit B.  Exhibit B reflects the Receiver's counsel's daily time records, which includes the description of services rendered, the hours expended, and the hourly rates.

The Receiver deflected the vast majority of the legal work in this case to Mr. Rengstl.[11]  As this Court can plainly see, fees were kept at a minimum by having Mr. Rengstl, associates (Brandon M. Thompson) and paralegals (Ana Salazar, Maria Carattini, Sara Stein, Elsa Fresco, and Stephanie Moncada) perform the vast majority of the legal work, much of which, again, involved the claims process and the review of the voluminous amount of submitted claim

---

[11]  Despite the fact that Mr. Rengstl is now a partner of the firm, his hourly rate has remained the same as before ($200.00 for associates as opposed to $250.00 for partners) to maximize the recovery of all victims.

forms.[12]  In addition, associate hourly rates were reduced to $200.00 and paralegal hourly rates were reduced to $125.00 for this receivership.

For this Court's convenience, the following is an aggregate tabular summary for the fees and expenses of the Receiver's counsel:

**COUNSEL**:

| Name of Attorney | Reduced Hourly Rate | Time Expended | Total Per Attorney |
|---|---|---|---|
| Patrick J. Rengstl, Esq. | $200.00 | 236.40 | $47,280.00 |
| Brandon M. Thompson, Esq. | $200.00 | 42.10 | $8,420.00 |
| David Levine, Esq. | $250.00 | .50 | $125.00 |
| **SUB TOTAL** | | | $55,825.00 |

**PARAPROFESSIONALS**:

| Name of Paraprofessional | Reduced Hourly Rate | Time Expended | Total Per Paraprofessional |
|---|---|---|---|
| Ana M. Salazar | $125.00 | 313.90 | $39,237.50 |
| Maria A. Carattini | $125.00 | 18.30 | $2,287.50 |
| Sara Stein | $125.00 | 276.50 | $34,562.50 |
| Elsa Fresco | $125.00 | 52.20 | $6,525.00 |
| Stephanie Moncada | $125.00 | 235.70 | $29,462.50 |
| **SUB TOTAL** | | | $112,075.00 |

**COSTS**:

| | | | |
|---|---|---|---|
| **SUB TOTAL** | | | $4,140.71 |

---

[12]  Mr. Rengstl's and Mr. Thompson's standard hourly rates for 2011 are $340.00 and $260.00, respectively.  For purposes of this receivership, their hourly rates were reduced to $200.00.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

**TOTAL DUE IN FEES AND COSTS FOR COUNSEL:**

| TOTAL | | | $172,040.71 |
|-------|--|--|-------------|

Exhibit B is consistent with the tabular summary provided above.

## MEMORANDUM OF LAW[13]

I.      **Summary of Services Rendered by the Receiver and His Counsel**

The professional services rendered by the Receiver and his counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail in Exhibits A and B. The attached records show the time spent. A mere reading of the time summaries cannot completely reflect the full range of services rendered by the Receiver and his counsel, the complexity of the issues, and the pressures of time and performance which have been placed upon the Receiver and his counsel in connection with this case.

The schedules of disbursement for expenses, which are also part of Exhibits A and B, are those actual and necessary expense items, such as process service fees, photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various expenses incurred in connection with this matter. All of these expenses would typically be billed by the Receiver and his counsel to their general commercial clients.

The Receiver and his counsel have not been paid any compensation in connection with the services and expenses set forth herein.

II.     **Applicable Legal Standard Analysis**

In determining attorneys' fees, a court must (1) determine the nature and extent of the

---

[13] Because this filing exceeds twenty (20) pages, and pursuant to Local Rule 7.1(c), the Receiver requests permission herein to file this Fee Application in excess of twenty (20) pages. The Receiver has included an extensive summary of the work performed during this period which is the reason why this Fee Application exceeds twenty (20) pages.

services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974). *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A.    The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature, and extent of the professional services rendered by the Receiver and his counsel during the period covered by this Application. The Receiver and his counsel have no doubt that the time spent is justified by the results that have been achieved thus far. The Receiver and his counsel believe they have played a significant role during the course of these proceedings and will continue to do so in the future.

### B.    The Novelty and Difficulty of the Questions Presented

This case required a high level of skill to secure the receivership assets and to carry out the Receiver's duties.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

**C.**   **The Skill Requisite to Perform the Services Properly**

In order to perform the required services, substantial legal skill and experience in the areas of commercial law and litigation were required of the Receiver and his counsel.   The Receiver is acutely aware of the financial considerations arising in receiverships such as this one. Accordingly, as this Court may gather from Exhibits A and B, the Receiver has very leanly staffed the administration of this case as much as possible, under the direction and immediate supervision of the Receiver.

**D.**   **The Preclusion of Other Employment Due to This Case**

Although the Receiver and his counsel were not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by the Receiver and his counsel in an expeditious and professional manner.  Also, this case required the Receiver and his counsel to devote a significant amount of time during the period of this Application, to the preclusion of expending time on other active matters.

**E.**   **The Customary Fee**

The hourly rates of the Receiver and his counsel set forth on the attached exhibits reflect a rate that is considerably lower than the hourly rates billed by the Receiver and his counsel to clients in other cases. That is because the Receiver views this work as being in the nature of "public service," which the Receiver is proud and privileged to be able to do.   Similar – and higher – rates have been confirmed and approved in other matters in which the Receiver and his counsel have been involved.

**F.**   **Whether the Fee Is Fixed or Contingent**

The compensation of the Receiver and his counsel in this matter is subject to the approval of this Court, and the Receiver and his counsel have not received any compensation for their services rendered to date.  The above factors should be taken into consideration by this Court, and the compensation should reflect the assumption of the risk of non-payment and delay in

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34ᵗʰ Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

payment.

### G.      The Time Limitations Imposed

This case imposed time limitations on the Receiver and his counsel due to the necessity

for rapid resolutions of issues.

### H.      The Experience, Reputation, and Ability of the Professionals

The Receiver and his counsel enjoy a fine reputation and have proven substantial ability

in the fields of equity receiverships, litigation, bankruptcy, creditors' rights, and business

reorganizations.

### I.      The "Undesirability" of the Case

This case is not undesirable, and the Receiver and his counsel are, indeed, privileged to

participate in this proceeding.

### J.      The Nature and Length of Professional Relationship

The Receiver and his counsel have had no prior relationship with Milton, Center, or the

Receivership Entities prior to this case.

### K.      Awards in Similar Cases

The amounts requested by the Receiver and his counsel are not unreasonable in terms of

awards in cases of similar magnitude and complexity.   The compensation requested by the

Receiver and his counsel comports with the mandate of applicable law, which directs that

services be evaluated in light of comparable services performed in other cases in the community.

In fact, the hourly rates requested by the Receiver and his counsel are considerably lower than

the ordinary and usual hourly rates billed by the Receiver and his counsel to their ordinary

clients, notwithstanding the risks associated with this case.  The hourly rates are even lower than

rates received by the Receiver in other receivership cases.

### L.      The Source of Payment for the Amounts Sought Hereunder

The Receiver and his counsel request that the amounts for which payment is authorized

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

hereunder be paid from funds presently held by the Receiver.

## CERTIFICATION

Pursuant to Local Rule 7.1.A.3, undersigned counsel hereby certifies that he has conferred with counsel for the SEC and the Defendants, and is authorized to represent that the SEC and the Defendants have no objection to the relief requested herein.

The Receiver also certifies that:

a. He has read this Application;

b. To the best of his knowledge, information and belief formed after reasonable inquiry, this Application and all fees and expenses therein are true and accurate, and comply with the Billing Instructions;

c. All fees contained in this Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

d. He has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and

e. In seeking reimbursement for a service which he justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), he requests reimbursement only for the amount billed to him by the third party vendor and paid by him to such vendor. To the extent that such services were performed by him as receiver, he certifies that he is not making a profit as receiver on such reimbursable service.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

## CONCLUSION

WHEREFORE, the Receiver and his counsel respectfully request that this Court enter the proposed Order, attached as Exhibit C, (a) authorizing compensation to the Receiver of $6,786.00; (b) authorizing compensation to the Receiver's counsel, Levine Kellogg Lehman Schneider + Grossman LLP, of $167,900.00 and reimbursement of costs of $4,140.71 and (c) for any other relief that is just and proper.

Dated: November 4, 2011               Respectfully submitted,

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
Counsel for the Receiver
201 South Biscayne Boulevard
34th Floor, Miami Center
Miami, Florida 33131
Telephone:     (305) 403-8788
Facsimile:     (305) 403-8789

By:s:/Patrick J. Rengstl
     Patrick J. Rengstl, Esq.
     FL Bar No. 0581631

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s:/Patrick J. Rengstl
Patrick J. Rengstl, Esq.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

## SERVICE LIST

**Patrick J. Rengstl, Esq.**
Attorney for Receiver
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
34th Floor, Miami Center
Miami, Florida 33131
Telephone: 305.403.8788
Facsimile: 305.403.8789

**Christopher E. Martin, Esq.**
**Susan E. Curtin, Esq.**
Attorney for Plaintiff
SECURITIES & EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: 305.983.6386
Facsimile: 305.536.4154
Email: martinc@sec.gov
Email: curtins@sec.gov

**James D. Sallah, Esq.**
Former Attorney for Trade-LLC, BD LLC,
CMJ Capital LLC, and TWTT-LLC
SALLAH & COX LLC
Boca Corporate Center
2101 N.W. Corporate Blvd., Suite 218
Boca Raton, Florida 33431

**Lawrence U. Taube, Esq.**
Attorney for Defendant Philip W. Milton
LAW OFFICES OF LAWRENCE U. TAUBE
500 South Australian Avenue, Suite 630
West Palm Beach, Florida 33401

**Christopher Bruno, Esq.**
Attorney for Defendant William H. Center
and Gregory Center
BRUNO & DEGENHARDT
10615 Judicial Drive, Suite 703
Fairfax, VA 22030

**John Dunfee, Esq.**
**Jason Mahoney, Esq.**
Attorney for COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street, N.W.
Washington, DC 20581
Direct: (202) 418-5289

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789