## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 10-CV-80737-HURLEY/HOPKINS
### (Consolidated with Case No. 10-CV-80738-HURLEY/HOPKINS for the Receivership)

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

v.

BD LLC, et al.,
Relief Defendants.
_____/

COMMODITY FUTURES TRADING
COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

BD LLC, et al.,
Relief Defendants.
_____/

### UNOPPOSED SIXTH INTERIM APPLICATION FOR
### ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
### OF EXPENSES TO THE RECEIVER AND HIS COUNSEL

Pursuant to Section 14 of this Court's June 23, 2010 Order Appointing Receiver [DE 12],

Jeffrey C. Schneider, not individually, but solely in his capacity as the court-appointed receiver

(the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center

Richmond LLC (the "Receivership Entities" or "Trade"), and his counsel (the law firm of Levine

Kellogg Lehman Schneider + Grossman LLP),[1] submit their <u>Unopposed</u> Sixth Interim Application for Allowance of Compensation and Reimbursement of Expenses for the time-period of <u>September 1, 2011 through November 30, 2011</u>.[2]   The Securities and Exchange Commission (the "SEC") has reviewed this Fee Application and the attached billing records, and it has no objection to the amounts sought herein.

## BACKGROUND

During the period for the subject Fee Application (*i.e.*, September to November 2011), the Receiver filed a motion for a first interim distribution for **$5.5 million** to claimants with "allowed claims" in the receivership.   The distribution motion took several months to prepare, because the Receiver had to analyze the 1,020 submitted claim forms and ensure that each claimant's claim amount included the proper *net* amount.   The Receiver memorialized his recommended treatment of claims in a voluminous claim matrix.   A copy of the Claim Matrix is attached as Exhibit A to the Receiver's Fifth Report and distribution motion.   The Claim Matrix was sent to all of the investors and creditors, along with a detailed letter explaining the process.

<u>As of October 2011, the Receiver finished the lengthy process of reviewing and analyzing the claim forms and their voluminous attachments.   The Receiver and his staff have</u>

---

[1]   The Receiver's forensic accountants (MarcumRachlin) and his specially-employed real estate counsel (Hunton & Williams LLP) have filed, and in the future will be filing, separate fee applications.   <u>However, those professionals did not participate in the analysis of 1,020 submitted claims forms, which constitute the vast majority of the fees sought herein; rather, those services were performed in-house by the Receiver and his staff.</u>

[2]   The Order Appointing Receiver requires the Receiver to file reports and fee applications quarterly.   The Receiver's First Fee Application was through August 31, 2010, which was the first quarter of the receivership; the Receiver's Second Fee Application was through November 30, 2010, which was the second quarter; the Receiver's Third Fee Application was through February 28, 2011, which was the third quarter of the receivership; the Receiver's Fourth Fee Application was through May 31, 2011, which was the fourth quarter of the receivership; and the Receiver's Fifth Fee Application was through August 31, 2011, which was the fifth quarter of the receivership.   This Fee Application is, therefore, through November 30, 2011, which was the sixth quarter of the receivership.

2

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

performed that intensive task, in house, which is why this Fee Application (for September to November time) has some more time than prior ones. However, these functions, once performed, need not be repeated before subsequent distributions are made. In addition, the Receiver and his staff (comprised largely of reduced-rate paralegals, including one with a MBA) have performed these functions for considerably less than outside professionals would have charged.[3]

Since his last Report and Fee Application dated November 4, 2011, the Receiver, with the help of his professionals and staff, has completed the first distribution to all of the claimants with "allowed claims" and all of the claimants who cured any claim deficiencies. The distribution was approximately 25% of investor losses. And the proposed cure period, which was self-executing, worked efficiently as planned and helped to cure the majority of the initially deficient claims, which then allowed the Receiver to issue distribution checks promptly without further Court Order or delay.

For example, many claimants neglected to provide a copy of their driver's license or Passport when they submitted their claim form. After receiving the Claim Matrix, many then provided such a copy, and because they cured their claim deficiency, the Receiver accepted their claim and issued them a distribution check without further Court Order or delay. Similarly, the Receiver objected to claims in which his recommended claim amount differed from the claimant's. In response, many of these claimants confirmed in writing that they agreed with the Receiver's recommended claim amount or provided the necessary bank records to prove the investment, and he then issued them a distribution check.

---

[3]   Before making this decision, the Receiver consulted with two different outside firms that perform claims work; their fees to perform this work would have far exceeded the amount for which the Receiver and his staff performed the work.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

Moreover, as an example of one of the more complex claims, there was one claimant whose investment had allegedly been transferred through one intermediary before being transferred to one of Trade's investment clubs (a second intermediary), and then to Trade. That claimant had allegedly made a six-figure investment, so the claim was one of the larger in the estate. However, that claimant did not have the necessary records to prove that his investment was transferred to Trade, and the first intermediary was not cooperating with the Receiver (or the claimant) to provide the necessary bank records to track the investment. Therefore, the Receiver undertook the process of obtaining the first intermediary's bank records through subpoena and forensically analyzing them to track the alleged investment. Because of the Receiver's undertaking, the Receiver was able to confirm the legitimacy of the six-figure investment for the benefit of this claimant, after which the Receiver deemed the claim as "allowed" and issued him a distribution check.

The cure period ended on December 5, 2011, and the majority of the claimants with initially deficient claims cured any claim deficiencies through that date.

In addition to issuing distribution checks, the Receiver and his professionals have addressed accounting issues to ensure that the first distribution complies with IRS requirements. For example, many investors invested through an IRA or other qualified retirement account. This required the Receiver to timely issue a Form1099-R. These were complicated issues that caused a tremendous amount of confusion, particularly for those investors that intended to "roll-over" their distribution checks.

In addition to dealing with the claims and distribution process, which has occupied the vast majority of the Receiver's time the last several months, the Receiver also, since the Fifth Report and Fee Application, closed the sale of insider Darren Jarema's condominium for **$160,000.00**, a receivership asset that the Receiver secured as part of his litigation against

4

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

Jarema.[4]  The Receiver also continued to receive settlement checks on a monthly basis from prior Court-approved settlements.

The Receiver continues to update investors, especially concerning the claims and distribution process, on the receivership website by posting letters.  The Receiver also posts the relevant filings from the enforcement and ancillary receivership lawsuits on the website.

The Receiver is hopeful, if all goes as planned, to make a final distribution by the Summer or Fall of this year and then close the receivership.

## **WORK PERFORMED**

The Receiver's Sixth Report [DE 164], filed concurrently herein, chronicles in greater detail the Receiver's work during the application period.  The Receiver will not burden this Court by repeating the contents of the Report here.  The Receiver asks that this Application be considered after the Sixth Report has been reviewed.  And the Receiver asks that this Court appreciate the magnitude of the tasks with which he and his professionals have been confronted.  And most importantly, the Receiver has completed the first distribution of **$5.5 million** to defrauded victims with "allowed claims."

A sampling of the work during the subject application period is detailed below.

### A.  **First Distribution**

The Receiver has completed issuing his first distribution to claimants with "allowed claims."  Many claim forms had some type of deficiency, many of which were easily cured by the claimant (such as signing the claim form, providing proof of identity, agreeing to the Receiver's recommended claim amount or producing the requested records).  Once the deficiency was cured, the claimant automatically had an "allowed claim" under the protocol that

---

[4]  This Court confirmed the sale of this property [DE 145 and 146].

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

the Receiver developed and this Court approved.[5]  In short, and as the Receiver hoped for, there were very few "disputed claims" after the cure period expired.

Each first distribution check was approximately 25% of the claimant's allowed claim amount.  In other words, if the allowed claim was $10,000, then the first distribution check was approximately $2,500.  The reason for this was that a large proportion of the funds deposited with Trade were used, diverted, or misappropriated in the Trade Ponzi scheme.  The formula, which this Court approved, for calculating the first distribution check was as follows: the amount of the allowed claim divided by the total amount of filed claims as of the first distribution ($22,333,684.84), multiplied by the proposed distribution amount ($5,500,000.00).

The Receiver will be making another – and, probably, final – distribution, but it is expected to be for a smaller percentage.  The Receiver is hoping to make that distribution by the Summer or Fall of 2012, after he resolves pending litigation issues with the remaining receivership targets.

## B.  Form 1099-R

The Receiver conferred on several occasions with his tax professionals to comply with IRS requirements for issuing the first distribution.  If the claimant did not invest through a qualified retirement account, or an IRA, the claimant did not receive a Form 1099.  If the investment was through an IRA, however, the distribution had to be reported on a Form 1099-R, *Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.*

The Receiver informed claimants that when a distribution is made directly to a beneficiary (or investor), the beneficiary likely has 60 days to roll-over the funds into another IRA account to avoid a tax and/or a penalty on an early distribution.  Because the Receiver is not

---

[5]  Some investors did not include the bank records confirming their investment, but most of those deficiencies regarding the claim amount were cured by the Receiver, when he assembled the bank records to track each investor's investment.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

an IRA custodian, he could not re-issue distribution checks to a claimant's account. Therefore, the Receiver informed claimants that if he or she wanted to fund his or her IRA account, then he or she should send the funds from the distribution check to the IRA account as soon as possible. The Receiver also informed claimants to discuss immediately their specific situation with their tax advisor regarding how this rule may apply to them.

### C. Late Claims

The Receiver received several late claims which he will be analyzing. The Receiver will then recommend to this Court what procedure should apply to the late claims. This Court previously granted the Receiver the discretion to determine late claims on a case-by-case basis. The Receiver is hopeful that there will not be any claims that are rejected because they were late.

### D. Disputed Claims

In addition, there are several claimants who have disagreed with the Receiver's objection to their claim. The Receiver has termed these claims as "disputed claims."[6] The Receiver and the claimant had ninety (90) calendar days from their response to the Receiver's objection to conduct any necessary discovery and/or file any dispositive motions in regards to the objections for the "disputed claim."

Pursuant to the executed proof of claim forms, claimants submitted to the jurisdiction of this Court, and waived the right to a jury trial, for purposes of any objections; therefore, any necessary discovery and/or dispositive motions in regards to objections will be conducted and resolved by this Court in a summary proceeding. If the Receiver is unable to resolve his objection, the Receiver has had no choice but to file a motion for summary disposition for this Court to sustain his objection. Those motions for summary disposition involved Jool Club claimants whose funds were not transferred to Trade [DE 151 and 153]. The Receiver provided

---

[6]   "Disputed claims" include the claimants who responded to the Receiver's objection but disagreed with his recommended treatment.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

notice of the motions to the affected disputed claimants and filed their responses for this Court's consideration. This Court recently granted the motions for summary disposition [DE 163].

The Receiver has not needed to file additional motions for summary disposition regarding other disputed claimants because he was able to resolve his objections with them.

Pursuant to this Court's Order approving the distribution and objections procedures [DE 133], if a claimant did not timely respond to the Receiver's objection, the objection was deemed sustained and adjudicated with prejudice, and the claim was to be treated in accordance with the Receiver's objections. The Receiver will soon be filing a status report as to claimants who have cured (and who have been paid their distribution amount), claimants who have responded but have not adequately cured (*i.e.*, "disputed claims"), claimants who had a "disputed claim" but with whom the Receiver has settled (and who have been paid their agreed-upon distribution amount), and claimants who have not responded in any manner (and whose claim will be treated in accordance with the Receiver's objections).[7]

### E. The Receiver Continues to Take the Necessary Actions with Respect to the Properties Purchased with Receivership Funds

#### 1. Midtown Unit 2305

The Receiver discovered that, soon before it shut down, Trade transferred $200,000.00 of investor funds to a Trade-insider and a close Milton-friend, Darren Jarema ("Jarema"), for him to purchase a condominium in the Residences at Midtown (the same development where Milton and Center, through CMJ Capital, had purchased two condominiums); Jarema's condominium was unit 2305. There was no mortgage on this property.

---

[7] "Disallowed claims" will likely include the claimants who did not timely respond to the Receiver's objection, and whose claims should be disallowed in accordance with his recommended treatment in the objection.

8

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

The Receiver sued Jarema for, among other things, a constructive trust and/or equitable lien on this property. The Receiver moved for summary judgment to take title to this property, after which Jarema agreed to deed the property to the Receiver in full settlement of his claims.

The Receiver signed a contract to sell this property for $160,000.00. The Receiver then moved for confirmation of this sale, which this Court granted. The closing occurred on December 1, 2011.

## 2. 8143 Greystone East Circle

During the period, the Receiver moved to compel Defendant William Center ("Center") to provide dates on which the Receiver's appraiser can inspect and appraise his home. Center used at least $210,000 of investor funds to completely renovate his home in Richmond, Virginia. As a result, the Receiver had filed and recorded a lis pendens in Virginia on Center's home so that it could not be sold or further encumbered.

The Receiver retained an appraiser to inspect and perform an appraisal of the home to determine if there is any equity in the home. There is a mortgage on the property, as well as a tax lien. Since filing the motion to compel, Center, through counsel, has contacted the Receiver's counsel and has made himself available for the inspection and appraisal. The Receiver is awaiting the appraisal report. Assuming there is sufficient equity in the home, the Receiver hopes to settle his claim as to Center's home improvements in the near future.

In addition to using investor funds to renovate his home, Center used at least $92,000 in investor funds to re-furnish his newly-renovated home. The Receiver has obtained a list of items that Center purchased from the interior design company to determine what furniture and furnishings should be turned over and liquidated. The Receiver intends to obtain as many of these items as possible and, assuming they still have value, sell them for the benefit of the receivership estate.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

**F.  The Receiver Sells Personalty**

There is at least one remaining piece of artwork, jewelry, and a generator system from the 19 Blenheim property.  Assuming they still have value, they will be sold or auctioned in the near future.  The Receiver recently moved for authority to liquidate jewelry secured from insider Charles Reeves, which this Court granted [DE 156 and 158].

Regarding the remaining furniture, fixtures and equipment which was previously located in Trade's office in Richmond, Virginia (which Center ran), Center allegedly sold nearly all the furniture, fixtures and equipment pre-receivership.  The Receiver is still investigating this issue.

**G.  The Receiver Continues to Protect Funds Secured from Frozen Balances at Bank and Brokerage Accounts**

The SEC served its freeze Order on a multitude of banks and brokerage firms where the Defendants and the Relief Defendants had accounts.  Like the $6.4 million that the Receiver initially secured, these funds have been deposited into the Receiver's protected receivership accounts.

**H.  The Receiver Continues to Take the Necessary Actions with Respect to Personal Items Purchased with Investor-Derived Funds**

Milton and the Centers (William and Gregory) signed a Stipulation with the Receiver in which they agreed to list – in a formal sworn accounting – all of their personal items, whether purchased with Trade-derived funds or not, and to produce documents substantiating the information.  The items purchased with Trade-derived funds will be turned over to the Receiver, after which the Receiver will sell these items for the benefit of the receivership estate.  The Stipulation corrected the provision in the receivership Orders issued in the CFTC action that required the Receiver to take possession of literally every item owned by or purchased by the Defendants.  This Court entered an Order approving the Stipulation [DE 39].  Milton and the Centers have provided the Court-ordered sworn accountings to the Receiver, which the Receiver has evaluated.  The accountings are deficient in several respects and/or raise questions which

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

require further investigation.  The Receiver will attempt to resolve these issues with Milton and the Centers in the near future, absent which the Receiver will seek relief from this Court.

### I.  The Receiver's Lawsuits against Third Parties Who Profited from the Fraud

There is currently only one remaining lawsuit pending against a target that improperly received hundreds of thousands of dollars from Trade.  The lawsuit is *Jeffrey C. Schneider, Receiver v. Silent Standby Power Supply LLC, Franklin Freedman, and Siri Salmi*, Case No. 11-80977.  That lawsuit has been transferred to this Court.  The Receiver continues to remain hopeful that, rather than engage in costly and protracted litigation, he will be able to consensually resolve this lawsuit in the coming months.  If he is unable to consensually resolve it, the Receiver will take the necessary discovery and move for summary judgment, because the issues (in his view) are quite clear.

The Receiver previously obtained several judgments against Trade's insiders and profiteers, such as Charles Reeves, Philip Milton, William Center, Timothy O'Connor, and William Jordan.  The Receiver has recorded those judgments and is exploring collection efforts. The Receiver also continues to receive settlements payments from other prior targets, such as Jason Zamperini, RoadSafe (which acquired T&D), and David and Konstantina Casazza.

### J.  Discovery

The Receiver had no choice but to object to the claims of several Jool Club claimants whose funds were not transferred to Trade (the last transfer from Jool Club to Trade was <u>July 9, 2009</u>).  The Receiver has tried to help these Jool Club claimants by trying to determine where Jool Club sent the money received after July 9, 2009.  The Receiver served a subpoena on Jool Club's owner, Mindy Baransky, and attempted to take her deposition on November 22, 2011. She refused to appear and indicated that she would be asserting her Fifth Amendment Right against self-incrimination.  The Receiver also subpoenaed Jool Club's bank records and

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34ᵗʰ Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

discovered that at least $1 million was sent offshore to an account in Honk Kong. The Receiver consulted with an investigator and an offshore attorney, but the cost of pursuing the funds was unfortunately cost-prohibitive. The Receiver has also corresponded, and spoken, with the CFF Receiver regarding whether there is any forensic connection between CFF and the Jool Club, which – if it existed – would be a potential avenue for them recovering a part of their funds. The Receiver, of course, has also met with, and spoken to, the Federal authorities.

### K. The Receiver Continues to Communicate with Investors

The Receiver and his professionals continue to speak to and correspond with many investors regarding their investments. Direct communication with the individual investors is critical for the Receiver to ensure distributions are made to the rightful owners. The Receiver continues to write and post on the website monthly letters to investors. The letters provide an update on his activities. The Receiver also continues to post relevant filings from the enforcement actions and the profiteer actions on the website.

### THE RECEIVER AND HIS COUNSEL

Exhibit A reflects the Receiver's daily time records. The Receiver's standard hourly rate is $465.00. For purposes of this receivership, however, the Receiver reduced his hourly rate to $260.00, a reduction of approximately 40%, and capped it at that rate throughout the duration of this case. For this Fee Application, the Receiver expended a total of 46.60 billable hours at a reduced hourly rate of $260.00 for a total of $12,116.00.

The Receiver's counsel (*i.e.*, Levine Kellogg Lehman Schneider + Grossman LLP), also with capped, reduced rates, were retained and commenced work on the receivership on the date of the Receiver's appointment – June 23, 2010. This Court granted the Receiver's Motion to Employ them as counsel on July 1, 2010. The professional services rendered by the Receiver's counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs relating to those services, are set forth and described in more detail on the attached Exhibit B. Exhibit B reflects

the Receiver's counsel's daily time records, which includes the description of services rendered, the hours expended, and the hourly rates.

The Receiver deflected the vast majority of the legal work in this case to Mr. Rengstl.[8] As this Court can plainly see, fees were kept at a minimum by having Mr. Rengstl, associates (Brandon M. Thompson) and paralegals (Ana Salazar,[9] Maria Carattini, Sara Stein, and Elsa Fresco) perform the vast majority of the legal work, much of which, again, involved the claims and distribution process.  In addition, associate hourly rates were reduced to $200.00 and paralegal hourly rates were reduced to $125.00 for this receivership.

For this Court's convenience, the following is an aggregate tabular summary for the fees and expenses of the Receiver's counsel:

**COUNSEL**:

| Name of Attorney | Reduced Hourly Rate | Time Expended | Total Per Attorney |
|---|---|---|---|
| Patrick J. Rengstl, Esq. | $200.00 | 339.30 | $67,860.00 |
| Brandon M. Thompson, Esq. | $200.00 | 21.60 | $4,320.00 |
| **SUB TOTAL** | | | **$72,180.00** |

**PARAPROFESSIONALS**:

| Name of Paraprofessional | Reduced Hourly Rate | Time Expended | Total Per Paraprofessional |
|---|---|---|---|
| Ana M. Salazar | $125.00 | 387.00 | $48,375.00 |

---

[8]  Despite the fact that Mr. Rengstl is now a partner of the firm, his hourly rate has remained the same as before ($200.00 for associates as opposed to $250.00 for partners) to maximize the recovery of all victims.  Mr. Rengstl's and Mr. Thompson's standard hourly rates for 2011 are $340.00 and $260.00, respectively.  For purposes of this receivership, their hourly rates were reduced to $200.00.

[9]  Ms. Salazar is the receivership administrator and also has a MBA degree.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

| Maria A. Carattini | $125.00 | 39.40 | $4,925.00 |
|---|---|---|---|
| Sara Stein | $125.00 | 113.50 | $14,187.50 |
| Elsa Fresco | $125.00 | 6.50 | $812.50 |
| **SUB TOTAL** | | | **$68,300.00** |

**COSTS**:

| **SUB TOTAL** | | | **$22,212.67** |
|---|---|---|---|

**TOTAL DUE IN FEES AND COSTS FOR COUNSEL:**

| **TOTAL** | | | **$162,692.67** |
|---|---|---|---|

Exhibit B is consistent with the tabular summary provided above.

## MEMORANDUM OF LAW

I.   **Summary of Services Rendered by the Receiver and His Counsel**

The professional services rendered by the Receiver and his counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail in Exhibits A and B. The attached records show the time spent. A mere reading of the time summaries cannot completely reflect the full range of services rendered by the Receiver and his counsel, the complexity of the issues, and the pressures of time and performance which have been placed upon the Receiver and his counsel in connection with this case.

The schedules of disbursement for expenses, which are also part of Exhibits A and B, are those actual and necessary expense items, such as process service fees, photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various expenses incurred in connection with this matter. All of these expenses would typically be billed by the Receiver and his counsel to their general commercial clients.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

The Receiver and his counsel have not been paid any compensation in connection with the services and expenses set forth herein.

## II.     Applicable Legal Standard Analysis

In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974). *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows:  (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A.     The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature, and extent of the professional services rendered by the Receiver and his counsel during the period covered by this Application. The Receiver and his counsel have no doubt that the time spent is justified by the results that have been achieved thus far. The Receiver and his counsel believe they have played a significant role during the course of these proceedings and will continue to do so in the future.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

**B.**     **The Novelty and Difficulty of the Questions Presented**

This case required a high level of skill to secure the receivership assets and to carry out the Receiver's duties.

**C.**     **The Skill Requisite to Perform the Services Properly**

In order to perform the required services, substantial legal skill and experience in the areas of commercial law and litigation were required of the Receiver and his counsel. The Receiver is acutely aware of the financial considerations arising in receiverships such as this one. Accordingly, as this Court may gather from Exhibits A and B, the Receiver has very leanly staffed the administration of this case as much as possible, under the direction and immediate supervision of the Receiver.

**D.**     **The Preclusion of Other Employment Due to This Case**

Although the Receiver and his counsel were not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by the Receiver and his counsel in an expeditious and professional manner. Also, this case required the Receiver and his counsel to devote a significant amount of time during the period of this Application, to the preclusion of expending time on other active matters.

**E.**     **The Customary Fee**

The hourly rates of the Receiver and his counsel set forth on the attached exhibits reflect a rate that is considerably lower than the hourly rates billed by the Receiver and his counsel to clients in other cases. That is because the Receiver views this work as being in the nature of "public service," which the Receiver is proud and privileged to be able to do.   Similar – and higher – rates have been confirmed and approved in other matters in which the Receiver and his counsel have been involved.

**F.**     **Whether the Fee Is Fixed or Contingent**

The compensation of the Receiver and his counsel in this matter is subject to the approval

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

of this Court, and the Receiver and his counsel have not received any compensation for their services rendered to date. The above factors should be taken into consideration by this Court, and the compensation should reflect the assumption of the risk of non-payment and delay in payment.

**G.     The Time Limitations Imposed**

This case imposed time limitations on the Receiver and his counsel due to the necessity for rapid resolutions of issues.

**H.     The Experience, Reputation, and Ability of the Professionals**

The Receiver and his counsel enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships, litigation, bankruptcy, creditors' rights, and business reorganizations.

**I.     The "Undesirability" of the Case**

This case is not undesirable, and the Receiver and his counsel are, indeed, privileged to participate in this proceeding.

**J.     The Nature and Length of Professional Relationship**

The Receiver and his counsel have had no prior relationship with Milton, Center, or the Receivership Entities prior to this case.

**K.     Awards in Similar Cases**

The amounts requested by the Receiver and his counsel are not unreasonable in terms of awards in cases of similar magnitude and complexity. The compensation requested by the Receiver and his counsel comports with the mandate of applicable law, which directs that services be evaluated in light of comparable services performed in other cases in the community. In fact, the hourly rates requested by the Receiver and his counsel are considerably lower than the ordinary and usual hourly rates billed by the Receiver and his counsel to their ordinary

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

clients, notwithstanding the risks associated with this case.  The hourly rates are even lower than rates received by the Receiver in other receivership cases.

### L.     The Source of Payment for the Amounts Sought Hereunder

The Receiver and his counsel request that the amounts for which payment is authorized hereunder be paid from funds presently held by the Receiver.

## CERTIFICATION

Pursuant to Local Rule 7.1.A.3, undersigned counsel hereby certifies that he has conferred with counsel for the SEC and the Defendants, and is authorized to represent that the SEC and the Defendants have no objection to the relief requested herein.

The Receiver also certifies that:

a.   He has read this Application;

b.   To the best of his knowledge, information and belief formed after reasonable inquiry, this Application and all fees and expenses therein are true and accurate, and comply with the Billing Instructions;

c.   All fees contained in this Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

d.   He has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and

e.   In seeking reimbursement for a service which he justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), he requests reimbursement only for the amount billed to him by the third party vendor and paid

by him to such vendor.  To the extent that such services were performed by him as receiver, he certifies that he is not making a profit as receiver on such reimbursable service.

## CONCLUSION

WHEREFORE, the Receiver and his counsel respectfully request that this Court enter the proposed Order, attached as Exhibit C, (a) authorizing compensation to the Receiver of $12,116.00; (b) authorizing compensation to the Receiver's counsel, Levine Kellogg Lehman Schneider + Grossman LLP, of $140,480.00 and reimbursement of costs of $22,212.67 and (c) for any other relief that is just and proper.

Dated: March 26, 2012                          Respectfully submitted,

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
Counsel for the Receiver
201 South Biscayne Boulevard
34th Floor, Miami Center
Miami, Florida 33131
Telephone:    (305) 403-8788
Facsimile:    (305) 403-8789

By:s:/Patrick J. Rengstl
      Patrick J. Rengstl, Esq.
      FL Bar No. 0581631

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s:/Patrick J. Rengstl
Patrick J. Rengstl, Esq.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

## SERVICE LIST

**Patrick J. Rengstl, Esq.**
Attorney for Receiver
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
34th Floor, Miami Center
Miami, Florida 33131
Telephone: 305.403.8788
Facsimile: 305.403.8789

**James D. Sallah, Esq.**
Former Attorney for Trade-LLC, BD LLC,
CMJ Capital LLC, and TWTT-LLC
SALLAH & COX LLC
Boca Corporate Center
2101 N.W. Corporate Blvd., Suite 218
Boca Raton, Florida 33431

**Christopher Bruno, Esq.**
Attorney for Defendant William H. Center
and Gregory Center
BRUNO & DEGENHARDT
10615 Judicial Drive, Suite 703
Fairfax, VA 22030

**John Dunfee, Esq.**
**Jason Mahoney, Esq.**
Attorney for COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street, N.W.
Washington, DC 20581
Direct: (202) 418-5289

**Christopher E. Martin, Esq.**
**Susan E. Curtin, Esq.**
Attorney for Plaintiff
SECURITIES & EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: 305.983.6386
Facsimile: 305.536.4154
Email: martinc@sec.gov
Email: curtins@sec.gov

**Lawrence U. Taube, Esq.**
Attorney for Defendant Philip W. Milton
LAW OFFICES OF LAWRENCE U. TAUBE
500 South Australian Avenue, Suite 630
West Palm Beach, Florida 33401

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 34th Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789