IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 10-CV-80737-HURLEY/HOPKINS
(Consolidated with Case No. 10-CV-80738-HURLEY/HOPKINS for the Receivership)

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
Plaintiff,
v.
TRADE-LLC, et al.,
Defendants,
v.
BD LLC, et al.,
Relief Defendants.
_____/

COMMODITY FUTURES TRADING
COMMISSION,

Plaintiff,

    v.

TRADE-LLC, et al.,

Defendants,

BD LLC, et al.,

Relief Defendants.
_____/

### RECEIVER'S UNOPPOSED MOTION FOR ENTRY OF ORDER AUTHORIZING FINAL DISTRIBUTION AND ON DISPOSITION OF RECEIVERSHIP CLAIMS, INCLUDING LATE CLAIMS

Jeffrey C. Schneider, not individually, but solely in his capacity as receiver (the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center Richmond LLC (collectively, the "Receivership Entities" or "Trade"), moves this Court for entry of the attached Order (Exhibit H) authorizing the Receiver to make a final distribution of $1,783,000 to

the claimants with "allowed claims"[1] in the Updated Claim Matrix (Exhibit A) and to the late claimants with "allowed claims" in the Late Claim Matrix (Exhibit C). The Receiver also moves for the disposition of certain claims, such as the late claims, in the receivership.

## INTRODUCTION

The Receiver was appointed on June 23, 2010. After six lawsuits (all of which have been resolved), multiple demands and pre-suit settlements and the liquidation of countless items (including homes, apartments, jewelry, furniture, art work, and the like), the Receiver was granted authority to distribute $5.5 million in November 2011. This represented approximately a 25% distribution. The Receiver is now prepared to make a final distribution of $1,783,000, which represents approximately a 9% distribution, and to ultimately close this case.[2]

### I.   The First Distribution

#### A. Summary of Procedure[3]

The Receiver obtained Court-approval to make his first distribution in the amount of $5.5 million in November 2011 [DE 136].[4] Many claim forms initially had some type of deficiency,

---

[1] "Allowed claims" include: (1) previous claimants who timely filed claims to which the Receiver did not object; (2) previous claimants who timely responded to the Receiver's objection and whose claim was resolved; (3) previous claimants who did not respond to the Receiver's objection and thus whose claim was treated as the Receiver recommended; and (4) the claimants who filed late claims to which the Receiver has no objections.

[2] The Receiver plans to keep a reserve of $40,000 to cover the expenses of issuing 1099's, finalizing tax returns, enforcing pending settlement agreements, and winding-down the estate. Depending on judgments the Receiver is holding and/or compliance with outstanding settlements, it is possible that the Receiver will collect additional amounts in the future and move to reopen the case to make another distribution. Unfortunately, however, the Receiver does not hold out much hope that the judgments are collectible. The details of those judgments will be delineated in the Receiver's Final Report.

[3] The Receiver previously filed a Motion delineating the distribution procedures [DE 130], which this Court approved [DE 133].

[4] There were 1,020 proof of claim forms submitted by investors.

many of which were easily cured by the claimant (such as signing the claim form, providing proof of identity, agreeing to the Receiver's recommended claim amount, or producing the requested records).[5] Once the deficiency was cured, the claimant then automatically had an "allowed claim" under the protocol that the Receiver developed and this Court approved. And the proposed cure period, which was self-executing, worked efficiently as planned and helped to cure the majority of the initially deficient claims, which then allowed the Receiver to issue first distribution checks promptly without further Court Order or delay. In short, and as the Receiver hoped for, there were very few "disputed claims" after the cure period expired in early December 2011. The formula for calculating the first distribution checks was as follows: the amount of the "allowed claim" divided by the total amount of filed claims as of the first distribution ($22,333,684.84), multiplied by the first distribution amount ($5,500,000.00).

### B. Disputed Claims

There were several claimants who disagreed with the Receiver's objection to, or recommended disposition of, their claim. These claims were called "disputed claims." The claimant and the Receiver had ninety calendar days to resolve "disputed claims." If the Receiver was unable to resolve the issue, the Receiver could file a motion for summary disposition. The only Motions for Summary Disposition that the Receiver filed involved Jool Club claimants whose funds were not transferred to Trade [DE 151 and 153]. The Receiver provided notice of the motions to the affected "disputed" claimants and filed their responses for this Court's consideration. This Court granted the Motions for Summary Disposition [DE 163].

---

[5] Some investors did not include the bank records confirming their investment, but most of those deficiencies were cured by the Receiver when he assembled the bank records to track each investor's investment.

3

The Receiver did not need to file additional motions for summary disposition regarding other "disputed" claimants because he was able to resolve all issues with those claimants. As stated above, most objections were resolved by the claimant providing the necessary bank records supporting his/her claim, providing a copy of his/her driver's license, or agreeing to the Receiver's proposed claim amount.

Those claimants who had a "disputed claim" but with whom the Receiver settled are now included as "allowed claims" in the Updated Claim Matrix (Exhibit A).

### C. Disallowed Claims

If the Receiver objected to paying a claim and that claimant did not respond to the Receiver's objection, the objection was deemed sustained and the claim denied. These claims were called "disallowed claims." The "disallowed claims" are listed in the Disallowed Matrix, which is attached as Exhibit B. The Disallowed Matrix also includes the Jool Club claimants whose claims were disallowed as a result of the Receiver's Motions for Summary Disposition.

### D. Late Claims

The Receiver received several claims after filing his first distribution motion. The Receiver has designated these as "late claims." In total, the Receiver received 10 late claims, which he has since analyzed. The claims procedure permitted the Receiver to address late claims on a case-by-case basis, using his discretion.

The Receiver has reached an agreement with the majority of late claimants on his/her respective claim amount, which is reflected in the Late Claim Matrix, which is attached as Exhibit C. All but two late claimants have "allowed claims." The two late claims to which the Receiver has objected are described below.

First, late claimants Robert/Virginia Hall were Jool Club investors whose funds were also never transferred to Trade. As previously briefed, the last transfer from Jool Club to Trade was July 9, 2009; however, according to the Halls' claim form, their investment was on July 27, 2009. This was the subject of the Receiver's above-described Motions for Summary Disposition. The Receiver has provided a copy of this Court's Order to Mr. Hall. As such, the Receiver has recommended that the Halls' claim be disallowed. A copy of the Halls' claim form is attached as Exhibit D.

The second late claim to which the Receiver has objected is from late claimant Albert Van Kirk. Mr. Van Kirk's claim form is attached as Exhibit E. Mr. Van Kirk has made a claim for $165,000.00 based on investments in New Life Club. The Receiver analyzed this claim and determined that Mr. Van Kirk received $570,000.00 from Trade directly, despite never investing any funds directly into Trade personally. Therefore, the $570,000.00 from Trade is technically a profit to Mr. Van Kirk. Netting the $570,000.00 profit with the $165,000.00 purported New Life loss results in a net profit of $405,000.00. As such, the Receiver has objected to Mr. Van Kirk's late claim and recommended that his claim be disallowed in this receivership.

The Receiver has not sued Mr. Van Kirk for the $405,000 profit, because from the Receiver's investigation and conferences with the CFF Receiver (Phillip S. Stenger), the Receiver has learned that Mr. Van Kirk invested approximately $433,000 in CFF, but never received any returns from CFF directly. Any losses by Mr. Van Kirk regarding his CFF investment will be part of the claims procedure in the CFF receivership pending in Michigan. A copy of the Receiver's Affidavit on Mr. Van Kirk's claim is attached as Exhibit F.

The Receiver is serving this Motion, along with an explanatory cover letter attached as Exhibit G, by U.S. Mail and electronic mail on the above two late claimants for them to have an

opportunity to respond to this Motion. The Receiver will gladly file any response provided by these two late claimants on their behalf, assuming they do not retain counsel. The Receiver requests that this Court rule on, and sustain, the Receiver's two objections after the briefing of this Motion is complete.

The Receiver is able to issue distribution checks – as part of the first distribution – to the late claimants with "allowed claims," as described in the Late Claim Matrix, because there is enough in reserve from the "disallowed claims" from the first distribution. For example, the previously-requested claim amounts for "disallowed claims" total $1,004,380.19, so that amount now remains to pay the late claimants with "allowed claims" (there is $207,580.21 in "allowed" late claims and $175,000.00 in disputed late claims to which the Receiver has objected). This surplus has permitted the Receiver to now move in this Motion for authority to make a "catch-up" first distribution to those late claimants with "allowed claims" pursuant to the formula from the first distribution. As such, no claims have been rejected because they were late.

## II. Requested Relief

### A. First Distribution for Late Claims

First, the Receiver respectfully requests permission to make a first interim distribution to the late claimants with "allowed claims," according to the formula from the first distribution and according to the claim amounts in the Late Claim Matrix (Exhibit C).

### B. Final Distribution for Allowed Claims, Including Late Claims

Second, the Receiver respectfully requests permission to make a final distribution of $1,783,000 to claimants with "allowed claims" in the Updated Claim Matrix (Exhibit A)[6] and the

---

[6] Regarding CFF investors, this Court has previously authorized the Receiver to make a distribution to CFF's investors by directly paying Phillip S. Stenger as the CFF Receiver. For ease of reference, the Updated Claim Matrix (Exhibit A) has removed the CFF investors'

Late Claim Matrix (Exhibit C), according to their respective claim amounts and based on the procedures previously approved by this Court. Below is a summary of the Court-approved procedures.

The Receiver was authorized to make distributions on a pro-rata[7] basis based on the investor's or creditor's proportionate share of the total amounts invested by or owed to all investors and creditors in Trade. The claim amount for each investor was a *net* claim amount, which represents all amounts invested by that investor subtracted by all amounts received by that investor pre-receivership or post-receivership.

At the same time, the Receiver has determined the total dollar amount of all investments into, and other claims against, Trade (the "Investment Claim Total"). For purposes of this final distribution, the Investment Claim Total is $20,248,773.88.[8] It is a different amount than the first distribution (which was $22,333,684.84), because: (1) the "disallowed claims" have been removed (which has reduced the number); (2) certain claimants with claims to which the Receiver objected agreed with the Receiver's proposed claim amount (which has, in most instances, reduced the number); and (3) the late claims have been included (which has increased the number). Like the first distribution, the Receiver has determined a percentage that

---

individual names and has included Mr. Stenger's name on their behalf (the first Claim Matrix included the CFF investors' names who submitted a claim form). Because the CFF Receiver's claim has been allowed in this receivership, all CFF investor clams will be discharged in this receivership and transferred to the CFF receivership. Because the CFF investors have been essentially removed from the equation to be dealt with as part of the CFF receivership, this has significantly reduced the total amount claimed to be owed in *this* receivership.

[7] "Pro-rata" means that each claimant with an allowed claim receives a distribution, the amount of which is calculated as follows: the amount to be distributed to all claimants (*i.e.*, $1,783,000) multiplied by a fraction, the numerator of which is the amount of the claimant's allowed claim and the denominator of which is the total of all claims.

[8] The Receiver calculated this number by adding the final claim amounts in Exhibits A and C, as well as the claim amounts for the two disputed late claims.

corresponds to each investor's (or creditor's) share of the Investment Claim Total (the "Investment Claim Percentage").[9]

Like the first distribution, each "allowed" claimant has received and/or will receive a fixed percentage of his/her "allowed claim" from the proposed distribution amount, based on the following formula: the amount of the *net* "allowed claim" divided by the total amount of filed claims multiplied by the proposed distribution amount.

After issuing "catch-up" distribution checks to the late claimants with "allowed claims," and assuming that all outstanding expenses to professionals are brought current (which applications have been or will be filed shortly), the Receiver will have approximately $1,823,000 remaining in the receivership estate. The Receiver is proposing that he maintain a reserve of $40,000 to cover future expenses to wind-down the receivership (such as issuing 1099's, finalizing tax returns, and enforcing pending settlement agreements).[10] Therefore, the Receiver's final distribution (with the consent of the SEC) will be in the amount of $1,783,000. The Receiver estimates that the receivership will conclude by the Fall, which is when the Receiver is expected to receive a settlement payment from the final receivership lawsuit (*i.e.*, the Silent Standby case)[11] and to conclude miscellaneous receivership issues and move to close the receivership.

---

[9] For example, if the Investment Claim Total was $50 million, and John Smith invested $5 million, then John Smith's Investment Claim Percentage would be 10% of the Investment Claim Total.

[10] This reserve amount assumes that any pending and upcoming fee applications are granted.

[11] The Receiver has filed a motion to approve that settlement in Case No. 11-CIV-80977 [DE 33], which this Court has granted [DE 34].

### C. The Matrices

The Updated Claim Matrix and Late Claim Matrix list each claimant's name in alphabetical order. The Claim Matrices also include abbreviations for the names of the clubs to which the vast majority of claimants transferred their monies to be invested in Trade (for example, "NLC" refers to New Life Club, "CFF" refers to Cash Flow Financial, and "FFPIC" refers to Friends and Family Private Investment Club). The claim amount in the proposed final distribution for "allowed claims" is approximately $20,073,773.88.[12] The Matrices do not list any pending objections other than the objections as to the above two late claimants (all other objections were previously resolved and/or sustained).

As previously authorized, the holders of "allowed claims" will be paid by the Receiver upon an Order from this Court granting the recommended distribution. Payments by the Receiver will be made by check and must be cashed within ninety calendar days, absent which the check will be voided, the uncashed checks will be deemed "unclaimed funds" available for distribution to other investors and creditors, and the claim will be deemed expunged and waived. The Receiver has been authorized to withhold issuing checks for future distributions to claimants who have not cashed checks from a prior distribution. However, there were no unclaimed funds from the first distribution, so this exclusion will not apply now.

The Receiver will update the claimants by posting this Motion on the receivership website (www.tradereceiver.com), as well as updating the "Recent News" section of the website regarding this filing (the Receiver has previously updated investors, on a repeated basis, regarding the claims process by posting on the website relevant filings, posting letters to investors, and updating the "Recent News" section).

---

[12] The Receiver calculated this number by adding the "allowed claims" in Exhibits A and C.

Attached as Exhibit H is a proposed Order which authorizes the Receiver to make: (1) a first interim distribution to late claimants with "allowed claims" in the Late Claim Matrix (Exhibit C), pursuant to the first distribution procedure; and (2) a final distribution in the amount of $1,783,000 to claimants with "allowed claims" in the Updated Claim Matrix (Exhibit A) and Late Claim Matrix (Exhibit C), pursuant to the procedure discussed above.

### D. Disallowed Claims

The Receiver requests that this Court formally disallow the claims listed in the Disallowed Matrix (Exhibit B) and the two late claims to which the Receiver has objected in the Late Claim Matrix (Exhibit C), so their claims are formally disallowed in a Court Order. The proposed Order attached as Exhibit I formally disallows those claims. The Receiver has separated the Order authorizing the final distribution from the Order disallowing claims to permit the Receiver to immediately take the necessary steps to make a final distribution – as authorized in Exhibit H – without any potential delay in briefing or otherwise by the disputed late claimants.

### III. Certification

The Receiver has conferred with the SEC regarding this Motion, and the SEC has no objection. The Receiver has also conferred with the CFTC, but it takes no position. Moreover, the Receiver has conferred with Defendants Philip W. Milton and William H. Center, who also have no objection.

WHEREFORE, the Receiver respectfully requests that this Court issue the proposed Order attached as Exhibit H which authorizes the Receiver to: (1) make a first interim distribution to late claimants with "allowed claims" in the Late Claim Matrix (Exhibit C), pursuant to the first distribution procedure; and (2) make a final distribution in the amount of $1,783,000, pursuant to the above-described procedure (which is in accordance with the

procedures approved in the prior Order on making distributions [DE 130 and DE 133]) to claimants with "allowed claims" in the Updated Claim Matrix (Exhibit A) and Late Claim Matrix (Exhibit C). The Receiver also respectfully requests that this Court issue the proposed Order attached as Exhibit I which disallows the claims listed in the Disallowed Matrix (Exhibit B) and the two late claims of the Halls and Mr. Van Kirk to which the Receiver has objected in the Late Claim Matrix (Exhibit C).

Dated: August 22, 2012.                    Respectfully submitted,

                                                LEVINE KELLOGG LEHMAN
                                                SCHNEIDER + GROSSMAN LLP
                                                *Counsel for the Receiver*
                                                201 South Biscayne Boulevard
                                                22nd Floor, Miami Center
                                                Miami, Florida 33131
                                                Telephone:     (305) 403-8788
                                                Facsimile:      (305) 403-8789

                                                By: <u>s:/Patrick J. Rengstl</u>
                                                    Patrick J. Rengstl, Esq.
                                                    FL Bar No. 0581631

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s:/Patrick J. Rengstl  
Patrick J. Rengstl, Esq.

G03108.doc

## SERVICE LIST

**Patrick J. Rengstl, Esq.**
Attorney for Receiver
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
22nd Floor, Miami Center
Miami, Florida 33131
Telephone: 305.403.8788
Facsimile: 305.403.8789

**James D. Sallah, Esq.**
Former Attorney for Trade-LLC, BD LLC,
CMJ Capital LLC, and TWTT-LLC
SALLAH & COX LLC
Boca Corporate Center
2101 N.W. Corporate Blvd., Suite 218
Boca Raton, Florida 33431

**Christopher Bruno, Esq.**
Attorney for Defendant William H. Center
and Gregory Center
BRUNO & DEGENHARDT
10615 Judicial Drive, Suite 703
Fairfax, VA 22030

**John Dunfee, Esq.**
**Jason Mahoney, Esq.**
Attorney for COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street, N.W.
Washington, DC 20581
Direct: (202) 418-5289

**Christopher E. Martin, Esq.**
**Susan E. Curtin, Esq.**
Attorney for Plaintiff
SECURITIES & EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: 305.983.6386
Facsimile: 305.536.4154
Email: martinc@sec.gov
Email: curtins@sec.gov

**Lawrence U. Taube, Esq.**
Attorney for Defendant Philip W. Milton
LAW OFFICES OF LAWRENCE U TAUBE
500 South Australian Avenue, Suite 630
West Palm Beach, Florida 33401

**Robert and Virginia Hall**
(Via U.S. Mail and Electronic Mail)

**Albert Van Kirk**
(Via U.S. Mail and Electronic Mail)