**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 10-CV-80737-HURLEY/HOPKINS**
**(Consolidated with Case No. 10-CV-80738-HURLEY/HOPKINS for the Receivership)**

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

v.

BD LLC, et al.,
Relief Defendants.
_____/

COMMODITY FUTURES TRADING
COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

BD LLC, et al.,
Relief Defendants.
_____/

**UNOPPOSED SEVENTH INTERIM APPLICATION FOR**
**ALLOWANCE OF COMPENSATION AND REIMBURSEMENT**
**OF EXPENSES TO THE RECEIVER AND HIS COUNSEL**

Pursuant to Section 14 of this Court's June 23, 2010 Order Appointing Receiver [DE 12],

Jeffrey C. Schneider, not individually, but solely in his capacity as the court-appointed receiver

(the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center

Richmond LLC (the "Receivership Entities" or "Trade"), and his counsel (the law firm of Levine

Kellogg Lehman Schneider + Grossman LLP), submit their <u>Unopposed</u> Seventh Interim

Application for Allowance of Compensation and Reimbursement of Expenses for the <u>eight-</u>

month period of December 1, 2011 through July 31, 2012. The Receiver is filing this Fee Application for an extended period to pay outstanding legal fees for purposes of allowing him to move for a second and final distribution [DE 173] and to ultimately close the case. The Securities and Exchange Commission (the "SEC") has reviewed this Fee Application and the attached billing records, and it has no objection to the amounts sought herein.

## BACKGROUND

During the period for the subject Fee Application (*i.e.*, December 2011 to July 2012), the Receiver issued first distribution checks to claimants with "allowed claims" in the receivership, as well claimants who cured any claim deficiencies.[1] The first distribution was approximately 25% of investor losses. And the proposed cure period, which was self-executing, worked efficiently as planned and helped to cure the majority of the initially deficient claims, which then allowed the Receiver to issue distribution checks promptly without further Court Order or delay. The cure period ended on December 5, 2011, and the majority of the claimants with initially deficient claims cured any claim deficiencies through that date.[2]

During the subject billing period, the Receiver and his professionals also addressed accounting issues to ensure that the first distribution complied with IRS requirements. For example, many investors invested through an IRA or other qualified retirement account. This required the Receiver to timely issue a Form 1099-R.

---

[1] The Receiver's first distribution was in the amount of $5.5 million and made in November 2011 [DE 136].

[2] For example, many claimants neglected to provide a copy of their driver's license or Passport when they submitted their claim form. After receiving the Claim Matrix, many then provided such a copy, and because they cured their claim deficiency, the Receiver accepted their claim and issued them a distribution check without further Court Order or delay. Similarly, the Receiver objected to claims in which his recommended claim amount differed from the claimant's. In response, many of these claimants confirmed in writing that they agreed with the Receiver's recommended claim amount or provided the necessary bank records to prove the investment, and he then issued them a distribution check.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

The Receiver also filed motions for summary disposition for this Court to sustain his claim objections. Those motions for summary disposition involved Jool Club claimants whose funds were not transferred to Trade [DE 151 and 153]. The Receiver provided notice of the motions to the affected disputed claimants and filed their responses for this Court's consideration. This Court granted the motions for summary disposition [DE 163]. The Receiver did not need to file additional motions for summary disposition regarding other disputed claimants because he was able to resolve his objections with them.

The Receiver recently settled the final receivership lawsuit – *i.e.*, the Silent Standby case – in which the estate will receive $50,000 and two judgments against Silent Standby totaling $200,000. Similarly, the Receiver has continued to receive settlement checks on a monthly basis from prior Court-approved settlements.

Finally, the Receiver recently moved for a second and final distribution of $1,783,000 [DE 173], which will allow him to close the receivership in the next few months. The final distribution will be approximately 9% of investor losses. As stated above, the first distribution was approximately 25% of investor losses. Therefore, the Receiver will be returning approximately 34% in total to investors in this receivership in approximately two years. The motion for final distribution also resolved other claim issues, such as the claimants with late claims. The motion for final distribution is further described below.

In the next two to three months, the Receiver plans to: (1) issue the distribution checks, as permitted in the motion for final distribution; (2) issue 1099's to investors; (3) prepare and file tax returns for the Receivership Entities; and (4) complete certain miscellaneous receivership work to wind-down the case.

The Receiver continues to update investors, especially concerning the claims and distribution process, on the receivership website by posting letters. The Receiver also posts the relevant filings from the enforcement and ancillary receivership lawsuits on the website.

3

## WORK PERFORMED

The Receiver's Seventh Report [DE 174], filed concurrently herein, chronicles in greater detail the Receiver's work during the application period.  The Receiver's Sixth Report [DE 164] also chronicles the Receiver's work during the application period.  The Receiver will not burden this Court by repeating the contents of the Reports here.  The Receiver asks that this Application be considered after the Reports have been reviewed.  And the Receiver asks that this Court appreciate the magnitude of the tasks with which he and his professionals have been confronted.  And most importantly, the Receiver has moved for a second and final distribution to defrauded victims with "allowed claims."

A sampling of the work during the subject application period is detailed below.

### A.  First Distribution

The Receiver completed issuing his first distribution to claimants with "allowed claims." Many claim forms had some type of deficiency, many of which were easily cured by the claimant (such as signing the claim form, providing proof of identity, agreeing to the Receiver's recommended claim amount, or producing the requested records).  Once the deficiency was cured, the claimant automatically had an "allowed claim" under the protocol that the Receiver developed and this Court approved.[3]  In short, and as the Receiver hoped for, there were very few "disputed claims" after the cure period expired.

Each first distribution check was approximately 25% of the claimant's allowed claim amount.  The reason for this was that a large proportion of the funds deposited with Trade were used, diverted, or misappropriated in the Trade Ponzi scheme.

---

[3]  Some investors did not include the bank records confirming their investment, but most of those deficiencies regarding the claim amount were cured by the Receiver, when he assembled the bank records to track each investor's investment.

4

## B. Form 1099-R

The Receiver conferred on several occasions with his tax professionals to comply with IRS requirements for issuing the first distribution.  If the claimant did not invest through a qualified retirement account, or an IRA, the claimant did not receive a Form 1099.  If the investment was through an IRA, however, the distribution had to be reported on a Form 1099-R, *Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.*

The Receiver informed claimants that when a distribution is made directly to a beneficiary (or investor), the beneficiary likely has 60 days to roll-over the funds into another IRA account to avoid a tax and/or a penalty on an early distribution.  Because the Receiver is not an IRA custodian, he could not re-issue distribution checks to a claimant's account.  Therefore, the Receiver informed claimants that if he or she wanted to fund his or her IRA account, then he or she should send the funds from the distribution check to the IRA account as soon as possible.  The Receiver also informed claimants to discuss immediately their specific situation with their tax advisor regarding how this rule may apply to them.

## C. Disputed Claims

There were several claimants who disagreed with the Receiver's objection to their claim.  The Receiver termed these claims as "disputed claims."[4]  The Receiver was unable to resolve his objection with several Jool Club claimants, so he had no choice but to file a motion for summary disposition for this Court to sustain his objections.  Those motions for summary disposition involved Jool Club claimants whose funds were not transferred to Trade [DE 151 and 153].  The Receiver provided notice of the motions to the affected disputed claimants and filed their responses for this Court's consideration.  This Court granted the motions for summary

---

[4]  "Disputed claims" include the claimants who responded to the Receiver's objection but disagreed with his recommended treatment.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

disposition [DE 163]. The Receiver has not needed to file additional motions for summary disposition regarding other disputed claimants because he was able to resolve his objections with them.

### D. The Final Distribution

The Receiver recently moved for Court-approval to make a second and final distribution of $1,783,000, which represents approximately a 9% distribution. The Receiver plans to keep a reserve of $40,000 to cover the expenses of issuing 1099's, filing tax returns, and winding-down the estate. Depending on judgments the Receiver is holding and/or pending settlements, it is possible that the Receiver will collect additional amounts in the future and move to reopen the case to make another distribution. Unfortunately, however, the Receiver does not hold out much hope that the judgments are collectible. The details of those judgments will be discussed in the Receiver's Final Report.

For purposes of the final distribution, the Investment Claim Total (*i.e.*, the total dollar amount of <u>all</u> investments into, and other claims against, Trade) is $20,248,773.88. It is a different amount than the first distribution (which was $22,333,684.84), because: (1) the "disallowed claims" have been removed (which has reduced the number); (2) certain claimants with claims to which the Receiver objected agreed with his proposed claim amount (which has, in most instances, reduced the number); and (3) the late claims have been included (which has increased the number).

Like the first distribution, each "allowed" claimant has received and/or will receive a fixed percentage of his/her "allowed claim" from the proposed distribution amount, based on the following formula: the amount of the *net* "allowed claim" divided by the total amount of filed claims multiplied by the proposed distribution amount.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22ⁿᵈ Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

### E.  Late Claims

The Receiver received several late claims after filing the motion for first distribution which he has analyzed.  The Receiver designated these as "late claims."  In total, the Receiver received 10 late claims, which he has since analyzed.  The claims procedure permitted the Receiver to address late claims on a case-by-case basis.  The Receiver's recommendation as to each late claimant is discussed in the motion for final distribution.

The Receiver reached an agreement with the majority of late claimants on his/her respective claim amount, which is reflected in the Late Claim Matrix attached as Exhibit C to the motion for final distribution.  All but two late claimants have "allowed claims"; the other two have claims to which the Receiver objected.  The Receiver requested that this Court rule on, and sustain, his two objections after the briefing of the motion for final distribution is complete.

The Receiver is able to issue distribution checks – as part of the first distribution – to the late claimants with "allowed claims," because there is enough in reserve from the "disallowed claims" from the first distribution.  For example, the previously-requested claim amounts for "disallowed claims" total $1,004,380.19, so that amount is now left over to pay the late claimants with "allowed claims" (there is $207,580.21 in "allowed" late claims and $175,000.00 in disputed late claims to which the Receiver has objected).  This surplus has permitted the Receiver to move for authority to make a "catch-up" first distribution to those late claimants with "allowed claims" pursuant to the formula from the first distribution.  As such, no claims have been rejected because they were late.

### F.  Disallowed Claims

If the Receiver objected to paying a claim in the first distribution and that claimant did not respond to his objection, the objection was deemed sustained and the claim denied.  These claims were called "disallowed claims."  As part of the motion for final distribution, the Receiver requested that this Court formally disallow those claims in a Court Order.  The "disallowed

7

claims" were listed in the Disallowed Matrix attached as Exhibit B to the motion for final distribution.

### G. The Receiver Continues to Take the Necessary Actions with Respect to the Properties Purchased with Receivership Funds

#### 1. Midtown Unit 2305

The Receiver discovered that, soon before it shut down, Trade transferred $200,000 of investor funds to a Trade-insider and a close Milton-friend, Darren Jarema ("Jarema"), for him to purchase a condominium in the Residences at Midtown (the same development where Milton and Center, through CMJ Capital, had purchased two condominiums); Jarema's condominium was unit 2305. There was no mortgage on this property.

The Receiver sued Jarema for, among other things, a constructive trust and/or equitable lien on this property. The Receiver moved for summary judgment to take title to this property, after which Jarema agreed to deed the property to the Receiver in full settlement of his claims.

The Receiver signed a contract to sell this property for $160,000. The Receiver then moved for confirmation of this sale, which this Court granted. The closing occurred on December 1, 2011.

#### 2. 8143 Greystone East Circle

Defendant William Center ("Center") used at least $210,000 of investor funds to renovate his home in Richmond, Virginia. As a result, the Receiver had filed and recorded a lis pendens in Virginia on Center's home so that it could not be sold or further encumbered. There is a mortgage on the property, as well as a tax lien.

The Receiver retained an appraiser to inspect and perform an appraisal of the home to determine if there is any equity in the home. During the period, the Receiver moved to compel Center to provide dates on which the Receiver's appraiser can inspect and appraise his home.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

Center, through counsel, then contacted the Receiver's counsel and made himself available for the inspection and appraisal.

The Receiver received the appraisal report. The Receiver is evaluating whether there is sufficient equity in the home to justify turnover to, and sale by, him.

In addition to using investor funds to renovate his home, Center also used at least $92,000 in investor funds to re-furnish his home. The Receiver obtained a list of items that Center purchased from the interior design company to determine what furniture and furnishings may be subject to turnover and liquidation. The Receiver is evaluating these issues.

### H. Furniture, Fixtures, and Equipment

There is at least one remaining piece of artwork, jewelry, some "Trade" signage, and a generator system from the 19 Blenheim property. Assuming they still have value that justifies the effort, they will be sold or auctioned in the near future. The jewelry consists of a watch secured from the settlement with insider Charles Reeves (the Receiver filed a motion to liquidate this item, which this Court granted [DE 156 and 158]).

### I. The Receiver Continues to Protect Funds Secured from Frozen Balances at Bank and Brokerage Accounts

The Receiver previously obtained frozen balances in various accounts, the largest balances of which ranged from approximately $113,000 to approximately $50,000.

### J. The Receiver Continues to Take the Necessary Actions with Respect to Personal Items Purchased with Investor-Derived Funds

Milton and the Centers (William and Gregory) signed a Stipulation with the Receiver in which they agreed to list – in a formal sworn accounting – all of their personal items, whether purchased with Trade-derived funds or not, and to produce documents substantiating the information. The Stipulation corrected the provision in the receivership Orders issued in the CFTC action that required the Receiver to take possession of literally every item owned by or purchased by the Defendants. This Court entered an Order approving the Stipulation [DE 39].

9

Milton and the Centers have provided the Court-ordered sworn accountings to the Receiver, which he has evaluated. The accountings have raised questions which require further investigation. The Receiver expects to resolve these issues with Milton and the Centers in the near future.

### K. The Receiver's Lawsuits against Third Parties Who Profited from the Fraud

As of the Receiver's last Report, there was only one remaining lawsuit pending against a target that improperly received hundreds of thousands of dollars from Trade. The lawsuit is *Jeffrey C. Schneider, Receiver v. Silent Standby Power Supply LLC, Franklin Freedman, and Siri Salmi*, Case No. 11-80977. The Receiver recently settled that lawsuit and has moved for Court-approval. As stated above, pursuant to that settlement, the estate will receive $50,000 and two judgments against Silent Standby totaling $200,000.

The Receiver also moved – under seal – for a break order against Timothy O'Connor, who at a meeting in April 2012 admitted to committing perjury at his deposition and lying to the Receiver (and Federal authorities) about receiving cash (literally) on the back-end of the T & D transaction. In the Receiver's opinion, the most probable reason for O'Connor to lie about the cash was because O'Connor likely still had some or all of the cash. This Court granted the motion and issued a Sealed Order Granting Ex Parte Motion for Break Order in Aid of Execution (the "Break Order") against O'Connor.

On the morning of June 27, 2012, several United States Marshals officers, the Receiver and the undersigned executed the Break Order and entered O'Connor's rental home to search for the cash that he had received from the Trade Ponzi scheme.

The Marshals officers entered the property from the back door, which had, surprisingly, been left unlocked. Therefore, the Marshals officers did not need to break down any doors to gain access to the property. The officers immediately searched the premises to confirm whether

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

anybody was present.  After confirming that no one was present, the Marshals officers opened the front door for the Receiver and the undersigned to gain access to the property.  The Receiver and the undersigned then searched the entire home, backyard, and shed for several hours. Unfortunately, the Receiver and the undersigned did not locate the cash at the property.

Although the Receiver did not locate the cash, he did locate assets which O'Connor had failed to disclose to the Receiver and/or had lied about to him.  In fact, these discoveries were shocking because O'Connor had always stated that he did not have anything of value and did not have any money to purchase anything of value.  The Receiver, however, located a 100th anniversary Harley Davidson motorcycle in the driveway of the property.  The motorcycle was registered to O'Connor in April 2012.  Curiously, the Receiver met with O'Connor in April 2012, during which O'Connor was, again, asked if he had anything of value.  The answer, again, was that he did not.  In addition, the Receiver located new computer equipment (including lap tops), entertainment equipment (including an iPod), luggage, bicycles, and several paddleboards.

In addition, the Receiver also continued to receive settlements payments from other prior targets, such as Jason Zamperini and David and Konstantina Casazza.

**L.  The Receiver Continues to Communicate with Investors**

The Receiver and his professionals continue to speak to and correspond with many investors regarding their investments.  Direct communication with the individual investors is critical for the Receiver to ensure distributions are made to the rightful owners.  The Receiver continues to write and post on the website monthly letters to investors.  The letters provide an update on his activities.   The Receiver also continues to post relevant filings from the enforcement actions and the profiteer actions on the website.

## THE RECEIVER AND HIS COUNSEL

Exhibit A reflects the Receiver's daily time records.  The Receiver's standard hourly rates are $465.00 (2011) and $485.00 (2012).  For purposes of this receivership, however, the

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

Receiver reduced his hourly rate to $260.00, a reduction of approximately 40%, and capped it at that rate throughout the duration of this case.  For this Fee Application, the Receiver expended a total of 44.80 billable hours at a reduced hourly rate of $260.00 for a total of **$11,648.00**.

The Receiver's counsel (*i.e.*, Levine Kellogg Lehman Schneider + Grossman LLP), also with capped, reduced rates, were retained and commenced work on the receivership on the date of the Receiver's appointment – June 23, 2010.  This Court granted the Receiver's Motion to Employ them as counsel on July 1, 2010.  The professional services rendered by the Receiver's counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs relating to those services, are set forth and described in more detail on the attached Exhibit B.  Exhibit B reflects the Receiver's counsel's daily time records, which includes the description of services rendered, the hours expended, and the hourly rates.

The Receiver deflected the vast majority of the legal work in this case to Mr. Rengstl.[5] As this Court can plainly see, fees were kept at a minimum by having Mr. Rengstl and paralegals (Ana Salazar,[6] Maria Carattini, and Sara Stein) perform the vast majority of the legal work, much of which, again, involved the claims and distribution process.  In addition, associate hourly rates were reduced to $200.00 and paralegal hourly rates were reduced to $125.00 for this receivership.

For this Court's convenience, the following is an aggregate tabular summary for the fees and expenses of the Receiver's counsel:

---

[5]  Despite the fact that Mr. Rengstl is now a partner of the firm, his hourly rate has remained the same as before ($200.00 for associates as opposed to $250.00 for partners) to maximize the recovery of all victims.  Mr. Rengstl's hourly rates for 2011 and 2012 are $340.00 and $360.00, respectively.

[6]  Ms. Salazar is the receivership administrator and also has a MBA degree.

**COUNSEL**:

| Name of Attorney | Reduced Hourly Rate | Time Expended | Total Per Attorney |
|---|---|---|---|
| Patrick J. Rengstl, Esq. | $200.00 | 299.70 | $59,940.00 |
| Brandon M. Thompson, Esq. | $200.00 | .2 | $40.00 |
| Andrew S. Brown, Esq. | $200.00 | 4.00 | $800.00 |
| **SUB TOTAL** | | | **$60,780.00** |

**PARAPROFESSIONALS**:

| Name of Paraprofessional | Reduced Hourly Rate | Time Expended | Total Per Paraprofessional |
|---|---|---|---|
| Ana M. Salazar | $125.00 | 402.30 | $50,287.50 |
| Maria A. Carattini | $125.00 | 16.70 | $2,087.50 |
| Sara Stein | $125.00 | 89.50 | $11,187.50 |
| **SUB TOTAL** | | | **$63,562.50** |

| **COSTS**: | | | **$4,266.70** |
|---|---|---|---|

| **SUB TOTAL** | | | **$124,342.50** |
|---|---|---|---|

**TOTAL DUE IN FEES AND COSTS FOR COUNSEL**:

| **TOTAL** | | | **$128,609.20** |
|---|---|---|---|

Exhibit B is consistent with the tabular summary provided above.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

## MEMORANDUM OF LAW

### I.   Summary of Services Rendered by the Receiver and His Counsel

The professional services rendered by the Receiver and his counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail in Exhibits A and B.  The attached records show the time spent.  A mere reading of the time summaries cannot completely reflect the full range of services rendered by the Receiver and his counsel, the complexity of the issues, and the pressures of time and performance which have been placed upon the Receiver and his counsel in connection with this case.

The schedules of disbursement for expenses, which are also part of Exhibits A and B, are those actual and necessary expense items, such as process service fees, photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various expenses incurred in connection with this matter.  All of these expenses would typically be billed by the Receiver and his counsel to their general commercial clients.

The Receiver and his counsel have not been paid any compensation in connection with the services and expenses set forth herein.

### II.   Applicable Legal Standard Analysis

In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974).  *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context).  The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows:  (1) the time and labor required; (2)

14

the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A.  The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature, and extent of the professional services rendered by the Receiver and his counsel during the period covered by this Application.  The Receiver and his counsel have no doubt that the time spent is justified by the results that have been achieved thus far.  The Receiver and his counsel believe they have played a significant role during the course of these proceedings and will continue to do so in the future.

### B.  The Novelty and Difficulty of the Questions Presented

This case required a high level of skill to secure the receivership assets and to carry out the Receiver's duties.

### C.  The Skill Requisite to Perform the Services Properly

In order to perform the required services, substantial legal skill and experience in the areas of commercial law and litigation were required of the Receiver and his counsel.  The Receiver is acutely aware of the financial considerations arising in receiverships such as this one. Accordingly, as this Court may gather from Exhibits A and B, the Receiver has very leanly staffed the administration of this case as much as possible, under the direction and immediate supervision of the Receiver.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

**D.      The Preclusion of Other Employment Due to This Case**

Although the Receiver and his counsel were not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by the Receiver and his counsel in an expeditious and professional manner.  Also, this case required the Receiver and his counsel to devote a significant amount of time during the period of this Application, to the preclusion of expending time on other active matters.

**E.      The Customary Fee**

The hourly rates of the Receiver and his counsel set forth on the attached exhibits reflect a rate that is considerably lower than the hourly rates billed by the Receiver and his counsel to clients in other cases. That is because the Receiver views this work as being in the nature of "public service," which the Receiver is proud and privileged to be able to do.   Similar – and higher – rates have been confirmed and approved in other matters in which the Receiver and his counsel have been involved.

**F.      Whether the Fee Is Fixed or Contingent**

The compensation of the Receiver and his counsel in this matter is subject to the approval of this Court, and the Receiver and his counsel have not received any compensation for their services rendered to date.  The above factors should be taken into consideration by this Court, and the compensation should reflect the assumption of the risk of non-payment and delay in payment.

**G.      The Time Limitations Imposed**

This case imposed time limitations on the Receiver and his counsel due to the necessity for rapid resolutions of issues.

**H.      The Experience, Reputation, and Ability of the Professionals**

The Receiver and his counsel enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships, litigation, bankruptcy, creditors' rights, and business

reorganizations.

### I.      The "Undesirability" of the Case

This case is not undesirable, and the Receiver and his counsel are, indeed, privileged to participate in this proceeding.

### J.      The Nature and Length of Professional Relationship

The Receiver and his counsel have had no prior relationship with Milton, Center, or the Receivership Entities prior to this case.

### K.      Awards in Similar Cases

The amounts requested by the Receiver and his counsel are not unreasonable in terms of awards in cases of similar magnitude and complexity. The compensation requested by the Receiver and his counsel comports with the mandate of applicable law, which directs that services be evaluated in light of comparable services performed in other cases in the community. In fact, the hourly rates requested by the Receiver and his counsel are considerably lower than the ordinary and usual hourly rates billed by the Receiver and his counsel to their ordinary clients, notwithstanding the risks associated with this case. The hourly rates are even lower than rates received by the Receiver in other receivership cases.

### L.      The Source of Payment for the Amounts Sought Hereunder

The Receiver and his counsel request that the amounts for which payment is authorized hereunder be paid from funds presently held by the Receiver.

### CERTIFICATION

Pursuant to Local Rule 7.1.A.3, undersigned counsel hereby certifies that he has conferred with counsel for the SEC and the Defendants, and is authorized to represent that the SEC and the Defendants have no objection to the relief requested herein.

The Receiver also certifies that:

a.   He has read this Application;

17

b.  To the best of his knowledge, information and belief formed after reasonable inquiry, this Application and all fees and expenses therein are true and accurate, and comply with the Billing Instructions;

c.  All fees contained in this Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

d.  He has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and

e.  In seeking reimbursement for a service which he justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), he requests reimbursement only for the amount billed to him by the third party vendor and paid by him to such vendor.  To the extent that such services were performed by him as receiver, he certifies that he is not making a profit as receiver on such reimbursable service.

## CONCLUSION

WHEREFORE, the Receiver and his counsel respectfully request that this Court enter the proposed Order, attached as Exhibit C, (a) authorizing compensation to the Receiver of $11,648.00; (b) authorizing compensation to the Receiver's counsel, Levine Kellogg Lehman Schneider + Grossman LLP, of $124,342.50 and reimbursement of costs of $4,266.70 and (c) for any other relief that is just and proper.

Dated: August 23, 2012                 Respectfully submitted,

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
Counsel for the Receiver
201 South Biscayne Boulevard
22nd Floor, Miami Center
Miami, Florida 33131
Telephone:    (305) 403-8788
Facsimile:    (305) 403-8789

By:s:/Patrick J. Rengstl
    Patrick J. Rengstl, Esq.
    FL Bar No. 0581631

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 23, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s:/Patrick J. Rengstl</u>
Patrick J. Rengstl, Esq.

# SERVICE LIST

**Patrick J. Rengstl, Esq.**
Attorney for Receiver
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
22nd Floor, Miami Center
Miami, Florida 33131
Telephone: 305.403.8788
Facsimile: 305.403.8789

**James D. Sallah, Esq.**
Former Attorney for Trade-LLC, BD LLC,
CMJ Capital LLC, and TWTT-LLC
SALLAH & COX LLC
Boca Corporate Center
2101 N.W. Corporate Blvd., Suite 218
Boca Raton, Florida 33431

**Christopher Bruno, Esq.**
Attorney for Defendant William H. Center
and Gregory Center
BRUNO & DEGENHARDT
10615 Judicial Drive, Suite 703
Fairfax, VA 22030

**John Dunfee, Esq.**
**Jason Mahoney, Esq.**
Attorney for COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street, N.W.
Washington, DC 20581
Direct: (202) 418-5289

**Christopher E. Martin, Esq.**
**Susan E. Curtin, Esq.**
Attorney for Plaintiff
SECURITIES & EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: 305.983.6386
Facsimile: 305.536.4154
Email: martinc@sec.gov
Email: curtins@sec.gov

**Lawrence U. Taube, Esq.**
Attorney for Defendant Philip W. Milton
LAW OFFICES OF LAWRENCE U. TAUBE
500 South Australian Avenue, Suite 630
West Palm Beach, Florida 33401

21