IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 10-CV-80737-HURLEY/HOPKINS
(Consolidated with Case No. 10-CV-80738-HURLEY/HOPKINS for the Receivership)

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

v.

BD LLC, et al.,
Relief Defendants.
_____/

COMMODITY FUTURES TRADING
COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

BD LLC, et al.,
Relief Defendants.
_____/

## NOTICE OF FILING FINAL REPORT OF RECEIVER

Jeffrey C. Schneider, not individually, but solely in his capacity as the court-appointed receiver (the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center Richmond LLC, hereby files the attached Final Report of Receiver dated April 30, 2013.

Dated: April 30, 2013

Respectfully submitted,

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
Counsel for the Receiver
201 South Biscayne Boulevard
22nd Floor, Miami Center
Miami, Florida 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789

By: s:/Patrick J. Rengstl
    Patrick J. Rengstl, Esq.
    FL Bar No. 0581631

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                        s:/Patrick J. Rengstl
                        Patrick J. Rengstl, Esq.

## SERVICE LIST

**Patrick J. Rengstl, Esq.**
Attorney for Receiver
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
22nd Floor, Miami Center
Miami, Florida 33131
Telephone: 305.403.8788
Facsimile: 305.403.8789

**James D. Sallah, Esq.**
Former Attorney for Trade-LLC, BD LLC,
CMJ Capital LLC, and TWTT-LLC
SALLAH & COX LLC
Boca Corporate Center
2101 N.W. Corporate Blvd., Suite 218
Boca Raton, Florida 33431

**Gregory Center**
1210 Colonial Road
McLean, VA 22101
Telephone: 202.713.6660
gregorycenter@gmail.com
**(Email and U.S. Mail)**

**William Center**
8143 Greystone Circle East
Richmond, VA 23229
Telephone: 804.212.9663
center.bill@gmail.com
**(Email and U.S. Mail)**

**John Dunfee, Esq.**
**Jason Mahoney, Esq.**
Attorney for COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street, N.W.
Washington, DC 20581
Direct: (202) 418-5289

**Christopher E. Martin, Esq.**
**Susan E. Curtin, Esq.**
Attorney for Plaintiff
SECURITIES & EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: 305.983.6386
Facsimile: 305.536.4154
Email: martinc@sec.gov
Email: curtins@sec.gov

**Lawrence U. Taube, Esq.**
Attorney for Defendant Philip W. Milton
LAW OFFICES OF LAWRENCE U TAUBE
500 South Australian Avenue, Suite 630
West Palm Beach, Florida 33401

**Laura D. Duston, Esq.**
Counsel for Phillip S. Stenger
Stenger & Stenger, P.C.
2618 East Paris Ave SE
Grand Rapids, Michigan 49546
Direct: (616) 988-2260
**(Email and U.S. Mail)**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 10-CV-80737-HURLEY/HOPKINS
(Consolidated with Case No. 10-CV-80738-HURLEY/HOPKINS for the Receivership)

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

v.

BD LLC, et al.,
Relief Defendants.
_____/

COMMODITY FUTURES TRADING
COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

BD LLC, et al.,
Relief Defendants.
_____/

## FINAL REPORT OF RECEIVER JEFFREY C. SCHNEIDER

Jeffrey C. Schneider, not individually, but solely in his capacity as receiver (the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center Richmond LLC (collectively, the "Receivership Entities" or "Trade"),[1] submits his Final Report.

---

[1] The Commodity Futures Trading Commission (the "CFTC") enforcement action (Case No. 9:10-CV-80738) has been transferred to this Court and its receivership proceeding has been consolidated.

I.      **General Overview**

I am happy to report that, after two and a half years, nearly a dozen lawsuits or pre-suit disputes (all of which were settled without costly trials), one contempt proceeding, the sale of five properties and literally dozens of items of personalty and the distribution of over $7 million to victims (representing a 34% recovery), I have concluded all of my material duties as Receiver in this case. Therefore, concurrently with this Final Report, I have moved for my discharge and my professionals' discharge [DE 188]. I will also be submitting my latest Fee Application in the near future.

At this juncture, I have issued all final distribution checks to investors with "allowed claims," and, therefore, have concluded my final distribution in the amount of $1,783,000. The first distribution, in the amount of $5.5 million, was concluded approximately one year ago, in November 2011. I have thus, as stated above, returned approximately 34% in total to investors in approximately two years (the final distribution was approximately 9% of investor losses and the first distribution was approximately 25% of investor losses).

I have issued 1099's to all investors who invested through retirement accounts. I will also be filing all tax returns for the Receivership Entities for tax years 2006-2010 (the Receivership Entities had failed to file these tax returns pre-receivership, which obligated me to prepare and file them now).

I have settled, on an amended basis, my lawsuit against Silent Standby and Franklin Freedman.[2] That action was the final receivership lawsuit.

I recently testified on behalf of the CFTC at the April 24 trial on damages against William and Gregory Center.

---

[2] The case is styled *Jeffrey C. Schneider, Receiver v. Silent Standby Power Supply LLC, Franklin Freedman, and Siri Salmi*, Case No. 11-80977.

2

I also recently moved to modify the CFF Receiver's claim [DE 185], which this Court recently granted [DE 186] and will add an additional $123,880.07 to the receivership estate. That amount would yield approximately a 0.6% distribution. I do not believe, however, that the cost and expense of making a 0.6% distribution is justified under the circumstances. Therefore, the amount will likely be apportioned to pay final receivership expenses, with any remaining amounts kept as a reserve.

Depending on judgments I am holding, it is possible that I will collect additional amounts in the future and move to reopen the case to make another distribution. Unfortunately, however, I do not hold out much hope that the judgments will be collectible.

Finally, I have continued to update investors on the receivership website (www.tradereceiver.com) by posting letters to investors and relevant filings from the enforcement and ancillary receivership lawsuits. I plan on keeping the website active for another six months.

## II.     The Final Distribution

I have concluded issuing distribution checks for the final distribution of $1,783,000, which represented approximately a 9% distribution. I kept a reserve of $40,000 to cover the expenses of issuing 1099's, filing tax returns, enforcing outstanding settlements, and winding-down the estate. However, due to my goal of returning as much money as possible to the victims and the amount of necessary work to wind-down the case, my own and my professionals' combined outstanding receivables currently exceed the reserve amount.

This Court also granted my recommended disposition of 10 "late claims." I reached an agreement with the majority of late claimants on his or her respective claim amount. All but two late claimants had "allowed claims"; the other two had claims to which I objected (one

3

claimant's funds were never deposited in Trade's accounts and the other received a profit from Trade). This Court sustained my objections. I was able to issue distribution checks – even as part of the first distribution – to late claimants with "allowed claims," because there was enough in reserve from the "disallowed claims" from the first distribution.

### III.     Marshaling of the Receivership Entities' Assets

As stated previously, the various receivership Orders in the SEC and the CFTC actions granted me title to receivership assets by operation of law and, therefore, entitled me to the immediate turnover of receivership assets wherever located. These receivership assets have been liquidated for the benefit of the defrauded investors through the distribution process.

#### A. Modifying Cash Flow Financial's Claim

As this Court may recall, Cash Flow Financial ("CFF") was one of the investment clubs that transferred investor funds to Trade. CFF – like Trade – was placed in receivership in the United States District Court for the Eastern District of Michigan.[3]

The CFF Receiver (Phillip S. Stenger) and I discovered that Trade paid money to certain CFF investors based on investments those investors made to CFF (and not to Trade). In other words, certain investors sent money to CFF and received money back from Trade. (This was presumably done because CFF's principal asked Trade's principals to repay these investors as part of their collective involvement in what was a massive conspiracy.) From my analysis, Trade paid $619,400.33 to these investors and had I known about these payments before, I would have netted against CFF's claim, thus reducing CFF's claim by $619,400.33 (*i.e.*, from $6,010,359.67 to $5,390,959.34).

---

[3] *Commodity Futures Trading Commission v. Alan James Watson, et al,*, Case No: 11-cv-10949, United States District Court, Eastern District of Michigan, Honorable Lawrence P. Zatkoff presiding.

I have spoken on several occasions with the CFF Receiver about this issue and have provided the requested documents to support my contention. The CFF Receiver and I have agreed that the proper way to address this situation was for me to seek the modification of CFF's claim and that, upon this Court's approval, the CFF Receiver would seek approval from the Honorable Lawrence P. Zatkoff to amend CFF's claim and for the return of the $123,880.07. The amount represents 20% of the $619,400.33 which Trade over-paid.[4] This Court recently granted my requested modification [DE 186], and I expect the CFF Receiver to shortly file his motion before Judge Zatkoff.

B. The Properties

During the receivership, I seized and sold four properties in Palm Beach Gardens, Florida located at Midtown units 2305, 3117 and 3317, and 19 Blenheim Court. I sold unit 2305 for $160,000; unit 3117 for $142,500; unit 3317 for $150,000; and 19 Blenheim Court for $245,000. I also sold a garage space appurtenant to one of the Midtown units for $20,000.

1. Midtown Units 3117 and 3317

Milton and Center, through CMJ Capital, purchased units 3117 and 3317 at the Residences at Midtown in Palm Beach Gardens for approximately $295,000. All of that money was derived from Trade (and, as a result, defrauded investors). I seized and marketed both condominiums.

I signed a purchase contract for unit 3317 for $150,000 (fully-furnished); moved for this Court to confirm the sale pursuant to the receivership protocol required by 28 U.S.C. Sections 2001 and 2002, which this Court granted; and closed on the property on February 17, 2011.

---

[4] The CFF Receiver and I both believe that 20% was a fair compromise because I distributed 34% as part of this receivership and the CFF Receiver currently anticipates distributing only 10-12% in the CFF receivership based on recoveries to date.

Regarding unit 3117, I signed a purchase contract for $142,500, moved for this Court to confirm the sale pursuant to 28 U.S.C. Sections 2001 and 2002, which this Court granted; and closed on the property on August 26, 2011.

I also signed a purchase contract for the garage space for $20,000 to a current unit owner in the development. CMJ Capital had previously purchased the garage space for $20,000. I moved for this Court to confirm the sale pursuant to the receivership protocol required by 28 U.S.C. Sections 2001 and 2002, which this Court granted.

### 2. Midtown Unit 2305

I discovered that, soon before it shut down, Trade also transferred $200,000 of investor funds to a Trade-insider and a close Milton-friend, Darren Jarema ("Jarema"), for him to purchase a condominium in the Residences at Midtown (the same development where Milton and Center, through CMJ Capital, had purchased two condominiums); Jarema's condominium was unit 2305. There was no mortgage on this property.

I sued Jarema for, among other things, a constructive trust and/or equitable lien on this property. I moved for summary judgment to take title to this property, after which Jarema agreed to deed the property to me in full settlement of my claims.

I signed a contract to sell this property for $160,000. I then moved for confirmation of this sale, which this Court granted. The closing occurred on December 1, 2011.

### 3. 19 Blenheim Court

I discovered that Milton purchased a second home – located at 19 Blenheim Court, Palm Beach Gardens, Florida – with investor funds. There was also no mortgage on this property. Milton intentionally titled the home in his wife's name in an attempt to obfuscate the fact that he used investor funds to purchase it. Milton's son was previously living in this home.

I forced Kathleen Milton to sign a warranty deed which transferred title in the home to me. The warranty deed was recorded. I secured the home, changed the locks at the home, and insured the home. Like the condominium units, I marketed the home; signed a purchase contract with a buyer for $245,000; and moved for this Court to confirm the sale, which this Court granted. The closing occurred on March 25, 2011.

### C. Furniture, Fixtures, and Equipment

I quickly inventoried Trade's items in storage and filed a motion to liquidate such items for the benefit of the receivership estate, which this Court granted [DE 57]. The items consisted of various items of office furniture, fixtures, equipment, and artwork from Trade's office in Palm Beach Gardens. I retained an auctioneer and appraiser to evaluate the items. The auction took place on December 12, 2010, and generated approximately $41,000. I also moved for authority to sell the personalty located in 19 Blenheim Court and condominium unit 3317 [DE 64], which this Court granted. The auction of the items from unit 3317 occurred on January 26, 2011, and raised $4,730.00.

There is one remaining poster, some "Trade" signage, and a generator system from the 19 Blenheim property. The remaining items have insufficient value to justify sales efforts, so they will be abandoned or donated to charity.

### IV. Filing Lawsuits against Third Parties Who Received the Fruits of the Fraud

I filed six lawsuits and resolved multiple other disputes pre-suit against Milton, Center, and several other insiders, entities and/or individuals that received hundreds of thousands of dollars from Trade. The filed lawsuits were:

1. *Jeffrey C. Schneider, Receiver v. Philip W. Milton, William H. Center, T & D Highway Services LLC, Dawn Peluso, Charles Reeves, Jason Zamperini, Timothy O'Connor, David R. Casazza, Konstantina Casazza, Dennis Sacco, and Roseann Sacco*, Case No. 10-61401 (judgments against Milton and Center for $1.8 million;

   T & D Highway and Peluso settled for $187,615.32 through the sale of assets to RoadSafe; judgment against Reeves for $232,000; Zamperini settled for $6,000; judgment against O'Connor for $75,000; Casazzas settled for $27,000; Sacco settled for $23,200);

2. *Jeffrey C. Schneider, Receiver v. Trinity United Methodist Church of Palm Beach Gardens*, Case No. 10-80941 (settled for $30,000);

3. *Jeffrey C. Schneider, Receiver v. Darren Jarema and Jarema Financials Inc.*, Case No. 10-80939 (settled for turnover of Midtown unit 2305);

4. *Jeffrey C. Schneider, Receiver v. MC Building Consultants LLC, Impact Self-Storage LLC, Charles Reeves, and Marisa Reeves*, Case No. 10-80956 (judgment against Charles and Marisa Reeves for $139,000);

5. *Jeffrey C. Schneider, Receiver v. William Jordan*, Case No. 10-80955 (judgment for $87,100); and

6. *Jeffrey C. Schneider, Receiver v. Silent Standby Power Supply LLC, Franklin Freedman, and Siri Salmi*, Case No. 11-80977 (settled on an amended basis for $48,000 in installment payments and two judgments totaling $200,000).

There was one ancillary lawsuit which, until recently, had unresolved issues – *Jeffrey C. Schneider, Receiver v. Silent Standby Power Supply LLC, Franklin Freedman, and Siri Salmi*, Case No. 11-80977. I settled, on an amended basis, the lawsuit for $48,000 in monthly installment payments of $2,000 over two years. That action was the final receivership lawsuit.

My motion to discharge permits me to continue my efforts to receive the Silent Standby settlement payments.

I have also continued to receive settlements payments from prior receivership targets, such as David and Konstantina Casazza. My motion to discharge also permits me to continue my efforts to receive the Casazza settlement payments.

All future collected funds will be disposed of pursuant to separate motion(s) and Court-approval.

8

## V.     Conclusion

All material events in the receivership have concluded. I have completed the final distribution by issuing distribution checks to investors with "allowed claims," have issued 1099's to investors who are owed them, and have prepared and will be filing necessary tax returns. I also testified on behalf of the CFTC at the recent April 24 trial on damages against the Centers.

Because the receivership is terminating, I will be cancelling the various receivership vendor charges (except the website, as stated above). I will direct all further investor inquiries to the SEC and/or CFTC. And, I intend on transferring to the SEC, CFTC or other appropriate authority all receivership records previously secured by me.

Serving as Receiver in this matter has been a true privilege. I was honored to be appointed and to fulfill my responsibilities.

_____
Jeffrey C. Schneider, Receiver

Dated: April __, 2013

GL9775