# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 10-CV-80737-HURLEY/HOPKINS
### (Consolidated with Case No. 10-CV-80738-HURLEY/HOPKINS for the Receivership)

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

v.

BD LLC, et al.,
Relief Defendants.
_____/

COMMODITY FUTURES TRADING
COMMISSION,
Plaintiff,

v.

TRADE-LLC, et al.,
Defendants,

BD LLC, et al.,
Relief Defendants.
_____/

### UNOPPOSED FINAL APPLICATION FOR
### ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
### OF EXPENSES TO THE RECEIVER AND HIS COUNSEL

Pursuant to Section 14 of this Court's June 23, 2010 Order Appointing Receiver [DE 12],

Jeffrey C. Schneider, not individually, but solely in his capacity as the court-appointed receiver

(the "Receiver") for Trade-LLC, BD LLC, TWTT-LLC, CMJ Capital LLC, and Center

Richmond LLC (the "Receivership Entities" or "Trade"), and his counsel (the law firm of Levine

Kellogg Lehman Schneider + Grossman LLP), submit their Unopposed, and Final, Application

for Allowance of Compensation and Reimbursement of Expenses for the ten-month period of

August 1, 2012 through May 31, 2013. The Receiver has filed this Final Fee Application because he has concluded all matters in the receivership and was recently discharged.

A sampling of the work during the subject application period and the receivership in general is detailed below.

**WORK PERFORMED**

### I.     General Overview

The Receiver is happy to report that, after two and a half years, nearly a dozen lawsuits or pre-suit disputes (all of which were settled without costly trials), one contempt proceeding, the sale of five properties and literally dozens of items of personalty and the distribution of over $7 million to victims (representing a 34% recovery), the Receiver has concluded all of his material duties as Receiver in this case. Therefore, the Receiver has filed this Final Report [DE 187] and has moved for his discharge and his professionals' discharge [DE 188], which this Court granted [DE 189].

During the subject final application period, the Receiver issued all final distribution checks to investors with "allowed claims," and, therefore, has concluded his final distribution in the amount of $1,783,000. The first distribution, in the amount of $5.5 million, was concluded in November 2011. The Receiver has thus, as stated above, returned approximately 34% in total to investors in approximately two years (the final distribution was approximately 9% of investor losses and the first distribution was approximately 25% of investor losses).

During the subject final application period, the Receiver issued 1099's to all investors who invested through retirement accounts. The Receiver will be filing all tax returns for the Receivership Entities for tax years 2006-2010 (the Receivership Entities had failed to file these tax returns pre-receivership, which obligated him to prepare and file them now).

During the subject final application period, the Receiver settled, on an amended basis,

2

his lawsuit against Silent Standby and Franklin Freedman.[1]    That action was the final receivership lawsuit.

In April 2013, the Receiver testified on behalf of the CFTC at the trial on damages against William and Gregory Center.   This Court ultimately issued a restitution judgment against William Center and Gregory Center for $455,430 and $265,661.14, respectively.

The Receiver also moved to modify the CFF Receiver's claim [DE 185], which this Court recently granted [DE 186] and will add an additional $123,880.07 to the receivership estate.   That amount would yield approximately a 0.6% distribution.   The Receiver does not believe, however, that the cost and expense of making a 0.6% distribution is justified under the circumstances.

Depending on judgments that the Receiver has been holding, it is possible that he will collect additional amounts in the future and move to reopen the case to make another distribution.   Unfortunately, however, the Receiver does not hold out much hope that the judgments will be collectible.

Finally, the Receiver has continued to update investors on the receivership website (www.tradereceiver.com) by posting letters to investors and relevant filings from the enforcement and ancillary receivership lawsuits.   The Receiver plans on keeping the website active through October 2013.

## II.    The Final Distribution

The Receiver concluded issuing distribution checks for the final distribution of $1,783,000, which represented approximately a 9% distribution.   The Receiver kept a reserve of $40,000 to cover the expenses of issuing 1099's, filing tax returns, enforcing outstanding settlements, and winding-down the estate.   However, due to his goal of returning as much money

---

[1]    The case is styled *Jeffrey C. Schneider, Receiver v. Silent Standby Power Supply LLC, Franklin Freedman, and Siri Salmi*, Case No. 11-80977.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

as possible to the victims and the amount of necessary work to wind-down the case, the Receiver's own and his professionals' combined outstanding receivables currently exceed the reserve amount.

This Court also granted the Receiver's recommended disposition of 10 "late claims." The Receiver reached an agreement with the majority of late claimants on his or her respective claim amount. All but two late claimants had "allowed claims"; the other two had claims to which the Receiver objected (one claimant's funds were never deposited in Trade's accounts and the other received a profit from Trade). This Court sustained the Receiver's objections. The Receiver was able to issue distribution checks – even as part of the first distribution – to late claimants with "allowed claims," because there was enough in reserve from the "disallowed claims" from the first distribution.

III.     **Marshaling of the Receivership Entities' Assets**

As stated previously, the various receivership Orders in the SEC and the CFTC actions granted the Receiver title to receivership assets by operation of law and, therefore, entitled the Receiver to the immediate turnover of receivership assets wherever located. These receivership assets have been liquidated for the benefit of the defrauded investors through the distribution process.

A. **Modifying Cash Flow Financial's Claim**

As this Court may recall, Cash Flow Financial ("CFF") was one of the investment clubs that transferred investor funds to Trade. CFF – like Trade – was placed in receivership in the United States District Court for the Eastern District of Michigan.[2]

---

[2] *Commodity Futures Trading Commission v. Alan James Watson, et al.,* Case No: 11-cv-10949, United States District Court, Eastern District of Michigan, Honorable Lawrence P. Zatkoff presiding.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

The CFF Receiver (Phillip S. Stenger) and the Receiver discovered that Trade paid money to certain CFF investors based on investments those investors made to CFF (and not to Trade). In other words, certain investors sent money to CFF and received money back from Trade. (This was presumably done because CFF's principal asked Trade's principals to repay these investors as part of their collective involvement in what was a massive conspiracy.) From the Receiver's analysis, Trade paid $619,400.33 to these investors and had the Receiver known about these payments before, the Receiver would have netted against CFF's claim, thus reducing CFF's claim by $619,400.33 (*i.e.*, from $6,010,359.67 to $5,390,959.34).

The Receiver spoke on several occasions with the CFF Receiver about this issue and provided the requested documents to support his contention. The CFF Receiver and the Receiver agreed that the proper way to address this situation was for the Receiver to seek the modification of CFF's claim and that, upon this Court's approval, the CFF Receiver would seek approval from the Honorable Lawrence P. Zatkoff to amend CFF's claim and for the return of the $123,880.07. The amount represents 20% of the $619,400.33 which Trade over-paid.[3] This Court recently granted the requested modification [DE 186], and the CFF Receiver has filed his motion before Judge Zatkoff, who recently granted it.

### B. The Properties

During the receivership, the Receiver seized and sold four properties in Palm Beach Gardens, Florida located at Midtown units 2305, 3117 and 3317, and 19 Blenheim Court. The Receiver sold unit 2305 for $160,000; unit 3117 for $142,500; unit 3317 for $150,000; and 19 Blenheim Court for $245,000. The Receiver also sold a garage space appurtenant to one of the Midtown units for $20,000.

---

[3] The CFF Receiver and the Receiver both believe that 20% was a fair compromise because the Receiver distributed 34% as part of this receivership and the CFF Receiver currently anticipates distributing only 10-12% in the CFF receivership based on recoveries to date.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

### 1. Midtown Units 3117 and 3317

Milton and Center, through CMJ Capital, purchased units 3117 and 3317 at the Residences at Midtown in Palm Beach Gardens for approximately $295,000. All of that money was derived from Trade (and, as a result, defrauded investors). The Receiver seized and marketed both condominiums.

The Receiver signed a purchase contract for unit 3317 for $150,000 (fully-furnished); moved for this Court to confirm the sale pursuant to the receivership protocol required by 28 U.S.C. Sections 2001 and 2002, which this Court granted; and closed on the property on February 17, 2011. Regarding unit 3117, the Receiver signed a purchase contract for $142,500, moved for this Court to confirm the sale pursuant to 28 U.S.C. Sections 2001 and 2002, which this Court granted; and closed on the property on August 26, 2011.

The Receiver also signed a purchase contract for the garage space for $20,000 to a current unit owner in the development. CMJ Capital had previously purchased the garage space for $20,000. The Receiver moved for this Court to confirm the sale pursuant to the receivership protocol required by 28 U.S.C. Sections 2001 and 2002, which this Court granted.

### 2. Midtown Unit 2305

The Receiver discovered that, soon before it shut down, Trade also transferred $200,000 of investor funds to a Trade-insider and a close Milton-friend, Darren Jarema ("Jarema"), for him to purchase a condominium in the Residences at Midtown (the same development where Milton and Center, through CMJ Capital, had purchased two condominiums); Jarema's condominium was unit 2305. There was no mortgage on this property.

The Receiver sued Jarema for, among other things, a constructive trust and/or equitable lien on this property. The Receiver moved for summary judgment to take title to this property, after which Jarema agreed to deed the property to him in full settlement of his claims.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

The Receiver signed a contract to sell this property for $160,000. The Receiver then moved for confirmation of this sale, which this Court granted. The closing occurred on December 1, 2011.

### 3.  19 Blenheim Court

The Receiver discovered that Milton purchased a second home – located at 19 Blenheim Court, Palm Beach Gardens, Florida – with investor funds. There was also no mortgage on this property. Milton intentionally titled the home in his wife's name in an attempt to obfuscate the fact that he used investor funds to purchase it. Milton's son was previously living in this home.

The Receiver forced Kathleen Milton to sign a warranty deed which transferred title in the home to him. The warranty deed was recorded. The Receiver secured the home, changed the locks at the home, and insured the home. Like the condominium units, the Receiver marketed the home; signed a purchase contract with a buyer for $245,000; and moved for this Court to confirm the sale, which this Court granted. The closing occurred on March 25, 2011.

### C.  Furniture, Fixtures, and Equipment

The Receiver quickly inventoried Trade's items in storage and filed a motion to liquidate such items for the benefit of the receivership estate, which this Court granted [DE 57]. The items consisted of various items of office furniture, fixtures, equipment, and artwork from Trade's office in Palm Beach Gardens. The Receiver retained an auctioneer and appraiser to evaluate the items. The auction took place on December 12, 2010, and generated approximately $41,000. The Receiver also moved for authority to sell the personalty located in 19 Blenheim Court and condominium unit 3317 [DE 64], which this Court granted. The auction of the items from unit 3317 occurred on January 26, 2011, and raised $4,730.00.

There is one remaining poster, some "Trade" signage, and a generator system from the 19 Blenheim property. The remaining items have insufficient value to justify sales efforts, so they will be abandoned or donated to charity.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22ⁿᵈ Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

**IV.     Filing Lawsuits against Third Parties Who Received the Fruits of the Fraud**

The Receiver filed six lawsuits and resolved multiple other disputes pre-suit against Milton, Center, and several other insiders, entities and/or individuals that received hundreds of thousands of dollars from Trade.  The filed lawsuits were:

1.  *Jeffrey C. Schneider, Receiver v. Philip W. Milton, William H. Center, T & D Highway Services LLC, Dawn Peluso, Charles Reeves, Jason Zamperini, Timothy O'Connor, David R. Casazza, Konstantina Casazza, Dennis Sacco, and Roseann Sacco*, Case No. 10-61401 (judgments against Milton and Center for $1.8 million; T & D Highway and Peluso settled for $187,615.32 through the sale of assets to RoadSafe; judgment against Reeves for $232,000; Zamperini settled for $6,000; judgment against O'Connor for $75,000; Casazzas settled for $27,000; Sacco settled for $23,200);

2.  *Jeffrey C. Schneider, Receiver v. Trinity United Methodist Church of Palm Beach Gardens*, Case No. 10-80941 (settled for $30,000);

3.  *Jeffrey C. Schneider, Receiver v. Darren Jarema and Jarema Financials Inc.*, Case No. 10-80939 (settled for turnover of Midtown unit 2305);

4.  *Jeffrey C. Schneider, Receiver v. MC Building Consultants LLC, Impact Self-Storage LLC, Charles Reeves, and Marisa Reeves*, Case No. 10-80956 (judgment against Charles and Marisa Reeves for $139,000);

5.  *Jeffrey C. Schneider, Receiver v. William Jordan*, Case No. 10-80955 (judgment for $87,100); and

6.  *Jeffrey C. Schneider, Receiver v. Silent Standby Power Supply LLC, Franklin Freedman, and Siri Salmi*, Case No. 11-80977 (settled on an amended basis for $48,000 in installment payments and two judgments totaling $200,000).

There was one ancillary lawsuit which, until recently, had unresolved issues – *Jeffrey C. Schneider, Receiver v. Silent Standby Power Supply LLC, Franklin Freedman, and Siri Salmi*, Case No. 11-80977.  The Receiver settled, on an amended basis, the lawsuit for $48,000 in monthly installment payments of $2,000 over two years.  That action was the final receivership lawsuit.  The Receiver's motion to discharge permits the Receiver to continue his efforts to receive the Silent Standby settlement payments.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22ⁿᵈ Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

The Receiver has also continued to receive settlements payments from prior receivership targets, such as David and Konstantina Casazza.  The motion to discharge also permits the Receiver to continue his efforts to receive the Casazza settlement payments.

### THE RECEIVER AND HIS COUNSEL

Exhibit A reflects the Receiver's daily time records.  The Receiver's standard hourly rates are $485.00 (2012) and $525.00 (2013).  For purposes of this receivership, however, the Receiver reduced his hourly rate to $260.00, a reduction of approximately 40%-50%, and capped it at that rate throughout the duration of this case.  For this Final Fee Application, the Receiver expended a total of 51.80 billable hours at a reduced hourly rate of $260.00 for a total of $13,468.00. The professional services rendered by the Receiver are set forth and described in more detail on the attached Exhibit A.  Exhibit A reflects the Receiver's daily time records, which includes the description of services rendered, the hours expended, and the hourly rates.

The Receiver's counsel (*i.e.*, Levine Kellogg Lehman Schneider + Grossman LLP), also with capped, reduced rates, were retained and commenced work on the receivership on the date of the Receiver's appointment – June 23, 2010.  This Court granted the Receiver's Motion to Employ them as counsel on July 1, 2010.  The professional services rendered by the Receiver's counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs relating to those services, are set forth and described in more detail on the attached Exhibit B.  Exhibit B reflects the Receiver's counsel's daily time records, which includes the description of services rendered, the hours expended, and the hourly rates.

The Receiver deflected the vast majority of the legal work in this case to Mr. Rengstl.[4] As this Court can plainly see, fees were kept at a minimum by having Mr. Rengstl and paralegals

---

[4]  Despite the fact that Mr. Rengstl is now a partner of the firm, his hourly rate has remained the same as before ($200.00 for associates as opposed to $250.00 for partners) to maximize the recovery of all victims.  Mr. Rengstl's hourly rates for 2012 and 2013 are $380.00 and $400.00, respectively.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

(Ana Salazar[5] and Maria Carattini) perform the vast majority of the legal work, much of which, again, involved the claims and distribution process. In addition, associate hourly rates were reduced to $200.00 and paralegal hourly rates were reduced to $125.00 for this receivership.

For this Court's convenience, the following is an aggregate tabular summary for the fees and expenses of the Receiver's counsel:

**COUNSEL**:

| Name of Attorney | Reduced Hourly Rate | Time Expended | Total Per Attorney |
|---|---|---|---|
| Patrick J. Rengstl, Esq. | $200.00 | 182.00 | $36,400.00 |
| **SUB TOTAL** | | | **$36,400.00** |

**PARAPROFESSIONALS**:

| Name of Paraprofessional | Reduced Hourly Rate | Time Expended | Total Per Paraprofessional |
|---|---|---|---|
| Ana M. Salazar | $125.00 | 505.10 | $63,137.50 |
| Maria A. Carattini | $125.00 | 8.40 | $1,050.00 |
| **SUB TOTAL** | | | **$64,187.50** |

| COSTS: | | | $3,297.62[6] |
|---|---|---|---|

**TOTAL DUE IN FEES AND COSTS FOR COUNSEL**:

| **TOTAL** | | | **$103,885.12** |
|---|---|---|---|

Exhibit B is consistent with the tabular summary provided above.

---

[5] Ms. Salazar is the receivership administrator and also has a MBA degree.

[6] There was a $10.00 credit for a recording fee that was applied to the estate.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

## MEMORANDUM OF LAW

### I.    Summary of Services Rendered by the Receiver and His Counsel

The professional services rendered by the Receiver and his counsel, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are set forth and described in more detail in Exhibits A and B. The attached records show the time spent. A mere reading of the time summaries cannot completely reflect the full range of services rendered by the Receiver and his counsel, the complexity of the issues, and the pressures of time and performance which have been placed upon the Receiver and his counsel in connection with this case.

The schedules of disbursement for expenses, which are also part of Exhibits A and B, are those actual and necessary expense items, such as process service fees, photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various expenses incurred in connection with this matter. All of these expenses would typically be billed by the Receiver and his counsel to their general commercial clients.

The Receiver and his counsel have not been paid any compensation in connection with the services and expenses set forth herein.

### II.    Applicable Legal Standard Analysis

In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974). *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are as follows: (1) the time and labor required; (2)

11

the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A.    The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature, and extent of the professional services rendered by the Receiver and his counsel during the period covered by this Application. The Receiver and his counsel have no doubt that the time spent is justified by the results that have been achieved thus far. The Receiver and his counsel believe they have played a significant role during the course of these proceedings.

### B.    The Novelty and Difficulty of the Questions Presented

This case required a high level of skill to secure the receivership assets and to carry out the Receiver's duties.

### C.    The Skill Requisite to Perform the Services Properly

In order to perform the required services, substantial legal skill and experience in the areas of commercial law and litigation were required of the Receiver and his counsel. The Receiver is acutely aware of the financial considerations arising in receiverships such as this one. Accordingly, as this Court may gather from Exhibits A and B, the Receiver has very leanly staffed the administration of this case as much as possible, under the direction and immediate supervision of the Receiver.

### D.    The Preclusion of Other Employment Due to This Case

Although the Receiver and his counsel were not explicitly precluded as a result of this

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

case from accepting other matters, matters in this case were treated by the Receiver and his counsel in an expeditious and professional manner. Also, this case required the Receiver and his counsel to devote a significant amount of time during the period of this Application, to the preclusion of expending time on other active matters.

### E.   The Customary Fee

The hourly rates of the Receiver and his counsel set forth on the attached exhibits reflect a rate that is considerably lower than the hourly rates billed by the Receiver and his counsel to clients in other cases. That is because the Receiver views this work as being in the nature of "public service," which the Receiver is proud and privileged to be able to do.   Similar – and higher – rates have been confirmed and approved in other matters in which the Receiver and his counsel have been involved.

### F.   Whether the Fee Is Fixed or Contingent

The compensation of the Receiver and his counsel in this matter is subject to the approval of this Court, and the Receiver and his counsel have not received any compensation for their services rendered to date. The above factors should be taken into consideration by this Court, and the compensation should reflect the assumption of the risk of non-payment and delay in payment.

### G.   The Time Limitations Imposed

This case imposed time limitations on the Receiver and his counsel due to the necessity for rapid resolutions of issues.

### H.   The Experience, Reputation, and Ability of the Professionals

The Receiver and his counsel enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships, litigation, bankruptcy, creditors' rights, and business reorganizations.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

### I.     The "Undesirability" of the Case

This case is not undesirable, and the Receiver and his counsel are, indeed, privileged to participate in this proceeding.

### J.     The Nature and Length of Professional Relationship

The Receiver and his counsel have had no prior relationship with Milton, Center, or the Receivership Entities prior to this case.

### K.     Awards in Similar Cases

The amounts requested by the Receiver and his counsel are not unreasonable in terms of awards in cases of similar magnitude and complexity. The compensation requested by the Receiver and his counsel comports with the mandate of applicable law, which directs that services be evaluated in light of comparable services performed in other cases in the community. In fact, the hourly rates requested by the Receiver and his counsel are considerably lower than the ordinary and usual hourly rates billed by the Receiver and his counsel to their ordinary clients, notwithstanding the risks associated with this case. The hourly rates are even lower than rates received by the Receiver in other receivership cases.

### L.     The Source of Payment for the Amounts Sought Hereunder

The Receiver and his counsel request that the amounts for which payment is authorized hereunder be paid from funds presently held by the Receiver.

### REQUEST FOR NEW RESERVE

Assuming this Final Fee Application is granted, and after receiving all amounts that the Receiver currently anticipates receiving in the near term, it is estimated that there will be approximately $49,000 remaining in the receivership estate after paying the amounts owed in this Final Fee Application. The Receiver is proposing that he maintain a new reserve of this amount to cover future expenses post-receivership (such as enforcing pending settlement agreements, paying final vendor expenses (*i.e.*, the website), paying for tax returns for tax year

2013, and post-judgment analyses). The Receiver requests authority to pay any and all future receivership fees and expenses in a self-executing manner without further Court Order upon written consent by the SEC to the Receiver. In addition, the Receiver requests authority to transfer any remaining receivership funds to the National Futures Association (the "NFA") as Monitor at the appropriate time based on the Receiver's discretion, pursuant to the prior Consent Judgment signed in the CFTC proceeding [DE 124 in CFTC proceeding]. The NFA is the CFTC's agent in this case for distributing residual funds to investors after the Receiver transfers such residual funds to the NFA. The NFA has represented that 100% of residual funds transferred by the Receiver will be distributed to investors.

## CONCLUSION

All material events in the receivership have concluded. The Receiver has completed the final distribution by issuing distribution checks to investors with "allowed claims," has issued 1099's to investors who are owed them, and has prepared and will be filing necessary tax returns. The Receiver also testified on behalf of the CFTC at the recent trial on damages against the Centers, which resulted in judgments against them.

Because the receivership has terminated, the Receiver will be cancelling the various receivership vendor charges (such as the website, as stated above). The Receiver will direct all further investor inquiries to the SEC and/or CFTC. And, the Receiver will be transferring to the SEC, CFTC or other appropriate authority all receivership records previously secured.

Serving as Receiver in this matter has been a true privilege. The Receiver was honored to be appointed and to fulfill his responsibilities.

## CERTIFICATION

Pursuant to Local Rule 7.1.A.3, undersigned counsel hereby certifies that he has conferred with the SEC and Defendants, and is authorized to represent that the SEC and Defendants have no objection to the relief requested herein. The CFTC takes no position.

The Receiver also certifies that:

a. He has read this Application;

b. To the best of his knowledge, information and belief formed after reasonable inquiry, this Application and all fees and expenses therein are true and accurate, and comply with the Billing Instructions;

c. All fees contained in this Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

d. He has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and

e. In seeking reimbursement for a service which he justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), he requests reimbursement only for the amount billed to him by the third party vendor and paid by him to such vendor. To the extent that such services were performed by him as receiver, he certifies that he is not making a profit as receiver on such reimbursable service.

WHEREFORE, the Receiver and his counsel respectfully request that this Court enter the proposed Order, attached as Exhibit C, (a) authorizing compensation to the Receiver of $13,468.00; (b) authorizing compensation to the Receiver's counsel, Levine Kellogg Lehman Schneider + Grossman LLP, of $100,587.50 and reimbursement of costs of $3,297.62; (c) establishing a reserve as explained above; (d) permitting the Receiver to obtain any future reimbursement of fees and costs through written consent of the SEC without further Court Order;

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

(c) permitting the Receiver to transfer any remaining receivership funds to the NFA at the appropriate time based on the Receiver's discretion, pursuant to the prior Consent Judgment signed in the CFTC proceeding; and (f) granting any other relief that is just and proper.

Dated: July 25, 2013                    Respectfully submitted,

                                        LEVINE KELLOGG LEHMAN
                                        SCHNEIDER + GROSSMAN LLP
                                        Counsel for the Receiver
                                        201 South Biscayne Boulevard
                                        22nd Floor, Miami Center
                                        Miami, Florida 33131
                                        Telephone:    (305) 403-8788
                                        Facsimile:    (305) 403-8789

                                        By:s:/Patrick J. Rengstl
                                            Patrick J. Rengstl, Esq.
                                            FL Bar No. 0581631

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s:/Patrick J. Rengstl
Patrick J. Rengstl, Esq.

18

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

## SERVICE LIST

**Patrick J. Rengstl, Esq.**
Attorney for Receiver
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
22nd Floor, Miami Center
Miami, Florida 33131
Telephone: 305.403.8788
Facsimile: 305.403.8789

**James D. Sallah, Esq.**
Former Attorney for Trade-LLC, BD LLC,
CMJ Capital LLC, and TWTT-LLC
SALLAH & COX LLC
Boca Corporate Center
2101 N.W. Corporate Blvd., Suite 218
Boca Raton, Florida 33431

**Gregory Center**
1210 Colonial Road
McLean, VA 22101
Telephone: 202.713.6660
gregorycenter@gmail.com
**(Email and U.S. Mail)**

**William Center**
8143 Greystone Circle East
Richmond, VA 23229
Telephone: 804.212.9663
center.bill@gmail.com
**(Email and U.S. Mail)**

**John Dunfee, Esq.**
**Jason Mahoney, Esq.**
Attorney for COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street, N.W.
Washington, DC 20581
Direct: (202) 418-5289

**Christopher E. Martin, Esq.**
**Susan F. Curtin, Esq.**
Attorney for Plaintiff
SECURITIES & EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: 305.983.6386
Facsimile: 305.536.4154
Email: martinc@sec.gov
Email: curtins@sec.gov

**Lawrence U. Taube, Esq.**
Attorney for Defendant Philip W. Milton
LAW OFFICES OF LAWRENCE U TAUBE
500 South Australian Avenue, Suite 630
West Palm Beach, Florida 33401

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789